UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC. 0 6 2000

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| Plaintiff-Respondent | ) | |
| vs | ) | Crim. B98-506 |
| | ) | |
| Hugo P. Absalon     Defendant-Petitioner | ) | **B-00-186** |

MOTION TO VACATE JUDGMENT and

DISMISS INDICTMENT  B98-506 of 9-30-98

---

Now comes Hugo P. Absalon, Petitioner pro se in a multiple prongued motion

on jurisdiction pursuant to Rule 12(b)(2) of the Fed.R.Crim.P.; and by authority

of Apprendi v New Jersey 530 US_____, 147 LEd 2d 435, 120 S Ct_____decided

June 26, 2000 on violations of the Due Process Clause of the Fifth Amendment of

the United States of America Constitution.

Rule 12(b) of the Fed.R.Crim.P. provides that the Court is permitted to con-

sider any defense "which is capable of determination without trial of the general

issue". Where the issues raised are purely those of law, the opposing party would

suffer no prejudice as a result of the issues not being raised in the trial court.

Any defense, objection or request which is capable of determination without

the trial of the general issues and is based on defects in the indictment or infor-

mation failing to show jurisdiction in the court or to charge an offense shall be

noticed by the court at any time during the pendency of the proceedings. Rule 12(b)(2).

Rule 12(b)(2), supra, authorizes a district court to entertain a motion contest-

ing the district court's geographical jurisdiction at any time. Without the court

construing it as a Title 28 USC § 2255 motion, or falling within the law of successive

petition, or a time barred claim pursuant to the "AEDPA" Act of 1996. Adams v U.S.
155 F3d 582 (2nd Cir 1998).

A guilty plea does not waive claim the the court lacks jurisdiction, as held in
Conerly v State 607 Su 1153 (Miss 1992); State v Perank 858 P2d 927 (Utah 1992).

The Due Process Clause protects the accused against conviction except upon proof
of beyond the reasonable doubt of every fact necessary to constitute the crime with
which he is charged as stated in "Apprendi v New Jersey", supra, citing Winship 397
US at 364, 25 LEd 2d 368, 90 S Ct 1068.

## STATEMENT OF FACTS

1.   Lack of Jurisdiction was first objected by retained defense counsel Jose A.
Esquivel at the Sentencing Hearing of 2/4/99, who in a feeble effort just stated that:
"All these offenses, the kidnaping, Judge, all that occurred---if it did occur---, it
happened in Mexico. It never happened here in the United States" EXHIBIT "D" incorpo-
rated herein. Transcript of the Sentencing Hearing, supra.
   Immediately thereafter  defense counsel disavowed his statement

2.   On its face the Record evidences that the alleged offensive conduct for which
Petitioner's sentence was enhanced all did happen---if it did happen--- in the Sove-
reign Country of Mexico. EXHIBITS "B", "C" and "D" incorporated herein. Transcript.

3.   Petitioner expressly requested of his retained appeal counsel Richard B. Gould
to raise the jurisdictional issue on appeal. By means of amendment or suplementation to
his brief, or by separate action on a habeas corpus proceeding. EXHIBIT "E" incorpo-
rated herein.

By his letter of September 23, 1999 appeal counsel refused stating: "the issue of
jurisdiction has not and will not be raised. It clutters the real issues in the case"

-2-

CExPDF - www.texisx.com

EXHIBIT "F" incorporated herein.

4.   On January 24, 2000 the Petitioner pro se raised again the jurisdictional issue before the district court, supra, filing his Ex parte Motion pursuant to rules 60(b)(3) & (6), and 12(b)(1) & (7) of the Fed.R.Cv.P.

5.   After ten (10) MONTHS of the filing the Court has not heard and ruled on the Motion. EXHIBIT "G" incorporated herein.

6.   On August 21, 2000 the Petitioner requested of the Court information about the current status of his Motion, supra, EXHIBIT "H" incorporated herein.

7.   On September 11, 2000 the U.S. Magistrate Judge Felix Recio issue a confussing, to say the least, ORDER in which he implies that Petitioner's Ex parte Motion was the wrong format for his petition. After some advise was given, the Magistrate, supra, concluded that the Court would accept an "amended" Ex parte motion, which after all turned out to be the proper format for Petitioner's petition. EXHIBIT "I" incorporated herein.

Petitioner was thereby given 60 days from the date of the ORDER (September 11, 2000) for compliance.

8.   On October 1, 2000 the Petitioner filed his answer showing ' cause and prejudice ' as requested, amongst other issues. EXHIBIT "J" incorporated herein.

9.   Since July 28, 1999, over sixteen (16) MONTHS ago the Petitioner has been duly trying to compel prosecutor's duty to disclose evidence favorable to the Petitioner neccessary for the preparation of post-conviction relief from judgment:

(a) first by Certified letters #s P213 632 513 (July 28, 1999) and Z436 161 941 (August 13, 1999.

(b) followed by Motion to compel, cause 1:99-cv-00684 (October 12, 1999).

(c) Civil action, cause 1:99-cv-00801 (December 16, 1999).

(d) Motion for judgment on the pleadings. Summary judgment (May 1, 2000).

CAMPDF - www.fxsize.com

(e) Motion to compel prosecutor's duty to disclose [Criminal] filed November 11, 2000.

10.   By conduct from which it can be conclusively inferred refusal to perform a duty, the United States Federal government has made no effort to disclose, and the Courts have not made any ruling in compliance with their duties.

11.   After the trial(sentencing) judge accepted plea agreement whereby the government dismissed the alleged conduct that formed the basis for counts #s three(3) and four(4) of Indictment B98-506 dated September 30, 1998, at the February 4, 1999 Sentencing Hearing the Government breached its plea agreement by its motion enhancing Petitioners sentence.   Sentencing Judge Hilda G. Tagle abused her discretion when considering dismissed charges pursuant to plea agreement, and by her application of the preponderance of the evidence standard of proof.

12.   In upholding the conviction and sentence the Fifth Circuit Court of Appeals rejected retained appeal counsel's claims of:

(a) the propriety of the district court's notice of upward departure.

(b) the core concerns of Rule 11 of the Fed.R.Crim.P.

13.   Petitioner's  direct appeal  was FINAL  on October 30, 2000.
    EXHIBIT "A"  incorporated herein.

A R G U M E N T S

A.  Petitioner's arguments are supported by enumerated authorities and

exhibited documents establishing proof of the facts outlined in the

accompanying memorandum in support thereof:

1.  Whether the United States Federal Government:

(a) failed to secure and

establish Criminal Legislative Jurisdiction over federal enclave (if any) within

the jurisdictional boundaries of the Sovereign State of Texas, and failed to esta-

blish Extraterritorial Jurisdiction  over the jurisdictional boundaries of the So-

vereign Country of Mexico on the location of the purported violative activity by

the Petitioner in the Sovereign Country of Mexico, and in the Sovereign  State of

Texas.

(b) the United States Dis-

trict Court, supra, failed to recognize an action where jurisdiction was lacking

and **sua sponte** dismiss  it.

II.  Whether Petitioner's constitutional right to be deprived of liberty  as

punishment for alleged criminal conduct  **only to the extent**  **authorized by Congress**

has been violated.

III.  Whether application of Title 8 USC § 1329 in granting jurisdiction  to

8 USC § 1324(a) any judgment under  § 1324(a) is therefore  **VOID AB INITIO** and con-

viction therefrom is not merely erroneous but it is illegal and void.

IV.  Whether in light of "Apprendi  v  New Jersey", supra, Petitioner's subs-

tantial Due Process Rights have been erroneously affected in violation of the United

States of America Constitution.

## MEMORANDUM IN SUPPORT  OF THE FOREGOING MOTION

- I -

I.    Indictment B98-506 dated September 30, 1998 alleged Petitioner's viola-

tion of federal statutes within the jurisdictional boundaries of the So-

vereign State of Texas, and within the jurisdictional boundaries of the Sovereign

Country of Mexico.

(a) Nothing in the face of the Record evidences that the Government secured

and established  Criminal Legislative Jurisdiction  first, before applying and enfor-

cing the federal statutes of conviction  and  further enhancement of sentence.

(1)    Petitioner was arrested by the Federal Bureau of Investigation agents without

a warrant, after being detained for about six(6) or seven(7) hours by the U.S. Border

Patrol agents on September 1, 1998 outside of US  Highway 77, about seventy(70) miles

north of Brownsville Texas, U.S. Border Patrol checkpoint north of Sarita, Texas. The

Petitioner was driving with alien Enedelia Portillo Sanchez, a Mexican Citizen, in

route to Converse, Texas, Subdivision of San Antonio Texas where the Petitioner have

his residence.

(2)    The Record is absent of any proof that the Government did follow the series

of steps it must do to acquire jurisdiction over a federal enclave---if any---  at

the above location  as mandated by Article 1, Section 8, Clause 17 [using the 9th and

10th amendments to support] of the United States of America Constitution, statutory

law 18 USC § 7(3) and 40 USC § 255 , and case law: United States  v  Johnson 994 F2d

980, 985 (2nd Cir 1993) [Criminal],  McCormick  v  C.E. Thurston & Sons Inc. 977 FSupp

400, 402 (E.D. Va 1997)[Civil], United States  v  Raffield 82 F3d 611, 613 (4th Cir

1996)[Criminal] , Koren  v  Martin Marrietta Services Inc. 997 FSupp 196 (D. Puerto

Rico 1998)[Civil}.

(3)   Before a law of the United States (ie. statutes) can be applied or enforced the Federal government must acquire Criminal Legislative Jurisdiction as follows:

(i) it must acquire ownership of the land

(ii) it must secure from the State consent to such jurisdiction; and

(iii) it must indicate acceptance by either:  formal acceptance to the Governor of the State, or by complying with the relevant State Law requirements...........
Title 40 USC § 255.

(4)   All steps must be completed before jurisdiction is acquired.  It must be acquired before the date of the offense to prosecute that offense as federal.

(5)   If the court accepts a conviction without determining jurisdiction according to Article 1, Section 8, Clause 17 of the United States of America Constitution, and Title 40 USC § 255,  **then the court conferred jurisdiction onto the Federal Government.  Jurisdiction cannot be conferred, stipulated to, or waived.**
Collins  v  Thompson 8 F3d 659 (9th Cir 1993)
Harris  v  United States 149 F3d 1304, 1308 (11th Cir 1998)
United States  v  Owens 996 F2d 60 (5th Cir 1993)

(6)   "When federally created crime involves an area traditionally left to the domain of the State,  the legislative jurisdictional authority of the "United States" becomes a crucial part of the proof,  it being uniformly held that the basis for federal jurisdictional [authority] is an essential element of the offense, United States v  McRary 665 F2d 674, 678-79 (5th Circ Unit B) cert. denied 456 US 1011, 102 S Ct 2306, 73 LEd 1307 (1982);  United States  v  Montfor 27 F3d 137, 138 (5th Cir 1994); Ex parte McCardie 74 US (7 Wall),506, 514, 19 LEd 264 (1868).

(7)   Petitioner respectfully avers that the Federal Government:

(i) failed at each and every juncture of its case to demonstrate, establish and prove that it possessed federal jurisdiction over the locations named on it's charging instrument.

(ii) failed ab initio  to demonstrate, establish and come forth with docu-

-7-

CutePDF - www.texsc.com

ments proving it had secured Criminal Legislative Jurisdiction, and had Extraterritorial Jurisdiction over alleged conduct in the Sovereign Country of Mexico.

(8)   The absence of federal legislative jurisdiction over the location of the purported violative activity by the Petitioner leaves the Department of Justice/ Attorney General and the Court without jurisdiction to prosecute and adjudicate the matters alleged against Petitioner in the Complaint, the Indictment, and further proceedings.

Chief Justice John Marshall observed that to bring these offenses within the legislative jurisdiction of the Courts  of the Union, they must have been first committed out of the jurisdiction of any State [and thus out ot the jurisdiction of any Sovereign Foreing Country].  **" It is not the offense committed but the place in which it is committed** , which must be out of the jurisdiction of the State [and thus out of the jurisdiction of any Sovereign Foreign Country]".  People  v Godfrey 17 John 225 at 233 (NY 1818)(enphasis added.)

(9)   Any time the Federal government seeks to prosecute, and thereby regulate activity lacking in the requisite federal jurisdiction, the control of which is constitutionally within the domain of the State and local authorities [or within the domain of Foreign Country's authorities]  it thereby violates Federal, State and Foreign Country Constitutions, as the States are the repository of our Common Law Rights, as is well discussed in  Gibbons  v  Ogden 22 US 1 (1824); A.L.A. Schecter Poultry Corp  v  United States 229 US 495 & 554 (1935);  N.L.R.B.  v  Jones Laughlin Steel Co 301 US 1 & 37 (1937); Hodel  v  Virginia Surface Minig and Reclamation Assoc. 452 US 264, 267-77, 310-13 (1981);  New York  v  United States 112 S Ct 2408, 2412-29, 2431 (1992).

(10)   **Although it is no where mentioned in Indictment B98-506** of September 30, 1998, **the allegedly criminal activity with which the Petitioner is charged in counts #s 3 and 4 were allegedly to take place in the Sovereign Country of Mexico;**  and the Complainant

Juan Portillo (Sr) and the alleged victim Enedelia Portillo Sanchez **are both Citizens of the Sovereign Country of Mexico,   residents of Sabinas Hidalgo, Nuevo Leon, Mexico. The 71 years old Petitioner is also a Citizen of the Sovereign Country of Mexico**, legal alien resident of the United STates since 1956. **EXHIBITS  "B", "C" and "D".**

(11)  **None** of the alleged illegal activity by the Petitioner **was to take place in the United States.**  Accordingly this Court has jurisdiction over the location and the subject matter of the allegations contained in counts #s 3 and 4 of the Indictment **if the statutes supporting the allegations can be lawfully applied extraterritorially.**

(i) when an allegedly criminal act **is performed  by an alien  in  foreign  soil**  courts of the United States have long held that if jurisdiction is to be extend-ed over the act,  **it must be supported** by either  **"the protective"**  or the **"objective territorial"** theory.  Under the "protective" theory, which does not bear on the reso-lution of this case, a country's legislature is competent to enact laws and assuming physical power over a defendant, its courts have jurisdiction to enforce criminal laws whereever  and by whomever the act is performed that threatens the country's security or directly interferes with its governmental operations. United States v  Bowman 1922, 260 US 94, 97-98, 43 S Ct 39, 67 LEd 149.

The  "objective territorial" theory looks not to interference with governmental interests  but to objective effects  within the sovereign state.  The theory requires that before a State may attach criminal consequences to an extraterritorial act, **it must be intended to have an effect within the State .**

(ii) the Fifth Circuit Court of Appeals' position on extraterritorial juris-diction is well established by **United States  v  Columba-Collella 604 F2d 356 (1979), and United States  v  Velazquez- Mercado 697 FSupp 292 (Southern District of Texas Laredo Division)(1988) ,** where the "protective"  and  "objective territorial" theory are considered. The  courts' rulings were favorable to the defendants: Columba-Collella....reversed and charges dismissed ; Velazquez-Mercado......charges dismissed.

In United States  v  **Velazquez-Mercado** the defendant moved to dismiss counts of the indictment for lack of jurisdiction. Those counts charged **Velazquez-Mercado** with commiting various sexual offenses against two females **in the Republics of Mexico and in Guatemala** . The Court held:

> [5, 6] " **The objective territorial theory requires that the extraterritorial act  be intended to have an effect** within this country. Despite  language in the indictment alleging that these sexual offenses were committed 'while in course of committing the offense of bringing, encouraging and inducing aliens into the United States'  they are clearly separate offenses.  It simply cannot be said that the act of sexually assaulting a woman in Guatemala or Mexico  was intended to have an effect within the United States merely because the defendant [Velazquez-Mercado] was otherwise helping to bring the victim to this country ". (emphasis added). 697 FSupp 292.

(iii)   In the instant case the facts are different but the same principle of law applies:   It simple cannot be said that the alleged offensive conduct of the Petitioner  **in the Sovereign Country of Mexico**  ( the sole basis of consideration for the Court's upwardly departure)  was intended to have any effect within the United States merely because the Petitioner was otherwise helping to transport a friend within the Sovereign State of Texas,  or by the possession of his firearms (charges of conviction).

(iv)   " It is incumbent on a court of the United States, whether trial or appellate, to dismiss an action whenever it appears that subject matter jurisdiction is lacking,  and the court **must do sua sponte**  if the parties have not brought  the issue to the attention of the court", **Marshall  v  Gibson's Products Inc of Plano 584 F2d 671-672 (5th Cir 1978)** , citing Mansfield, Coldwater & Lake Michigan Railway v  Swan  111 US 379, 4 S Ct 510, 28 LEd 462 (1884).  This is the  "first principle of federal jurisdiction" P. Bator, P. Mishkin, D. Shapiro & H. Welschler, Hart & Welschler's the Federal courts and the Federal System 385 (2nd ed. 1973).

(12)   There are no basis for jurisdiction in the instant case. This is a cause where **Juan Portillo** (Sr) **a Mexican Citizen resident of the Sovereign**

CSMPDF - www.tsxsu.com

**Country of Mexico** on or about **August 26, 1998** crossed the Mexico/United States border at Roma Texas where he alledgely **made a complaint** of a possible kidnaping **in the Sovereign Country of Mexico** of **another Mexican Citizen** , Enedelia Portillo Sanchez **also a resident of the Sovereign Country of Mexico** by the Petitioner who **is also a Citizen of Mexico** . **EXHIBIT "K"** incorporated herein.

(13)   A **second complaint** was filed by FBI agent Freddy Vela **on September 3, 1998** (Criminal complaint B98-3787M) at Brownsville Texas. **EXHIBIT "L"** incorporated herein.

In his complaint agent Vela asserted that the alleged kidnaping **took place " in Cameron County, in the Southern District of Texas"** **in direct conflict** with the complaint filed on August 26, 1998 by Juan Portillo (Sr.) where he allegedly asserts it happen---if it did happen---in Sabinas Hidalgo Nuevo Leon, Mexico.

(i)   The Affidavit attached to FBI agent Freddy Vela's complaint showing the facts on which his complaint was based **was SEALED by the Court. EXHIBIT "L".**

**(14)**   The Government has refused numerous Petitioner's efforts to obtain copies of the conflicting complaints and sealed affidavits:
First by Certified letters #s P213 632 513(July 28, 1999); followed by Motion to compel, cause 1:99-cv-00684(October 12, 1999); Civil action, cause 1:99-cv-00801(December 16, 1999); Motion for judgment on the pleadings. Summary Judgment(May 1, 2000); and last, Motion to compel prosecutor's duty to disclose[Criminal] filed November 11, 2000. All to no avail, the Government has made no effort to disclose and the Courts have not made any relevant ruling.

(15)   The alleged Petitioner's conduct **in the Sovereign Country of Mexico** (counts No. 3 and 4 of the indictment) dismissed per plea agreement were beyond competence of Congress to proscribe.

The U.S. Supreme Court has held: "because jurisdiction is ordinarily exercised on the basis of territorial boundaries, [courts] generally presume that Congress intended the legislation to apply only within the territorial boundaries of the United States

CUtePDF - www.tsolve.com

absent statutory language or an express statement by Congress to the contrary", U.S. v  Bowman 260 US 94, 98, 43 S Ct 39,40, 67 LEd 149 (1922). Restatement (Third) of Foreign Relations Law of the United States § 402, comment. a. cited on U.S. v Vazquez-Velasco 15 F3d 833 (9th Cir 1994).

      (i)    In absence of explicit congressional directive, courts do not give extraterritorial effect to any statute that violates principles of International Law. U.S.  v Vazquez-Velasco, supra.

  (16)   Nothing in the face of statutes 18 USC § 1201(a) and § 2423(a) evidences a congressional intent to apply these statutes extraterritorially.  Congress did not intend to assert jurisdiction over the Petitioner under statutes governing offenses alleged in counts #s 3 and 4 of the Indictment.  A principle of preeminence in federal jurisdiction is that federal courts are courts of limited jurisdiction; the exercise of federal jurisdiction is proper only when prescribed by Congress, Chicot County Drainage District  v  Baxter State Bank 308 US 371, 376, 60 S Ct 317, 319, 84 LEd 329 (1941); Edwards  v  Selective Service Local Board No. 111,  432 F2d 287, 290 (5th Cir 1970) cert. denied 402 US 952, 91 S Ct 1637, 29 LEd 2d 122 (1971).

      (i) Corolary to this  principle is that Congress may withhold from the federal courts  jurisdiction **over a class of cases**  even though the judicial power of the United States  **includes that class.**

  **(17)**   The task seems to be to examine the actions of Congress to determine whether the instant case comes within the perimeters of federal jurisdiction.

    The leading case of United States  v  Bowman, supra states:
" The necessary locus when not specially defined, depends upon the purpose of Congress as evidenced by the description and nature of the crime and  **upon the territorial limitation**  upon the powers and jurisdiction of a government to punish crime under the Law of Nations" (emphasis added)  260 US at 97-98, 47 S Ct at 41.

  (18)   In the instant case Congress has explicitly placed a territorial limitation

-12-

upon the statutes.  The express language of Title 18 USC § 1201(a)(2) provides that the prohibited conduct  against the person **is done within the special maritime and territorial jurisdiction of the United States.**

(i)    The Record is absent of any proof that the Government established that the  Petitioner wilfully transported Enedelia Portillo Sanchez in interstate or foreign commerce [1201(a)(1)]  within the special maritime and territorial jurisdiction of the United States.

(ii)    It is instructive that in United States  v  McRary 665 F2d 675(1982) [point of law 2.]  the Fifth Circuit Court of Appeals held:

> " **foreign commerce jurisdictional basis for prosecution under federal kidnapping statute [18 USC § 1201]** mandates  **that the kidnapping take place  in the United States and the victim subsequently transported to a foreign state ".** (underscore added)

holding that  **is in direct conflict**  with the reading of the Indictment:

> " **defendant—wilfully transported said minor, in foreign commerce, from the Country of Mexico  to  the Country of the United States "**

(iii)    Nowhere in the face of the Record is established proof that the Petitioner transported Enedelia Portillo Sanchez in foreign commerce from the Country of Mexico  to  the Country of the United States  or viceversa.

(iv)    Interstate or foreign commerce transportation of the alleged victim is a  necessary element  of the substantive offense under Title 18 § 1201(a)(1).

(19)    Title 18 USC § 2423(a)  demands transportation in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States.

(i)    The Record is absent of any proof that the Petitioner did knowingly transport Enedelia Portillo Sanchez in foreign commerce from the Country of  Mexico  to the Country of the United States with the intent to engage in any illegal activity.

(ii)    No where in the Record is proof that the Petitioner did any interstate transportation of Enedelia Portillo Sanchez.

(20)    The following language from "Bowman", supra, is instructive:

> " crimes against private individuals which affect the peace
> and good order of the community **must** of course be committed
> within the territorial jurisdiction of the government where
> it may properly exercise it.  If punishment of them is to be
> extended to include those committed outside of the strict ter-
> ritorial jurisdiction,  it is natural for Congress. to say so
> in the statute,  and failure to do so  will negate the purpose
> of Congress in that regard".(underscore added), 260 US at 98,
> 43 S Ct at 41.

(21)    As applied to the instant case, Congress not only failed to express that
statutes 18 USC § 1201(a)(1) and § 2423(a) should apply in Foreign  Nations, but
explicitly limited their intended territorial application.

(22)    The U.S. Supreme Court has held that if a subject matter jurisdiction defect
exist it may be raised at any time, even on appeal, and **that the Court is under duty
to point it out**  if parties do not, Louisville & Nashville RY Co  v  Mottley 211 US
149, 29 S Ct 42, 53 LEd 126 (1908).

    (i)    Petitioner respectfully avers that the United States District Court,
supra, and the Federal Government lacked jurisdiction from which to entertain his In-
dictment as a matter of law,  let alone to try the Petitioner and sentence him to a
term of imprisonment.

    (ii)   and that the U.S. District Court, supra, was under duty to point it
out and failed to do so.

(23)    Retained defense counsel Jose A. Esquivel's failure to recognize and object
in an effective manner to the Court's lack of jurisdiction, error compounded by retain-
ed appeal counsel Richard B. Gould who expressly refused Petitioner's specific, written
request for counsel to raise the jurisdictional issue on appeal, violated Petitioner's
constitutional right  **to effective assistance of counsel** guaranteed to a criminal

-14-

defendant by the Due Process Clause of the Fifth Amendment of the United States of America Constitution, and which right the U.S. Supreme Court has expressly or impliedly derived from the Sixth Amendment right to counsel. **EXHIBITS " " and " "** incorporated herein.

McMann v Richardson 397 US 759, 25 LEd 2d 763, 90 S Ct 1441, citing its previous decision in Gideon v Wainwright (1963) 372 US 335, 9 LEd 799; Evitts v Lucey (1985) 469 US 387, 83 LEd 2d 821, 105 S Ct 830; Unites States v Cronin (1984) 466 US 468, 80 LEd 2d 657, 104 S Ct 2039.

Both attorneys failed to raise matters of law of paramonut importance.

- II -

1. Whether Petitioner's constitutional right to be deprived of liberty as punishment for alleged criminal conduct **only to the extent authorized by Congress** has been violated.

2. Whether such violation constituted a fundamental miscarriage of justice.

(a)    Title 18 USC § 922(g)(1) describes **only the conduct forbidden.** It does not provide for any penalty.

Gun Control Act of 1968 - Public Law 90-618.

(b)    Section 924(b) **provides the penalty** for violation of § 922(g)(1): "Whoever, **with intent to commit therewith** [with the firearm]  an offense punishable by imprisonment for a term exceeding one year, or **with knowledge or reasonable cause to believe** that an offense punishable by imprisonment for a term exceeding one year **is to be committed therewith** [with the firearm], <u>ships</u>, <u>transports or receives</u>  a firearm or any ammunition in **interstate or foreign commerce** shall be fined not more than $10,000.oo, or imprisoned not more than ten (10) years, or both" (emphasis and underscore added). Gun Control Act of 1968, Public Law 90-618, October 22, 1968.

Petitioner respectfully avers that  **"sole possession"** <u>is not</u> <u>proof</u>  **of**  **intent to commit an offense,** or that an offense **is to be committed therewith.**

(c)    Eighteen (18) years later Congress  amended (partially) Section 924 of title 18 USC- Public Law 99-308- May 19, 1986-"Firearms Owner's Protection Act", Sec. 104 amendments to Section 924 :

(1)  Section 924(a) is amended [now 924(a)(1)
(2)  Section 924(c) is amended [now 924(c)(1)
(3)  Section 924(d) is amended [now 924(d)(1)

(4)  New Section 924(e)(1) is added

(5)  Section 924(b) the penalty section for violation of 922(g)(1) .......
    <u>WAS NOT AMMENDED</u>.

Therefore, punishment for violation of 922(g)(1)  **remains** as provided by § 924(b) of the Gun Control Act  of 1968 (as it was when Petitioner was convicted of posses-

CitiPDF - www.texho.com

sion of a firearm). Section 924(b) punish **only** the **shipping, transportation or receipt** of a firearm or any ammunition **in interstate or foreign commerce.**

Section 924(b) **does not punish possession** of a firearm.

(d) The Federal Criminal Code and Rules (1999 edition) and United States Code Annotated Title 18 misrepresent the amendments to Section 924 made by Public Law 99-308- May 19, 1986 (pages 456 to 459) as follows:

"(1) Penalty for violation of subsection (g) of section 922 is provided by § 924(a)(2) :"whoever knowingly violates subsection---(g)--- of section 922 shall be fined as provided in this title, imprisoned not more than ten (10) years, or both".

(2) Public Law 99-308 does not provide for such punishment.

(e) It is well settled that the power to define federal criminal offenses and to **prescribe punishment** to be imposed upon those found guilty of them **resides wholly with Congress,** Albernaz v United States, 450 US 333, 101 SCt 1137, 67 LEd 2d 275.

One may be subject to punishment for a crime in federal court only for commission or omission of an act defined by statute or by regulation having legislature authority, and then **only if punishment is authorized by Congress,** Viereck v US App DC 1943, 63 SCt 561, 318 US 236, 87 LEd 734.

Petitioner respectfully avers that Congress **has not authorized punishment for possession of a firearm** under 924(b), the penalty section for violation of 922(g)(1)

(f) Petitioner Hugo P. Absalon's punishment for violation of 922(g)(1) pursuant to 924(a)(2), supra, of the Title 18 USC Annotated, constitutes a fundamental miscarriage of justice. The U.S. Supreme Court has defined "fundamental miscarriage of justice" as the conviction of one who is factually innocent, Murray v Carrier, 477 US 478, 495-96, 106 SCt 2639, 2649, 91 LEd 2d 397 (1986); Callins v Johnson, 89 F3d 210, 213 ( 5th Circ) cert. denied____US___, 117 SCt 530, 136 LEd 2d 416 (1996).

-17-

A defendant is actually innocent of a sentence he is not eligible to receive, Sones v Hartgett, 61 F3d 410, 418 (5th Cir. 1995) . The Fifth Circuit held: "In order to be actually innocent of a non-capital sentence, the Petitioner must show that "but for the constitutional error he would not have been legally eligible for the sentence he received", citing Smith v Collins, 977 F2d 951, 959 (5th Circ. 1992).

In Whalen. v United States, 445 US 684, 63 LEd 2d 715, 100 SCt 1432, in pertinent part the United States Supreme Court held that: " because **that error** denied the Petitioner his constitutional right to be deprived of liberty as punishment for criminal conduct **ONLY  to the extent authorized by Congress** , we reverse the judgment of the Court of Appeals" (emphasis/underscore added).

Petitioner avers that he has been deprived of his constitutional right to be deprived of liberty as punishment for criminal conduct **only to the extent authorized by Congress. Congress has not** authorized penalty for possession of a firearm for **a violation of 922(g)(1).**

**A judgment convicting a defendant of a crime for which there is no statutory authority [penalty provision], although entered on a plea of guilty, and the fine imposed has been paid, is VOID, Mossew v United States, C.C.A.N.Y., 1920, 266 F 18.** (Emphasis/underscore added)

If a judgment is void, it is a nullity from the outset, and when a rule providing for relief from a judgment is applicable, **relief is not a discretionary matter, it is mandatory** ,  Orner v Shahala 30 F3d 1307, 1310, (10th Circ. 1994).

-18-

III.   In Bender  v  Williamsport area School District, 475 US 534, 89 LEd 2d

511, 106 S Ct 1326 the United States Supreme Court restated certain ba

sic principles that limit the power of every federal court: " Federal courts are

not courts of general jurisdiction; they have only the power that is authorized by

Article III of the Constitution  and  **the statutes enacted by Congress pursuant there**

**to**  ". See, e.g. Marbury  v  Madison, 1 Cranch 137, 173-180, 2 LEd 60 (1803).

1.  Congress enacted Title 8 USC § 1329 vesting jurisdiction upon Sections

1321, 1322, 1323, 1324(a)[offense of conviction], 1324(b), 1324(c), 1324(d), **1325**,

1326, 1327 and 1328 of Title 8 USC.

(a) which brings out the following question:

Whether application of Title 8 USC

§ 1329 in granting jurisdiction to 8 USC § 1324 is therefore **VOID AB INITIO**  and

conviction therefrom is not merely erroneous but it is illegal and void.

2.  The following facts establish that 8 USC § 1329 unlawfully allows ju-

risdiction for the cases to proceed:

(a) pursuant to § 1329, supra, the courts acquire jurisdiction to proceed under

§ 1324, but if : § 1329  **is unconstitutional**, then, the jurisdiction thereunder for

§ 1324 to proceed   **is null and void**  and therefore any proceeding commenced under

§ 1324 **IS VOID.**

(b) federal courts possess no jurisdiction over crimes and offenses committed

against the authority of the United States, except what is given to them by the po-

wer that created them, nor can they be invested with any such jurisdiction beyond

what the power ceded to the United States by the Constitution authorizes Congress

to confer, -from which it follows that before an offense can become cognizable in

a federal court the **MUST**  first define or recognized as such, and to affix a punish-

ment to it,  **AND CONFER JURISDICTION**  upon some court to try the offender" (emphasis

and underscore added), as stated in :

United States  v  Hall, Ohio 1879, 98 US 343, 8 Otto 343, 25 LEd 180
United States  v  Coolidge, Mass 1816, 14 US 415, 1 Wheat 415, 4 Led 124

CHMPDF - www.texto.com

United States v Hudson, Conn 1812, 11 US 32, 7 Cranch 32, 3 LEd 259
United States v Worral, N.C. 1798, 2 US 384, 2 Dall 384, 1 LEd 426

It is essential to jurisdiction of federal courts that Congress shall have made the act a crime, affixed a punishment, **and declared** **the court that shall have the** **jurisdiction** , as stated in Oliver v United States, Cal 1916, 230 F 971, 145 C.C.A. 165, certiorari denied, 36 S Ct 721, 241 US 670, 60 LEd 1230 (emphasis added).

(1)   Part VIII of Chapter 12, Subchapter II—Immigration, of Title 8 Aliens and Nationality "General Penalty Provisions" defines or recognizes the offenses under Title 8 USC  and affix a punishment to them, **CONFERRING JURISDICTION** **upon the district courts of the UNITED STATES of all causes,** civil and criminal brought **by the UNITED STATES** [not the united States of America] **that arise under the provisions of this subchapter.**

(2)   **Title 8 USC § 1329** **confers jurisdiction** **to district courts.** Section 1329 reads as follows:

" § 1329  Jurisdiction of district courts.   The district courts of the UNITED STATES  shall have jurisdiction of all causes, civil and criminal, brought by the UNITED STATES  that arise under the provisions of this subchapter", inter alia.

(3)   The offenses of conviction, sections 1324(a)(1)(A)(ii) and 1324(a)(1)(A)(v)(II)  of Subchapter II, "Bringing in and harboring certain aliens"  are criminal causes that arose out of the provisions of Subchapter II, Part VIII of Chapter 12.

(4)   Title 8 USC § 1329 confers jurisdiction for all causes, civil and criminal  in violations of sections  1321, 1322, 1323, **1324(a)** (offense of conviction), 1324(b), 1324(c), 1324(d), **1325,** 1326, 1327 and 1328.

(5)   By opinion of the Office of Legal Counsel of the Department of Justice, this section **[ § 1329 ]** **conferring jurisdiction to district courts** **IS UNCONSTITUTIONAL** since it authorizes prosecution for eluding inspection under section 1325 of this title in a district other than the district at or near the border where the inspection should have taken place in violation of the Sixth Amendment. 1978(Counsel Inf.Op.) O.L.C. 110. ( 8 USC § 1329, note 1)

-20-

(6)    Therefore the **jurisdictional statute** for sections 1321, 1322, 1323, 1324(a)(offense of conviction), et seq, **IS UNCONSTITUTIONAL.**

(7)    An **unconstitutional act** **is no law at all**, and no court has a right to imprison a citizen **who has violated no law**; **such restrain, even if exercised by a court under the guises and form of law, it is as subersive of the right of the citizen as if it were exercised by a person not clothed with authority.** 39 Am Jur 2d § 28. Ex parte Siebold 100 US 371, 25 LEd 717 (1879) ;  Ex parte Schatz 307 Mo 67, 269 S.W. 383, 38 A.L.R. 1032 (1925).

(i)    An unconstitutional law is void, and is not law.  A conviction under it is not merely erroneous, but is illegal and void.  Ex parte Royal, 117 US 241, 6 S Ct 734, 29 LEd 868;  Re Siebold, 100 US 371, 25 LEd 717.

(8)    Where a federal court is without jurisdiction of the offense, judgment of conviction of the court and/or jury is **VOID AB INITIO** on its face. Bauman  v United States 156 F2d 534, (C.C.D. La 1946);  and where ths subject of jurisdiction in the court in the court over the person, subject matter, or **the place where the crime was committed** can be raised in any stage of the criminal proceedings, including execution of sentence, **it is never presumed** , **but must always be proved,** and it is never waived by the accused, United States  v  Rogers 23F 658 (D.C. Ark 1885).

3.    If a judgment is void it is a nullity from the outset, and when a rule providing for relief from judgment is applicable, relief is not a discretionary matter, it is mandatory.  Orner  v  Shahala 30 F3d 1307,     (10th Cir 1994). Fed.R.Cv.P. rule 60(b)(4).

(a)  Rule providing for relief from void judgment is not subject to any time limitations. Fed.R.Cv.P. 60(b)(4), 28 U.S.C.A.

4.    A judgment convicting a defendant of a crime for which there is no statutory authority although entered on a plea of guilty and the fine imposed has been paid  IS VOID.  Mossew  v  United States C.C.A.N.Y.  1920, 226 F18.

5.   It has long been held that a court may determine in a proceeding the constitutionality of the statute under which the Petitioner is held, and if proven to be unconstitutional, discharge him. See Minnessota  v  Barber 136 US 313, 10 S Ct 862, 34 LEd 455 (1890);  in re Savage 134 US 176, 10 S Ct 389, 33 LEd 842 (1890).  39 Am Jur 2d § 28.

(6)   Whereever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action. Rule 12(h)(3) of the Fed.R.Cv.P.

CIViPDF - www.fastio.com

## - IV -

IV.   Petitioner Hugo P. Absalon [Defendant] did not plead guilty to, nor was he found guilty beyond a reasonable doubt by a jury of the alleged aggravating facts  conduct that formed the basis  for counts #s 3 and 4 of Indictment B98-506 dated September 30, 1998.

1.   The Government agreed  that it would not further criminally prose-cute the Petitioner for alleged offenses arising from conduct charged on counts #s 1, 3, 4, 6, 7, and 8 of the Indictment. **EXHIBIT "M"**  (Dismissed counts-record ex-cerpts) . Page # 6 of the Plea Agreement, paragraph # 12. CRIMINAL DOCKET **B98-506-01**

(a)  U.S. District Judge Hilda G. Tagle, sentencing judge,  accepted the plea agreement as written.

comment

(*)  (1)  U.S.S.G.  § 6B1.2(a) implies that sentencing court should only accept plea agreement that adequately reflect the seriousness of the actual offense behavior. The language in this section closely tracks that of Fed.R.Crim.P.  rule  11(e)(3) which requires that if a sentencing court has accepted a plea agreement then the sen-tence promulgated should embody the disposition agreed in the plea bargain agreement.

(*)  (2)  It seems that the proper way to address the inadequacy of a sentence is not  to factor in  the dismissed charges.  Instead the sentencing court should have exercized its power under Fed.R.Crim.P.  rule  11(e)(4)  and reject the plea agreement if it felt that the agreement was too lenient.  If the leniency of the agreement did not come apparent until after the presentence report investigation, which very often occurs in the period between submission of a guilty plea and sen-tencing,  then the sentencing court should have offered the Petitioner the oppor-tunity to withdraw his plea.

(*) as stated by Golberg and De Moss Fifth Circuit Judges in  United  States  v Ashburn  38 F3d 803 (5th Cir 1994).

CUMPDF - www.fastio.com

(3)   The Government breached its plea agreement, and Sentencing Judge Hilda G. Tagle abused her discretion when considered dismissed charges pursuant to plea agreement  for sentence enhancement purposes by the preponderance of the evidence standard of proof.  EXHIBIT  "M" .

(b)  In Apprendi  v  New Jersey  530 US_____ , 147 LEd 2d 435, 120 S Ct_____ the United States Supreme Court held:

(1)  " At stake in this case are constitutional protections of surpassing importance:  the proscription of any deprivation of liberty without due process of law " ,  Amdt. 14, and the guarantee that  " [i]n  all criminal prosecutions, the acussed shall enjoy the right to a speedy and public trial, by an impartial jury ", Amdt. 6 .  Taken together, these rights indisputably entitle a criminal defendant to " a jury determination that [he]  is guilty of every element of the crime which with he is charged,  beyond a reasonable doubt ".  United States  v  Gaudin 515 US 506, 510, 132 LEd 2d 444, 115 S Ct 2310 (1995); see also Sullivan  v  Louisiana 508 US 275, 278, 124 LEd 2d 182, 113 S Ct 2078 (1993);  Winship, 397 US at 364, 25 LEd 2d 368, 90 S Ct 1068 ( " [T]he  Due Process Clause ptotects the accused against conviction except upon  proof of beyond a reasonable doubt of  every fact  necessary to constitute the crime with which he is charged "  EXHIBIT  "N"  incorporated herein.

(2)  Quoting Justice Thomas in his concurrence in "Apprendi" ,  the 5th Circuit Court of Appeals  stated : " if the legislature defines some core crime [as in counts #s  2  and  5  of Petitioner's conviction]---and then provides for increasing the punishment of the crime upon a finding of some  aggravating fact--of whatever sort-- [as in the alleged conduct that formed the basis for counts #s 3 and 4 considered for enhancement]--  the core crime and the aggravating fact together constitute and aggravated crime , just as much as grand larceny  is an aggravated form of petit larceny. The  aggravating fact  is an element of the aggravated crime" "Apprendi", 120 S Ct at 2368 "  ,  cited on United States of America  v  Rodney

-24-

Sloan Dogget;  Dunois "Dee" Beman No. 99-50380, (5th Cir October 6, 2000).

(i)  Accordingly, the alleged aggravating conduct contained in dismissed counts #s  3  and  4  **are an element**  of the alleged core crimes of conviction counts #s  2  and  5; therefore every aggravating fact thereto  **must be** **proven** **beyond a reasonable doubt.**

(ii)  Because the Petitioner  **did not**  admit to any of the aggravating facts  that provided the basis for the sentence enhancement and the aggravating facts **were not**  found by a jury beyond a reasonable doubt, rather were merely determined at sentencing by the U.S. District Judge Hilda G. Tagle under the preponderance of the evidence standard of proof the Petitioner's substantial Due Process Clause rights were erroneously affected in violation of the United States of America Constitution.

(c)  The U.S. Supreme Court has held: " Lets there remains any doubt about the **constitutional stature** of the  **reasonable doubt standard,** we explicitly hold that the Due Process Clause protects the accused against conviction except upon **proof beyond a reasonable doubt** **of every fact** necessary to constitute the crime with which he is charged" , In Re Winship 397 US 358, 25 LEd 2d 368 at 375, 90 S Ct 1068, 51 Ohio Ops 2d 323 (1970) as cited in McMillan  v  Pennsylvania 477 US 79, 91 LEd 2d at 83, 106 S Ct 2411.

(d)  The Constitution provides that no person shall be  "deprived of life, liberty or property " **without Due Process of Law.** The Fifth Amendment applies to limitations to the Federal Government, Re Winship 397 US 358, 25 LEd 2d 383, 90 S Ct 1068.

-25-

# C O N C L U S I O N

1.  Petitioner's restrain was illegally initiated and is being illegally en-
forced by federal agencies of the UNITED STATES without authority of the Constitu-
tion and of Congress.

2.  Petitioner Hugo P. Absalon is under custody of the Director of the Federal
Bureau of Prisons and Janet Reno Attorney General of the UNITED STATES in violation
of his constitutional rights due to usurpation of authority and jurisdiction by the
United States Federal Government, and the United States District Court, supra, which:

(a) erroneously affected Petitioner's substantial Due Process Rights in vio-
lation of the United States of America Constitution.

(1) violated Petitioner's constitutional right to be deprived of liberty as punish-
ment for alleged criminal conduct only to the extent authorized by Congress.

(2) in light of "Apprendi", supra, violated Petitioner's Due Process Rights protec-
ting the accused against conviction except upon proof beyond a reasonable doubt of
every aggravating fact considered for sentence enhancement.

(3) conviction pursuant to 8 USC §§ 1324(a)/1329 is not merely erroneous but it is
illegal and void.

3.  While statutes 18 USC §§§ 922(g)(1), 1201(a) and 2423(a) are constitutional
if applied properly and appropiately:

(a) convictions under title  18 USC §: 922(g)(1)
and 8 USC §§ 1324(a)(1)(A)(ii) and 1324(a)(1)(A)(v)(II), and sentence enhancement for
conduct which forms the basis of title 18 USC §§ 1201(a) and 2423(a) are unconstitu-
tional on their face **as applied to the Petitioner** as a matter of law.

(b) the application of title 8 USC §§ 1324(a)/1329
non-positive federal statutory law fails to meet the requirements of the Due Process
Clause and the Equal Protection Clause of the Fifth and Fourteen Amendments of the

-26-

United States of America Constitution. Because it circunvents due process proce-
dures as to making positive-law that could reach the Petitioner as a citizen  of
Columbia (D.C.) in the Soverein State of Texas allegedly. Not-positive law is res-
tricted to aplication within jurisdictional parameters of where the federal govern-
ment lawfully possesses exclusive legislative jurisdiction, where such policy or re-
gulation **cannot apply to the Petitioner.**

4.   Wherefore Petitioner questions this Court jurisdiction,  even at this late
stage of sentence the Petitioner possesses a fully cognizable separate demonstration
of cause in addition to a showing of various violations of constitutional rights.

5.   A jurisdictional error also possesses full constitutional dimension:
" It is axiomatic that federal courts are Courts of limited jurisdiction. They may
hear **only those cases entrusted to them by a grant of power contained in either the
Constitution or by Congress"** , City of Kenosha  v  Bruno 412 US 507, 511 (1973). It
would therefore **be an error of constitutional dimension for the Court to entertain
a claim (or prosecution) not properly within its jurisdiction,** Srour  v  Barnes 670
F Supp 18, 30 (D.C. D.C. 1987). (emphasis added).

6.  "It is elementary that a federal court  **cannot create jurisdiction where none
existed.**  Thus, a federal court cannot assert jurisdiction over a claim that is out-
side of the court's jurisdiction **merely by relying on the Court's own prior decision
that jurisdiction was proper... 'It is a courts obligation to dismiss a case whenever
it becomes convinced that it had no proper jurisdiction, no matter how late** that wis-
**dom may arrive",** Wyoming  v  Oklahoma 502 Us 437, 462 (1991)(emphasis added);  Walsh
v  McGee 918 F Supp 107, 112 (S,D.N.Y. 1996).

(a)  Petitioner respectfully submits that
the U.S. District Court, supra, failed on its duty to recognize its lack of jurisdic-
tion and accordingly dismiss the action.

(1)   Under the Federal Constitution, no court, state or federal may serve

-27-

CbtPDF - www.tex/w.com

as an accomplice in the wilful transgression of the laws of the United States, laws by which the judges in every State are bound under Article Six of the United States of America Constitution. Lee  v  Florida 392 Su 378, 88 S Ct 2096, 20 LEd 2d 1166.

7.   Petitioner respectfully submits:

(a) Whether the Federal government and the U.S. District Court, supra, failed to secure and establish Criminal Legislative Jurisdiction and lacked subject matter and locus in quo jurisdiction from which to entertain his indictment and conviction as a matter of law pursuant to Title 8 USC § 1324(a)/1329,  and Title 18 USC § 922(g)(1), and for enhancement purposes § 1202(a) and 2423(a).

(b) Whether Petitioner's conviction and unlawful time in incarceration offend the cruel and unusual punishment principles of the Eight Amendment of the United States of America Constitution.

8.   The law provides that once federal jurisdiction has been challenged **it must be proven** , Hagans  v  Lavine (1974) 415 US 528 at 533, 94 S Ct 1372, 39 LEd 2d 577 (The U.S. Supreme Court held that where jurisdiction is challenged **IT MUST BE PROVEN**) (emphasis and underscore added).

(a) The Petitioner  **did challenged the Court's jurisdiction** since January 24, 2000, (Ex parte Motion pursuant to Rule 60(b) of the Fed.R.Cv.P.) . **EXHIBIT  " G " incorporated herein.**

(b) Ten (10) **MONTHS after filing** the Court **has not ruled on it.**

(c) Petitioner hereby certifies that he has communicated with the Government as stated in page # 3, paragraph 9. (a), (b), (c), (d) and (e) of this motion in an effort in good faith to resolve the subject matter, but has been unable to do so for lack of Government cooperation.

-28-

9.     Pursuant to Fed.R.Crim.P. (Evidence) Rule 301 the burden moves to the shoulder of the Government to bring forth <u>evidence</u> with which sustain its case, or in the alternative move by leave of court filing for the dismissal of the indictment, information or complaint and thereupon terminate prosecution.

(a) Government's burden must be restricted to the allegations raise in this Motion.

10.     Pursuant to Rule 201 of the Fed.R.Crim.P. Petitioner invokes Judicial Notice to be taken by this Honorable Court of adjudicative facts and U.S. Supreme Court authorities which are judicially binding upon the Court.

11. The term "Government as used throughout this motion includes The United States Attorney or any employee of the United States Department of Justice, agents of the Federal Bureau of Investigation, U.S. Border Patrol Service, U.S. Customs Service, U.S. Probation Office, and any other person acquainted or invloved with the United States Government or any other municipality or subdivision thereof.

12.     This motion is made by me on information and belief, except as to matters stated to be on personal knowlwdge. Sources of my information and the grounds of my belief are records in the official files of the United States District Court for the Southern District of Texas, Brownsville Division, documents originated by the United States Attorney's Office, the Federal Bureau of Investigation, the Unites States Probation Office, and conversations had with the Petitioner's former defense counsel and other inquiries made or caused to be made by me.

13.     Finally, Petitioner respectfully request that this Honorable Court rules <u>with particularity</u>  on each and every issue herein contained so he can appeal any unfavorable decision.

WHEREFORE, premises considered, the Petitioner prays that this Honorable Court will find that he has herein established trough undeniable and irrefutable facts

supporting points, documents and authorities that the Petitioner is unlawfully convicted and imprisoned and provide relief by issuing an ORDER producing him in Court, vacating the Judgment of conviction and dismissing Indictment B98-506 of September 30, 1998 for lack of jurisdiction and the other violations herein contained, ordering him released from federal custody, forthwith,; and grant such other relief as the Court may deem just and appropiate.

Executed this_____ day of December, 2000. pursuant to 28 USC 1746(1).

## CERTIFICATE OF SERVICE

The undersigned do hereby certify that I have forwarded original and two copies of the foregoing motion by depositing them at the F.C.I.-Medium Mail Box, Certified Mail #s  7099 3220 0008 1450 4479 and 7099 3220 0008 1450 4462 with sufficient postage prepaid and properly addressed to:

CLERK OF THE U.S. DISTRICT COURT        and        UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF TEXAS                          SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION                                BROWNSVILLE DIVISION
600 E. Harrison St. Room 101                        600 E. Harrison St.
Brownsville, Texas  78520                           Brownsville, Texas  78520

so done this  3rd day of December of the year 2000.

Hugo P. Absalon
82491-079  "KB"
F.C.I.-Medium
P.O. Box 26040
Beaumont, Texas 77720-6040

## V E R I F I C A T I O N

In the Nature of 28 USC § 1746(1), I do hereby attest that to the best of my Knowledge, current information, undestanding and belief, all matters of law and fact as set out above are true and correct, materially complete and not misleading, so HELP GOD.

Executed this 3rd day of December of the year 2000.

-30-

# A F F I D A V I T

Re:  Motion to vacate Judgment and dismiss Indictment  B98-506 of 9/30/98.

Petitioner Hugo P. Absalon, being competent to testify state the following:

The practice in assigning motions has been for the trial court to determine the merits of the action.

Nothing in the legislative history suggest that  "court"  refers to a specific judge and the procedural advantages are available whether or not the  rendering judge rules on the motion.

A judge or court may be in a legal sense impune from a claim that it is guilty of wrong because of its improper exercise of jurisdiction. However, it has no such protection where it lacks jurisdiction and the issue has been raised and asserted. When the lack of jurisdiction has been shown, a judgment rendered is not only void, but it is also usurpation. Jurisdiction is a fundamental prerequisite, an usurpation thereof is a nullity,  "22 Corpus Juris Secundum, Criminal Law, § 150, p. 183".

In the case at bar, a finding of lack of jurisdiction would result in liability for the rendering judge.  It will be difficult for U.S. District Judge Hilda G. Tagle to review it objectively.

The U.S. Supreme Court has held that if a subject matter jurisdiction defect exist the court is under duty to point it if parties do not (Louisville & Nashville Ry.Co.  v  Mottley 211 US 149, 29 S Ct 42, 53 LEd 126 (1908).

The Petitioner has the right to an impartial judge, as held in Ward  v  Village of Monroeville, 409 US 57, 93 S Ct 80, 34 LEd 2d 267 (1972).

Wherefore, premises considered, the rendering judge should not be allowed to rule on the attached motion.


Executed this 3rd day of December,  2000 pursuant to Title 28 USC § 1746(1)


_____
Hugo P. Absalon


-31-

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

### BROWNSVILLE DIVISION

UNITED STATES OF AMERICA

                Plaintiff—Respondent      )

      vs                             )

                                    ) Crim. B98—506

Hugo P. Absalon                      )

                Defendant—Petitioner      )

Motion to vacate Judgment and dismiss Indictment B98—506 of 9/30/98.

## A P P E N D I X

================================

E X H I B I T S:

    "A" , "B" , "C" , "D" , "E" , "F"

    "G" , "H" , "I" , "J" , "K" , "L"

    "M"  and  "N".

SUPREME COURT OF THE UNITED STATES
OFFICE OF THE CLERK
WASHINGTON, D. C. 20543

October 30, 2000

Mr. Hugo P. Absalon
#82491-079 "KB"
P. O. Box 26040
Beaumont,  TX 77720-6040

```
==================
E X H I B I T  "A"
==================
```

Re:  Hugo P. Absalon
     v. United States
     No.  00-6133

Dear Mr. Absalon:

The Court today entered the following order in the above entitled case:

The petition for a writ of certiorari is denied.

Sincerely,

*William K. Suter*

William K. Suter, Clerk

EXHIBIT  "A"

# B

1       AUSA GARZA:  Pass the witness at this time, Your Honor.

2       THE COURT:  Mr. Esquivel.

3       MR. ESQUIVEL:  May I proceed, Your Honor?

4                           CROSS-EXAMINATION

5  BY MR. ESQUIVEL:

6  Q.  Let me ask you a couple of questions.  All this that you're

7  testifying to today with Mrs. Garza when Mrs. Garza asked you

8  about that, all that took place in Mexico, correct?

9  A.  Yes.

10  Q.  Okay.  Now, how long have you known Mr. Absalon during that

11  time that he was over there in Mexico?

12      AUSA GARZA:  Your Honor, that question has been asked

13  and answered.

14      THE COURT:  I'll allow it.  Go ahead.

15  A.  Well, how long?  He would just come by -- he would just

16  come by every once in a while and stay there and he would go

17  with another family.

18  BY MR. ESQUIVEL:

19  Q.  And did he become friends of the family?

20  A.  Well, you could say he was and he wasn't.

21  Q.  Did he provide money to your family?

22  A.  He never gave us any money in cash.  Sometimes he would

23  help us out with meals or food, but in cash, no.

24  Q.  So he provided food for your family?

25  A.  Yes.  Meals, yes.


                Captured and Transcribed by Computer - Eclipse


EXHIBIT  "B"

1  was abusing you?

2  A.  Yes.

3  Q.  And he told you that he would help you out in that respect?

4  A.  Yes.

5  Q.  Is that one of the reasons why you went with Mr. Absalon

6  because of what your dad was doing to you?

7  A.  He asked me many times to go with him.  I never wanted to

8  leave my house. See 69(22-24) 70(19-24) 71(1-5)

9  Q.  Hugo Absalon never abused you -- never sexually abused you?

10  A.  No.

11  Q.  He never touched you in your private parts or your breast

12  area, none of that sort?

13  A.  No.

14  Q.  Now, all these pictures that were taken, Ms. Sanchez, all

15  the pictures were taken in Mexico?

16  A.  Yes.

17  Q.  He never took any pictures of you whatsoever here in the

18  United States once you crossed the bridge?

19  A.  No.

20  Q.  Okay.  During the time that you left the school and you had

21  plenty of opportunities to leave him, correct?  Leave

22  Mr. Absalon?

23  A.  Yes.

24  Q.  But you never did?

25  A.  No, for two reasons.  The first reason is I didn't have

Captured and Transcribed by Computer - Eclipse

**EXHIBIT  "C"**

1   it and get your highest, which would make it -- Count 3 would

2   be the highest of all of them if you were to --

3           THE COURT:  Okay.  All right.  Mr. Esquivel, you may

4   address The Court?

5           MR. ESQUIVEL:  Judge, again I stress to the fact,

6   Judge, that he pled to two counts, which was Count 2, which is

7   transporting the alien and Count 5, which was a felony in

8   possession of a firearm, Judge.  We're asking The Court for him

9   to be sentenced to those particular counts that he got

10  sentenced to, that he pled guilty before Your Honor.  And he's

11  ready to accept sentencing for that, Judge.

12          THE COURT:  All right.

13          MR. ESQUIVEL:  All these offenses, the kidnapping,

14  Judge, all that occurred -- if it did occur, it happened in

15  Mexico.  It never happened here in the United States.  That's

16  why he pled guilty to those two counts, Your Honor.  The

17  transporting that he transported from Brownsville to Sarita and

18  also he had possession of four weapons.

19          THE COURT:  What is your argument -- I mean, like when

20  did the kidnapping end in your client's mind or I guess in your

21  legal analysis?

22          MR. ESQUIVEL:  In my client's analysis, Your Honor, he

23  felt that what happened in Mexico had no relevance to what

24  happened in the United States.

25          THE COURT:  Okay.  Give me your analysis, your legal

Captured and Transcribed by Computer - Eclipse

EXHIBIT  "D"

September 9th. 1999.

Richard B. Gould
**ATTORNEY AT LAW**
4800 North, 10th, Suite "F"
Mc Allen, Texas , 78504

Certified
REGISTERED MAIL No. Z 436 161 993
Return Receipt requested.

Mr. Gould:

In order to avoid misunderstandings, and due to the paramount importance of the subject of **JURISDICTION** for the ultimate achievement of my Appeal, jurisdiction was left to be addressed separately, and in addition of the two issues raised in your brief, by means of amendment or suplementation; or by a **WRIT OF HABEAS CORPUS** brougt in the Nature of 28 USC Section 1332; Section 2241 (a)(2) and (3), which seems to be the most adequate; the purpose of which is to test the legality of the detention and imprisonment. This **WRIT guaranteed by the United States CONSTITUTION** of America, Article I, Section 9 and by State Constitutions.

I am under custody of Kathleen Hank-Sawyer, Director of the Federal Bureau of Prisons, and by Janet Reno, Esquire, Attorney General of the "United States" in violation of my Constitutional Rights, due to usurpation of **authority and jurisdiction** of the Federal government and through misaplication of Federal Statutory provisions set out and enumerated on the government charging instruments (of which you are aware of), which possess restricted application to Federal Agencies, and officers, agents and employees of the Federal government.

My restrain was illegally initiated and is being illegally enforced by Federal agencies of the "United States", without authority of the Constitution or Congress.

I want to enumerate my jurisdiction challege under Article III, Section 2 of the Constitution asserting the 28 USC Section 2241 is a case at law arising under Article III, Section 2 of the Constitution where my status and Constitutional Rights and Remedies are secured,
..."The course of decisions of the Supreme Court from Lange and Siebold to the present makes plain that restrains contrary to our fundamental law, the Constitution may be challenged on Federal Habeas Corpus even though imposed pursuant to the conviction of a Federal court of competent jurisdiction : Fay v. Noia 372 US 391, 9 L Ed 837, 83 S. Ct. 822, id. 851 (372 US 409).

The absence of federal legislative jurisdiction over the **LOCATION** of the purported violative activity of the undersigned, leaves the Department of Justice/ Attorney General and the courts without jurisdiction to prosecute and adjudicate the matters alleged against the undersigned in the indictment and further proceedings.

**EXHIBIT "E"**

# RICHARD B. GOULD

### ATTORNEY AT LAW

4800 NORTH 10TH , SUITE F
MCALLEN, TEXAS 78504

BOARD CERTIFIED - CRIMINAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

TELEPHONE: (956) 687-6626
FAX: (956) 687-6810

September 23, 1999

Mr. Hugo P. Absalon
82491-079 "KB"
P.O. Box 26040
Beaumont, Texas 77720-6020

Dear Mr. Absalon:

Our office has received your two latest pieces of correspondence, the latter of which is dated September 9, 1999. It is true that the fee at issue was to be divided in such a manner that I would first look at the record and then we could determine whether to continue with the appeal, at which time, upon completion of the brief, the remainder of the fee would be due and payable.

I have discharged my responsibility. You state in your letter that you "find no justification for two allegedly highly qualified attorneys, past and present, to overlook the remedy for relief [of no jurisdiction]," which you allege was available to you from the very beginning of your case. Though it is true that some of the acts at issue occurred in Mexico, the acts comprising the offenses for which you ultimately pled guilty occurred in the Southern District of Texas.

The issue of jurisdiction has not been and will not be raised. It clutters the real issues in the case. Your choice is simple: (1) pay me for the services which I have discharged, i.e., pay me the balance, including the inordinate costs incurred by your numerous and lengthy collect calls; or (2) sign the motion to dismiss the appeal, as your intention to dismiss the appeal is evident from your refusal to pay me (notwithstanding the ability to pay) for the conscientious and well-researched brief that was filed on your behalf.

Other than filing a motion to set bond pending appeal, which I will file if my balance is taken care of, my responsibilities have been discharged, unless the Fifth Circuit orders oral argument, at which time I would travel to New Orleans to argue your case.

I am not your pen pal. I am not a trained circus monkey who is required to spend hour after inordinate hour researching each and every frivolous issue that comes to mind, so that I can write you yet another letter in response. That is not part of my job description, and I will not bend over backwards to please you by performing tasks that were not included in the fee I charged. I did what I am supposed to do. I read the record, and I filed a brief based on the meritorious issues presented in the record: no more, no less. Ineffective assistance of counsel was not shown by the record currently presented on appeal. That would have to be addressed in a 2255, something for which I have not been hired.

**EXHIBIT   "F"**

CMWPDF - www.twoka.com

A F F I D A V I T

United States District Court
Southern District of Texas
FILED

JAN 3 1 2000

Michael N. Milby, Clerk of Court

Re:Ex parte motion under F.R.C.V.P.
Rule 60(b).

Hugo-P. Absalon Petitioner, being competent to testify, state the fol-
lowing:

In Louisville § Nashville Ry. Co.  vs.  Mottley, 211 US 149, 29 S.Ct. 42,
53 Led 126 (1908) the Supreme Court held that if a Subject Matter Jurisdiction
defect exist, it may be raised at any time, even on appeal, and the court is
under duty to point it out if parties do not.

The practice in assigning motions has been for the trial court to deter-
mine the merits of the action.

Nothing in the legislative history suggest that "court" refers to a speci-
fic judge and the procedural advantages are available whether or not the rende-
ring judge rules on the motion.

A judge or court may be in a legal sense impune from a claim that it is guil-
ty of wrong because of its improper exercise of jurisdiction. However, it has no
such protection where it lacks jurisdiction and the issue has been raised and as-
serted. When the lack of jurisdiction has been shown, a judgment rendered is not
only void, but it is also usurpation. Jurisdiction is a fundamental prerequisite,
an usurpation thereof is a nullity, "22 Corpus Juris Secundum, "Criminal Law",
§ 150, p. 183.

In the case at bar, a finding of lack of jurisdiction would result in liabili-
ty for the rendering judge. It will be difficult for her/him to review it object-
ively.

The Petitioner has the right to an impartial judge, Ward  vs  Village of Mon-
roeville, 409 US 57, 93 S.Ct. 80, 34 LEd 2d 267 (1972).

Wherefore, premises considered, the rendering judge should not be allowed to
rule in the enclosed motion.


Executed this _Twenty-fourth_ day of January Anno-domini  2000.



Hugo-P. Absalon: Petitioner. Pro Se.
Executed pursuant to 28 USC 1746(1)


**EXHIBIT "G"** – pages  1  to  51

46

United States District Court
Southern District of Texas
FILED

FEB - 3 2000

Michael N. Milby, Clerk of Court

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION

Hugo-P. Absalon : Petitioner      ) Re: United States of America

                                         )        vs

                                         )    Hugo-P. Absalon

                                         )    Criminal B98-506-01

                                         )    Appeal No. 99-40280

Ex Parte Motion under F.R. cv. P. Rules, rules 60(b)(3) & (6);
and 12(b)(1) & (7).

Before this Honorable Court

Nunc venit et dicit, Hugo-P. Absalon, (Hereinafter refered to as "Petitioner")
who moves this Honorable Court by Special Appearance, not by General Appearance,
having Knowledge of the facts, relevant Statutes and Case Law, and being competent
to testify, aver under penalty of perjury, that to the best of his current infor-
mation, knowledge, understanding and belief at this present time, all matters of
law and fact as set below are true and correct; materially complete, and not mis-
leading, so help me God, establishing undeniable and irrefutable proof of fraud
on the Court, unlawful and fraudulent, deceiving misrepresentations; and lack of
legislative Jurisdiction over the "locus in quo", subject matter Jurisdiction, and
lack of authority to charge non-positive law provisions beyond their restricted
jurisdictional parameters.

-2-

## J U R I S D I C T I O N

Petitioner invokes the jurisdiction of this Court pursuant to F.R. Cv. P., Rule 60(b)(3), and (b)(6) where it provides that the District Court enjoys the inherent power to grant relief where the judgment or order is obtained through fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of the adverse party; lack of legislative jurisdiction over the subject matter, and locus in quo.

1)-In Com. of Puerto Rico v. SS Zoe Colucotroni, 601 F2d 39 (1979)the Court held: "when an appeal is pending from a final judgment, parties may file motions from relief from judgment directly in the district court without prior relief [leave] from the Court of Appeals; district court should review any such motion expeditiously, within a few days of their filing, and quickly deny those which appear to be without merit; if the district court is inclined to grant the motion, it should issue a brief memorandum so indicating and, armed with that memorandum, moving party may then request the Court of Appeals to remand the action so that the district court can vacate the judgment and proceed with the action accordingly. F.R. Cv. P. rule 60(b) 28 USCA". I. Federal Courts, Key 683, p. 39.

In Standard Oil Co. of California v United States, 429 US 17, 97 S.CT. 31, 50 LEd ·2d 21 (1976) the Supreme Court held that appelate leave was not required before federal district court could reopen a case to entertain a motion under Rule 60(b). In Ingraham v United States, 808 F2d 1075 (1987) the FIFTH Circuit held:"as such, a Rule 60(b) motion may be entertained in the district court at any time within a year of judgment, regardless of the pendency or even completion of an appeal" inter alia.

If motion for relief from judgment is denied by the district court after an appeal has been taken and if the denial of the motion for relief from judgment is appealed, Court of Appeals will entertain a request to consolidate that appeal with the pending appeal from the final judgment where feasible. 3.Federal Courts-Key 742 p. 39.

2)-Rule 12(b) of F.R. Cv. P. provides that the court is permitted to consider any defense, "which is capable of determination without trial of the general issues", United States v Nukida, 8 F3d 665 (9th. Cir. 1993), "and where the issues raised are purely those of law, the opposing party would suffer no prejudice as a result of the issues not being raised in the trial court". In United States v King, 587 F2d 956 (9th. Cir. 1978), and United States v. Heat, 509 F2d 16 (9th. Circ. 1974), it was pronounced by the Court that "while other defects and obligations based on defects in the Indictment are waived by failure to raise such before trial, lack of legislative jurisdiction over the locus in quo, or the lack of subject matter jurisdiction

-3-

are not subject to waiver, and may be raised at any time". In Sealed Appellant v Sealed Appellee, 130 F3d 695, cert. denied, 118 S.CT. 1253, 140 LEd 2d 675 (US 1998); and United States v Schultz, 17 F3d 723, the FIFTH Circuit held: "issues related to subject matter jurisdiction may be raised at any time".

3)-A guilty plea does not waive claim that court lacks subject matter jurisdiction, as held in Conerly v State 607 Su 2d 1153 (Miss. 1992); State v Perank 858 P.2d 927 (Utah 1992).

4)-An application to set aside the judgment for fraud upon the court has no time limits and will not be barred by laches, Toscano v. Commissioner of Internal Revenue, 441 F2d 930 (9th. Cir. 1971). The court may grant relief on its own initiative or on motion, Universal Oil Products Co. v Root Refining Co. 328 US 575 (1946); Hazel-Atlas Glass Co. v Hartford Empire Co. 322 US 328 (1944); and 28 USC 1343(a)(3) where a deprivation of rights has been incurred by government officials, agents and employees who were acting under color of law and deprived Petitioner of rights and immunities secured by the Constitution under The Fifth, Sixth, Nineth, Tenth, and Fourteenth As Amended A.D. 1791.

5)-In Lousville & Nashville Ry. Co. v Mottley, 211 US 149, 29 S.CT. 42, 53 LEd 126 (1908) the Supreme Court held that if a subject matter jurisdiction defects exist, it may be raised at any time, even on appeal, and that the Court is under duty to point it out if parties do not. With respect to a judges liability a distinction must be observed between acts in excess of a judge's jurisdiction and the clear absence of all jurisdiction over the subject matter, Bradley v. Fisher 13 Wall 335 20 LEd 646.

Under the Federal Constitution, no court, state or federal may serve as an accomplice in the wilful transgression of the laws of the United States, laws by which the judges in every State are bound under Article Six of the Constitution, Lee v Florida, 392 US 378, 88 S.Ct. 2096, 20 LEd 2d 1166.

6)-In Cohens v Virginia, 19 US (6 Wheat) 264, 405, 5 LEd 257, 291 (1821) the court stated, "We have no more right to decline the exercise of jurisdiction which given, than to usurp that which is not given; the one or the other would be treason to the Constitution", likewise :a statute can not extend federal court jurisdiction beyond limits of the Constitution", Hodgson v Bowerbank, 9 US 303, 5 Cranch 303, 3 LEd 108; and Verlinder B.V. v Central Bank of Nigeria, 461 US 480, 76 LEd 91, 103 S.CT. 1962.

I

1)-No principle is more fundamental to the federal judiciary's proper role in the American system of Government that the Constitutional limitation, in Article III of the Federal Constitution, of federal court jurisdiction to actual cases or controversies, the concept of standing to sue is part of this limitation, Simon v Eastern Kentucky Welfare Rights Organization, 462 US 26, 95 S.CT. 1917, 48 LEd 2d 450.

-4-

2)-Federal courts are not courts of general jurisdiction but have only the power
that is authorized by Article III of the United States Constitution and the statute
created by Congress pursuant thereto , Bender v Williamsport Area School District,
475 US 534, 106 S.Ct. 1326, 89 LEd 2d 501.

3)-A federal action must not only satisfy Article III but must also be supported
by a statutory grant of subject matter jurisdiction, Verlinder B.V. v Central Bank of
Nigeria, 461 US 480, 103 S.Ct. 1962, 76 LEd 2d 81.

4)-Congress may not expand the jurisdiction of the federal courts beyond the
bounds established by the United States Constitution, Verlinder B.V., supra.

5)-Federal courts possess limited jurisdiction and are authorized to adjudicate
only those cases enumerated by Article III of the Constitution [nine (9) separate,
specific cases and controversies] and only to the extent authorized by Congress-(US
Const. Art. III, Section 2). In Aldinger v Howard, 427 US 1, 96 S.Ct. 2413, 49 LEd
2d 276, the Court stated: " Federal courts, as opposed to state trial courts of
general jurisdiction, are courts of limited jurisdiction marked by Congress".

II

1)-In Federal courts jurisdictional allegations are required: "a short and plain
statement of the grounds upon which the court's jurisdiction depends", inter alia,
Fed. R. Cv. P., Rule 8(a)(1).

2)-Since Federal courts have limited subject matter jurisdiction, there is no
general presumption that a federal forum is proper- 5C Wright & A. Miller, Civil 2d
§ 1206.

In Eastern Metals Corporation v Martin 191 F. Supp. 245 (1960) the Court held,
in pertinent part, p. 248 [1], "A United States District Court is an "inferior" court",
inter alia, "The District Court is a tribunal created by Congress under the power
given to Cogress by Article 1, Section 8, Clause 9 of the United States Constitution";
therefore a Legislative Court.

In Re Cuddy, 131 US 280, 9 S.Ct. 703, 33 LEd 154, the Court held: "The words
"inferior court" apply to courts of special, and limited authority erected on such
principles that their proceedings must show jurisdiction"; in Kempe v. Kennedy, 5
Cranch 173, 3 LEd 70, in pertinent part the Court held: "which are erected on such
principles that the judgments are entirely to be disregarded unless the proceedings
show their jurisdiction".

In Hagans v. Lavine, 415 US 528 at 533 the Court held: "the law requires proof
of jurisdiction to appear on the record of the administrative agency and all adminis-
trative proceedings".

In Hanford v. Davis, 163 US 273, 165 S.Ct. 1C51 (1861) the Court stated: "there
is no presumption in favor of jurisdiction and the the basis for jurisdiction must be
alternatively shown".

-5-

III

1)-The Law provides that once federal jurisdiction has been challenged, it must be proven.

2)-In Hagans v. Lavine, 415 US 528 at 533, 94 S.Ct. 1372, 39 LEd 2d 577, the Court held: "where jurisdiction is challenged it must be proven".

3)-The question of legislative jurisdiction in the court over the "locus in quo" where the alleged criminal act was alleged to have been committed, can be raised at any stage of the judicial procedure; it is never presumed, but must always be proven, United States v Rogers D.C. Ark. (1885) 23 F 658; at p. 685 it is further stated: "whereby the government must be judicially barred from reaching beyond the issue at bar, and compeled to meet its simple, yet required burden to prove that it has lawful federal legislative jurisdiction over the situs where the alleged criminal act was committed. Thus the burden remains and is upon the the government to bring forth documented proof that it lawfully possessed legislative jurisdiction of the locus in quo.

4)-In Standard v Olson, 74 S.Ct. 768, the Court held: "no sanction can be imposed absent proof of jurisdiction; In Louisville RR v. Motley, 211 US 149, 29 S.Ct. 42, the Court held: "If any tribunal [court] finds absence of proof of jurisdiction over person and subject matter, the case must be dismissed".

5)-Quoting Hurt v Davies, 454 US 370, 70 LEd 2d 556, 102 S.Ct. 703 (id 561 454 US 375) "the Court must follow the precedents of the Supreme Court, the Court instructs"..."but unless we wish anarquy to prevail within the federal system, a precedent of this Court must be followed by the lower federal courts", inter alia.

IV

1)-The absence of federal legislative jurisdiction over the location of the purported violative activity of the Petitioner, leaves the Department of Justice/Attorney General and the Court without jurisdiction to prosecute and adjudicate the matters alleged against Petitioner in the Complaint, the Indictment, and further proceedings.

Chief Justice John Marshal observed that to bring these offenses within the legislative jurisdiction of the Courts of the Union, they must have been first committed out of the jurisdiction of any State [and out of the jurisdiction of any sovereign Foreing Country]. "It is not the offense committed but the place in which it is committed, which must be out of the jurisdiction of the State [Sovereign Foreign Country], People v Godfrey, 17 John 225 at 233 (NY 1818)

2)-Any time the Federal Government seeks to prosecute, and thereby regulate activity lacking in the requisite federal jurisdiction, the control of which is constitutionally within the domain of the State and local authorities [ Foreign Country's authorities], it [Federal Government] thereby violates Federal and State Constitutions [Foreign Country's Constitution], as the States are the repository of our Common Law Rights, as is well discussed in Gibbons v Ogden, 22 US 1 (1824); A.L.A. Schec-

−6−

ter Poultry Corp. v United States, 229 US 495 & 554 (1935); N.L.R.B. v Jones Laughlin Steel Co., 301 US 1 & 37 (1937); Hodel v Virginia Surface Mining and Reclamation Assoc. 452 US 264, 276-77, 310-13 (1981); New York v United States, 112 S.Ct. 2408, 2412-29, 2431 (1992).

3)−The "United States" (Federal Government) legislative jurisdiction is barred from the geographical boundaries of the State of Texas, except on ceded property by the Texas Legislature, and consent to accept jurisdiction over acquired land has been filed in behalf of the United States as provided by Title 40 USC 255; and from the Sovereing Country of Mexico.

4)−Under the principle of International Law each nation has jurisdiction of the offenses [allegedly] committed within its own territory, the Supreme Court held in Kinsella v Krueger, 351 US 470, 76 S.Ct. 886, 100 LEd 1342.

5)−A Sovereign Nation has exclusive jurisdiction to punish offenses against its laws committed within its borders, unless expressly or implied consent to surrender its jurisdiction, Wilson v Girard, 354 US 524, 77 S.Ct 1409,1 LEd 2d 1544.

6)−Sovereignty is pure fact and its very meaning is that the decree of the Sovereign makes the Law. American Banana Co. v United Fruit Co. 213 US 347, 29 S.Ct. 511, 53 LEd 826.

7)−When the United States declared their Independence they were bound to receive the Law of Nations in its modern state of purity and refinement, Ware v Hylton, 3 Dall 199, 1 LEd 568.

8)−The Constitution can have no operation in another country, and therefore when representatives or officers of our government are permited to exercise authority of any kind in another country, it must be on such conditions as the countries may agree, Ross v McIntyre (Re Ross) 140 US 453, 11 S.Ct. 897, 35 LEd 581.

Case 1:00-cv-00186   Document 1   Filed in TXSD on 12/06/2000   Page 46 of 106

V

## UNKNOWN CHARACTER OF THE COURT

The Record of the Court fails at any juncture therein, to make known the "character of the court", or which Article of the Federal Constitution the United States District Court is authorized and empowered to operate.  In the clear absence of this knowledge, the Petitioner appearing before the Court was deprived of information crutial to perfecting defenses, pleadings or the raising of challenges to certain forms of jurisdiction and proper plaintiff.  Likewise, the due process and equal protection rights of the Petitioner were violated when he was brought before a court which has concealed or failed to make known its character.  The following makes clear:

1)-Were the Petitioner to be informed that the character of the court was that of a "constitutional court" operating under Article III authority, and where the federal "United States" was known to be the moving party-plaintiff, the Petitioner would be able to raise the issue that the court had usurped its authority and jurisdiction, where it is known that constitutional courts possess no authority to entertain an alleged criminal cause in which the federal "United States" is known to be a party-plaintiff. If such presiding judge and representative for the federal "United States were to move contrary to constitutional authority, they would be comitting felonious treason to the National Constitution.

2)-Were the Petitioner (accused-party) to be informed that the character of the court was that of a "legislative court" operating under Article I, and where it was known that the federal "United States" was the moving party-Plaintiff, the Petitioner would have knowledge that the court's authority was restricted to rendering opinions and recommendations to Congress, as legislative courts posses no lawful authority to render judgment and commitment orders, where such courts have no Article III judicial power.

3)-Were the Petitioner (accused party) to be informed that the character of the court was that of a "legislative-territorial" court, operating under Article IV, the Petitioner would have knowledge that such territorial court were created for making needful rules and regulations within the territories, belonging to the federal "United States" and unless empowered under Article III, posses no authority to invoke Admiralty-Maritime Jurisdiction. See: American Insurance Co. v 365 Bales of Cotton, 26 US (1.pet.) 511, 545 (1828).

Being that the cause before the Court is alleged to be criminal, and legislative courts possess no Common Law criminal jurisdiction and the Federal Constitution provides for only one other form of criminal jurisdiction, such being under Admiralty-Maritime contract law, which may only be invoked under the authority of a court possessing Ar-

−8−

ticle III judicial power, American Insurance Co. supra, the court would be obligated
to produce:

> a)−a maritime contract.
> b)−establish that the accused party was a party to such maritime contract
> c)−that the accused−party had breached such maritime contract, as these are
>     the elements, and the sine qua non, to the invocation of admiralty
>     jurisdiction.

The jurisdiction parameters for admiralty cause(s) are defined and circumscri-
bed under the federal non−positive law statute 18 USC 7(1), wherein it states in per-
tinent part"...out of the jurisdiction of any particular [sovereign] State"... This
limited reach is further restricted by the plain language set out under 44 USC 1505(a)
(1), where it provides that when a law, rule or regulation is not published in the
Federal Register or possess implementing regulations in the Code of Federal Regulations,
that the statutory provision is applicable only to federal officers, agents and employees
of the federal "United States". The parallel tables of authorities and rules reveal
that 18 USC 7(1) has no published authorities, or does 18 USC 3231 ("the district courts
of the United States shall have original jurisdiction, exclusive of the courts of the
State..." inter alia).

Where the instant matter is concerned, the government's own charging instruments
present self−declaring and self−evident proof that the Petitioner (accused−party) com-
mitted no ofense(s) within the territorial jurisdiction of the court, nor was he a par-
ty to any admiralty−maritime contract, thus the Petitioner could not lawfully be sub-
ject to a court operating under admiralty authority.

-9-

VI

## FRAUDULENT AND DECEPTIVE MISREPRESENTATIONS

The government charging instruments (*) (Complaint, Indictment and further pro-
ceedings) establish on their face self-declaring and self-evident proof of one frau-
dulent misrepresentation after another designed to deprive, deceive, and deny Peti-
tioner of his most basic Constitutional Rights.  The law requires that jurisdiction
is to be specifically alleged and placed on the face of the charging instrument,
Aherns v Clark, 335 US 188 (1898), and Hanford v Davis, 163 US 273 (1896).  The
government's charging instruments present jurisdictional language which clearly sets
juridiction within the parameters of a sovereign state court, and fails to establish
that the locus in quo is within the legislative jurisdiction of the Federal United
States, which is the sine qua non to federal prosecution.

In United States v Bevans, 16 US (3 Wheat) 336 (1818), the Court established
that only where the federal government had the power of "exclusive legislation" did
it have jurisdiction. The exclusive legislation principle is not addressed to sub-
ject matter, but to geographical location.  The power to prosecute "federal" crimes
is confined to those crimes committed within legislative, territorial, admiralty, or
maritime jurisdiction of the federal United States.

> In Caha v United States, 152 US 211 & 215, the court stated:
> "No jurisdiction existed in the United States to enforce federal
> criminal law until <u>consent</u> to accept jurisdiction over acquired lands
> <u>has been filed</u> in behalf of the United States as provided in Title
> 40 USC 255, and the fact that State authorized government  to take
> jurisdiction was inmaterial.Adams v United States 319 US 312 (1943)".
> And see: 40 Usc 255.

e.g. Exhibits "A" and "B" attached hereto and made a part hereof.

The fact that the issue's significance can not be overstated is illustrated
by the federal government's own publication, published by the United States Government
Printing Office in 1956-1957, entitled <u>Jurisdiction Over Federal Areas Within The States</u>
(Report of the Interdepartmental Committee for the Study of Jurisdiction Over Federal
Areas Within the States).  Part I and II, particularly Part II, state unequivocally
that the Federal Government has no authority to restrict or compel the activities of
the individual in those areas which are outside the legislative and territorial juris-
diction thereof, and that the federal courts are limited by, and do not exceed, the
jurisdiction held by the Fedela Government itself, stating as follows:
"The Constitution gives express recognition to but one means of federal acquisition
of legislative jurisdiction-by the State consent under Article I, Section 8, Clause 17.
Justice McLean suggested that the Constitution provided the sole mode for transfer of
jurisdiction, and that if this mode is not pursued, no transfer of jurisdiction can
take place".

(*)- Exhibits "C" and "D"

-10-

"It scarely needs to be said that unless there has been a transfer of [legislative] jurisdiction, (1) pursuant to Clause 17 by a federal acquisition of land with State consent, or (2) by cession from the State to the Federal Government, or unless the government has reserved legislative jurisdiction upon the admission of the State, the Federal Government possesses no legislative jurisdiction over any area within a State, such jurisdiction being for exercise by the State, subject to non-interference by the State with federal functions." Id. at 45. "The federal government can not by unilateral action on its part acquire legislative jurisdiction over any area within the exterior boundries of a State. Id. at 46.

Chief Justice Marshal observed that to bring these offenses within the legislative jurisdiction of the courts of the Union, they must have been first committed out of the jurisdiction of any state. "It is not the offense committed but the place in which is committed, which must be out of the jurisdiction of the State". People v Godfrey, 17 John at 233 (NY 1818).

Any time the federal government seeks to prosecute, and thereby regulate activity lacking in the requisite federal jurisdiction, the control of which is constitutionally within the domain of the State and local authorities, it [United States] thereby violates both the Federal and State Constitutions, as the States are the repository of our Common Law Rights, as is well discussed in Gibbons v. Ogden, 22 US 1 (1824); A.L.A. Schecter Poultry Corp. v United States, 295 US 495 & 554 (1935); N.L. R.B. v Jones Laughlin Steel Co. 301 US 1 & 37 (1937); Hodel v Virginia Surface Mining and Reclamation Assoc. 452 US 264, 276-77, 310-13 (1981); New York v United States, 112 S.Ct. 2408, 2412-29, 2431 (1992).

2)-The Federal Government is one of delegated and enumerated powers, Martin v Hunter's Lessee 14 US (1 Wheat) 304 (1816). All other powers have been retained by the states, or the people. (US Constitution, Amendments Nineth and Tenth).

In the area of criminal law, federal crimes are solely creatures of statute, Dowly v United States, 437 US 207, 213 (1985); however, Congress power to declare an act a crime ultimately must be grounded in some provision of the Constitution, United States v Fox, 94 US 670 (1878). These are clearly "jurisdictional prerequisites" for legislation by Congress, Coleman v Thompson, 501 US 722, 759 (1991), which when violated leave the statute "void ab initio", as is as well stated in 16 Am Jur 2d Sec. 256:

> "The general rule is that an unconstitutional statute, whether federal or state, though having any form and name of law, is in reality no law, but is wholly void and ineffective for any purpose, since the unconstitutionality dates from the time of its enactment, and not merely from the date of the decision so branding it, and unconstitutional law in legal contemplation is as inoperative as if it had never been passed. Such a statute leaves the question that it purports to settle just as it would be had the statute not been enacted. No repeal of such enactment is necessary. Since an unconstitutional law is void, the general principles follow that it imposes no duties, confers no rights, creates no office, bestows no power or authority on anyone, affords no protection, and justifies no acts

- 11-

performed under it. No one is bound to obey an unconstitutional law and no courts are
bound to enforced. A statute can not extend federal court jurisdiction beyond limits
of the Constitution "Hodgson v Bowerbank, 9 US 303, 5 Cranch 303, 3 LEd 108; and Ver-
linder B.V. v Central Bank of Nigeria, 461 US 480, 76 LEd 91, 103 S.Ct. 1962.

   3)-The most important case regarding the subject of federal jurisdiction appears
to be Forth Leavenworth R. Co. v Lowe, 114 US 525, 531, 5 S.Ct. 995 (1885), which sets
forth the law on this point fully. There, the railroad company property which passed
through teh Fort Leavenworth federal enclave was being subjected to taxation by Kansas,
and the company claimed an exemption from state taxation. In holding that the railroad
company's property could be taxed, the Court carefully explained federal jurisdiction
within the States:

               The consent of the states to the purchase of lands within them for
the special purposes named, is however, essential, under the Constitution, to the trans-
fer to the general government, with the title, of political jurisdiction and dominion.
Where lands are acquired without such consent, the possession of the United States,
unless politicaljurisdiction be ceded to them in some otherway, is simply that of an
ordinary propieter. The property in that case, unless used as a means to carry out
the purposes of the government, is subject to the legislative authority and control
of the states equally with the property of private individuals.

   4)-Thus the cases decided within the 19th Century clearly discloses the extent
and scope of both State and federal jurisdiction. In essence these cases, among many
others, hold that the jurisdiction of any particular State is co-extensive with its
borders or territory, and ALL PERSONS AND PROPERTY LOCATED OR FOUND THEREIN are sub-
ject to such JURISDICTION; this jurisdiction is superior.

   The Petitioner (accused- party) WAS FOUND WITHIN THE  STATE OF TEXAS EXCLUSIVE
JURISDICTION, outside of federal jurisdiction.

   5)-The sovereign power of the United States government is nation-wide, just as
that of each state is state-wide. There is no question that Congress has the power to
provide that the process of each of the United States courts should extend into every
state of the Union. Congress has not so provided, however. Under existing law the pro-
cess of each federal court is bounded by the territory of the state in which it sits,
Robertson v Railroad Labor Bd., 268 US 619, 45 S.Ct. 621, 69 LEd 1119 (1925).

   6)-The Federal government has power under various provisions of the Constitution
to define, and prohibit as criminal, certain acts of omissions occurring anywhere in
the United States, it has no power to punish for various other crimes, jurisdiction
over which is retained by the States under the Federal-State system of government,
unless such crimes occurs on areas as to which legislative jurisdiction has been ves-
ted in the Federal Government. [Id. at 107].

   7)-The US Supreme Court has repeatedly prescribed the limits of federal criminal

jurisdiction in definite terms. The conclusive statement is this : "[Federal] legislation applies only within the territorial jurisdiction of the United States unless a contrary intent appears [in the legislation]..." See Caha v United States, 152 US 211, 215 (1894), 14 S.Ct. 513; American Banana Co. v United Fruit Co., 213 US 347 (1909), 357, 29 S.Ct. 511; United States v Bowman, 260 US 94 (1922), 97, 93 43 S.Ct.39; Blackmer v United States, 248 US 421 (1932), 437, 52 S.Ct. 252; Foley Bros. v Filardo, 336 US 281 (1949), 285, 69 S.Ct. 575; United States v Spelar, 338 US 217, 222 (1949), 70 S.Ct. 10; and United States v First National Bank, 321 F.2d 14, 23 (2nd Cir. 1963).


7)-Application of Acts of Congress was clearly articulated in Caha v United States supra, where the Supreme Court stated as follows:

"The laws of Congress in respect to those matters do not extend into the territorial limits of the states, but have force ONLY in the District of Columbia, and other places that are within the exclusive jurisdiction of the national government".

The matter is addressed in Rule 54 of the Federal Rules of Criminal Procedure [selected portions, 1978 edition, USC]:

Rule 54. Application and Exception

(a) Courts. These rules apply to all criminal proceedings in the United States District Courts.

(c) Application of terms. As used in these rules the following terms have the designated meanings.

"Act of Congress" includes any Act of Congress locally applicable to and in force in the District of Columbia, in Puerto Rico, in a territory or in an insular possession.


As shown heretofore, Petitioner is convicted and imprisoned unlawfully, in violation of Constitutional Rights, where the federal government lacked legislative juris- (*) diction over the locus in quo. The government charging instrument allege a geographical location situated within the boundaries of a sovereign State, which has not been ceded by the legislature of the sovereign State, to the federal United States, thus not within the jurisdiction of the federal government or a United States district court.

(*) see Exhibits "C" and "D".

Case 1:00-cv-00186   Document 1   Filed in TXSD on 12/06/2000   Page 52 of 106

VI

## UNLAWFUL MISREPRESENTATION OF IMPROPER PLAINTIFF AND FAILURE

### FAILURE TO JOIN, PURSUANT TO Rule 12(b)(7).

(*)
1)-The government's charging instruments misrepresent on their face that injured party or plaintiff in the instant cause at bar is the United States of America, more properly defined as being the Fifty Sovereign States of the Union, United in America; separate and distinct sovereign entities who neither individually or collectively brought the charges under which the Petitioner [accused-party] is subject to.

The Federal Government lacks the lawful authority to [mis]represent the nation at large, as being an injured entity, or to pit the Petitioner against a plaintiff who neither brought the cause or appeared as a witness against the Petitioner.

2)-In violation of Petitioner's Constitutional Rights, and the due process clause of the National Constitution, the government Knowingly and intentionally ommited from the face of its charging instruments the proper name [F.R. Cv P. Rule 10] of the real party in interest [F.R. Cv P. Rule 17], the United States, Federal Corporation [28 USC 3002(15)(A)], depriving the Petitioner the capacity to sue [F.R. Cv. P. Rule 17(b)] and his right to proper joinder with the named injured entities for just adjudication [F.R. Cv. P. Rule 19].

The real party in interest is shown on Title 28 USC 1345, which reads:
" § 1345. <u>United States as</u> <u>plaintiff</u>

" Except as otherwise provided by Act of Congress [where is it ?], the district courts shall have original jurisdiction of all civil actions, suits or proceedings <u>commenced by the United States</u> [as real party in interest], or by any agency or officer thereof expressly authorized to sue by Act of Congress"
[ defined as: "Act of Congress" includes any Act of Congress <u>locally</u> <u>applicable</u> to and <u>in force</u> in the District of Columbia, in Puerto Rico, in a territory or in an insular possession"].

3)-An alleged criminal offense against the nation at large, United States of America, would be properly brought under "International Law", rather than within the jurisdiction of an Article IV, Territorial Court.

The Rule of International Law has always been applied by the courts with regard to the separate sovereignty of the particular American Union State versus the Federal United States when acting as a government.

When the District of Columbia (United States) acts as a collection agent or other "commercial" entity being the moving party in administrative courts or

(*) see Exhibits "C" and "D".

or acting through its administrative agencies that have jurisdiction over government employees, or commercial business involving the corporate United States (District of Columbia), they have jurisdiction "within" the "United States" (District of Columbia), being the territories and possessions of the United States (District of Columbia).

4)- The government attorneys, who are presumed to possess a superior Knowledge of the Law, and a high standard of the law, have advanced through their charging instruments the confused notion that the "United States of America" and the Federal "United States" somehow share the same definition in Federal Law. This misplaced notion is brought to light by consulting Title 28 USC 3002(15)(A), where it states in plain unambiguos language that the "United States" is defined as a FEDERAL CORPORATION.

In Solomon v Farley, 82 F. Supp. 25 (1949), the Court stated: "The government of the United States is foreign as to the [Sovereign] States of the Union within the rule of Private International Law, that the penal statutes of one sovereignty will not be enforced by another". Robinson v Norato, H.R.I. 256, 43 A2d 467, 162 A.L.R. 362; State of Wisconsin v Pelican Ins. Co. 127 US 265, S.Ct. 1320, 32 LEd 239.

It is universally recognized that foreign jurisdictions will not enforce penal statutes of another state, Galveston H. & S.A.R.G., Co. v Wallace, 223 US 481, 32 S.Ct. 205, 56 LEd 516; The Antelope, 10 Wheat 66, 23 US 66, 6 LEd 268.

5)- The term "United States" is defined at 26 USC 3121(e)(1)(2), as follows:

(1) State.- The term "State" includes the District of Columbia, the Commonwelth of Puerto Rico, the Virgin Islands, Guam, and America Samoa.

(2) United States.- The term "United States" when used in a geographical sense includes the Commonwealth of Puerto Rico, the Virgin Islands, Guam and America Samoa.

It is simple to understand that the five (5) "states" of the United States Corporation are not part of the Fifty (50) States, United America, as the corporate states of the corporation "United States" have not been admitted to the Union of the fifty American States.

The free and independent states of the Union of the United States of America are "separate" States. The free and independent States of the Union of the United States of America are "separate soverigns" from the corporate "United States".

This is supported by Congresswoman Barbara B. Kennelly (D-Conn), Legislative Counsel, and the Congressional Research Service, each confirming the meaning of the "United States", its corporate status, and its restricted jurisdictional parameters.

Whereby, the attorney [U.S. Attorney] representing the artificial entity, "United States", Federal Corporation, MUST appear with the Corporate Charter and establish under the law that the corporate entity has the authority to bring action at bar, within the jurisdiction of an Article IV legislative, or any other.

6)-The Federal Magistrate Act set out within the statutory provisions enumerated as 28 USC 631-639, brought forth by an Act of Congress under its progenitor, the United States Commissioners Act of 1940. By consulting F.R.C.P. Rule 54(c), it is discovered that an "Act of Congress" includes any act of Congress locally applicable to, and in force, in the District of Columbia, in Puerto Rico, in a territory, or in an insular possession belonging to the "United States".

Black's Law Dictionary- Sixth Edition- p. 763 : "Inclusio unius est exclusio alterius"- The inclusion of one is the exclusion of another. The certain designation of one person is an absolute exclusion of all others, Burgin v Forbes, 293 Ky. 456, 169 S.W. 2d 321, 325. This doctrine decrees that where law expressly describes particular situation to which it shall apply, an irrefutable inference MUST be drawn that what is  omitted or excluded was intended to be omitted or excluded, Kevin McC v Mary A., 123 Misc. 2d 148, 473 N.Y.S. 2d 116, 118.

Thus the duties and functions of a federal magistrate are restricted to matters and causes arising out of the foregoing geographical jurisdictional parameters; so is the jurisdiction of the Federal Government and the United States District Court, and other government agencies involved in the case at bar.

Federal Rules of Civil Procedure, Rule 28 USC 636(b), defines the limitations imposed upon the powers of a federal magistrate. Section 636(b)(1) states that the magistrate may only act pursuant to a rule (2,3,4,6 and 7) passed by the majority of the judges in-the district in which the magistrate serves, and at section 636(b)(2), it states that the duties performed by the magistrate, pursuant to such rule, be consistent with the Constitution and the laws of the United States (emphasis added).

By consulting the Parallel Tables of Authorities and Rules, it is discovered that the statutory citations, 28 USC 631 through 639, have not been enacted into positive law, absent publication in the Federal Register, Pursuant to 44 USC 1505(a), the statute and its provisions are restricted to application within the District of Columbia, Puerto Rico, in a territory, or in an insular possession [Rule 54(c), supra] and only against federal officials, agents and employees of the "United States".

Thus, a federal magistrate is-prohibited from being assigned and/or entertain matters which took place beyond the well-defined jurisdictional parameters set out above, or causes which took place beyond the territorial jurisdiction of an Article IV Court under which the magistrate is appointed to serve. FRCP Rule 4(d)(2) specifically States in pertinent part, "territorial limits for federal warrants...within the jurisdiction of the United States.

7)- That the "united States" not the "United States of America, is the constitutionally and statutory-authorized principal of interest, and MUST therefore be the prosecuting party via lawful courts of the United States, is reasonably easy to track trough statutory authority relating to revenue laws. By going to the 1934 edition of the United States Code, authority of the "United States is verified for actions to enforce forfeitures, etc. Authority is found at 28 USC 732, 1934 Edition, as follows:

§ 732. Suits for duties, imposts, taxes, penalties, or forfeitures. All suits for the recovery of any duties, imposts, or taxes, or for the enforcement of any penalty or forfeiture provided by an act respecting imports or tonnage, or the registering and recording or enrolling and licensing of vessels, or the internal revenue, or direct taxes, and all suits arising under the postal laws, shall be brought in the name of the United States. [Underscore added].

The origin of 28 USC 732, 1934 Edition is § 919 of the Revised Statutes of 1878, the beginning-place for the United States Code. By going to the Revised Statutes of 1878, we can compare the section with that in the Code to see proper authority:

Sec. (§) 919. All suits for the recovery of any duty, imposts, or taxes, or for the enforcement of any penalty or forfeiture provided by any act respecting imports or tonnage, or the registering and recording or enrolling and licensing of vessels, or the internal revenue, or direct taxes, and all suits arising under the postal laws, shall be brought in the name of the United States. [Underscore added]

The 1934 USC 732 section duplicates § 919 of the Revised Statutes of 1878, the Revised Statutes of 1878 providing the point of demarcation for current law of the United States. Annotation to § 919 of the Revised Statutes of 1878 cite original legislation as follows: Act of 4 Aug. 1790, c. 35, s. 67, v. 1, p. 176.  31 Dec. 1792, c. 1, s. 29, v. 1, p. 298.  18 Feb. 1793, c. 8. s. 35, v. 1, p. 317.  2 Mar.,1799, c. 22, s. 89, v. 1, pp. 695, 696.  13 July, 1866, c. 184, s. 9, v. 14, pp. 111, 145.  8 June 1872, c. 335, s. 303, v. 17, p. 323.

Additionally, the Supreme Court of the United States has determined authority of the "United States" to sue in the absence of statutory authority specifying the principal. In the absence of statutory authority, or statutes to the contrary, the Attorney General may initiate suit in the name and by authority of the United States [Under score added], United States v San Jacinto Tin Co. 125 US 273 (1888) ; United States v Beebe, 127 US 338 (1888); United States v Bell Telephone Co., 128 US 315 (1888); United States v Nixon, 418 US 683, 94 S.Ct. 3090, 41 LEd  2d 1039 (1974).

Finally, the matter is ultimately put to rest by the original Judiciary Act of September 24, 1789. The first section which speaks to authority of the United States is § 9, 1 Stat. 76:

Sec. 9. And be it further enacted, That the district courts (c) shall have, exclusive of the courts of the Several States, cognizance of all crimes and offenses that shall be cognizable under the authority of the United States.[Underscore added].

Actions of a civil nature are addressed in 11, 1 Stat. 78:

Sec. 11. And be further enacted, That the circuit courts shall have ori-
ginal cognizance, concurrent with the courts of the Several States, of all suits
of a civil nature at Common Law or in Equity, where the matter in dispute exceeds,
exclusive of costs, the sum or value of five hundred dollars, and the United States
are plaintiffs...[Underscore added].

Duties of the United States Marshal clarify authority of the United States,
with no other authority listed, at § 27, 1 Stat. 87:

Sec. 27. And be it further enacted, That a marshal shall be appointed in
and for each district for the term of four years...(b) And to execute throughout the
district, all lawful precepts directed to him, and issued under the authority of the
United States. [Underscore added].

To close the loop, this same basic charge of responsibility for the U,S. Mar-
shal is found in the 1994 Edition of the Unites States Code at § 566(c):

(c) Except as otherwise provided by Law or Rule of Procedure, the United
States Marshals Service shall execute all lawful writs, process, and orders issued
under the authority of the United States. [Underscore added].

8)- Nowhere is there constitutional or statutory authority for the "United States
of America to serve as principal of interest in civil or criminal causes in the Union
of several States party to the Constitution.

This might be a minor thing of no consequences if the "United States of America"
wasn't a disticnt, separate geographical and political entity foreign to the "United
States", but the evidence clearly shows that the United States and the United States
of America are distinct and different with distinct and separate geographical autho-
rity.

There is no other " Law or Rule of Procedure" authorizing the United States
of America as prosecuting principal in civil or criminal judicial forums; all writs,
process, and orders of courts of the United States which the U.S. Marshal's Service
may execute must be. " issued under the authority of the United States". 28 USC 566(c).

9)-Governments of the United States, the Union of Several States, and possessions
of the United States are embroiled in a scheme known as Cooperative Federalism, some-
times identified simply as Federalism.

The nonconstitutional scheme presumes that each of the several States is an
instrumentality of the United States on a par with insular possessions of the United
States, rather than semi-independent State Republics, (1) restricted only by consti-
tutional prohibitions and mandates, and (2) subject only to constitutionally-enume-
rated powers of the United States.

This scheme was made possible by emergence of a second government.

-18-

Yet even today, those not familiar with the two capacities of United States government find it difficult to grasp implications.

However, some who held responsible positions when the second or shadow government emerged saw the danger. Justice Harlan, a Justice on the Supreme Court of the United States, was among them. One fo his more lucid criticisms was written in his dissentin opinion in Downes v Bidwell (1901) 21 S.Ct. 770, 182 US 244, 45 LEd 1088, the first of four insular tax cases that provided a conceptual platform for the current de facto (authority in fact, but without law) system that engulfs not only insular possessions of the United States, but States party to the Constitution:

> " The idea prevails with some--indeed, it found expression in arguments
> at the bar-- that we have in this country substantially or practically
> two national governments, one to be maintained under the Constitution,
> with all its restrictions; the other to be maintained by Congress outside
> and independenly of that instrument, by  exercising such powers as other
> as other nations of the earth are accustomed to exercise.  It is one thing
> to give such a latitudinarian construction to the Constitution as will
> bring the exercise of power by Congress, upon a particular occasion or
> upon a particular subject, within its provisions.  It is quite a different
> thing to say that Congress may, if so elects, proceed outside the Constitu-
> tion.  The glory of our American system of government is that it was created
> by a written Constitution which protects the people against the exercise of
> arbitrary, unlimited power, and the limits of which instrument may not be
> passed by the government it created, or by any branch of it, or even by
> the people who ordained it, except by amendment or change of its provisions."

The Federal "States" are territories and insular possessions of the United States Since Alaska and Hawaii were admitted to the Union of Several States, there are no territories of the United States as such.  The remaining "insular possessions" large enough to be quasi-sel-governing include Puerto Rico, Guam, the Northern Mariana Islands, America Samoa, and the Virgin Islands;  the District of Columbia is also a possession of the United States , but falls in a different category as the Constitution authorizes establishing the seat of government at Article I § 8 cl. 17, where the other insular possessions have been acquired and are governed under the territorial clause at Article IV, § 3, cl. 2 .  In the United States Code, Code of Federal Regulations, etc these insular possessions are defined as "States".  The insular possessions are not incorporated in the constitutional scheme as territories of the United States were, for so for many purposes are considered "foreign" to the several States of the Union. This was determined in four insular tax cases in the 1901-1904 period, Downes v Bidwell being the first.

Case 1:00-cv-00186   Document 1   Filed in TXSD on 12/06/2000   Page 58 of 106

10)- By putting the "United States" and the "United States of America" in the same statute or regulation, the two entities are distinguished as being unique and separate -- the "this is not that" test applies.

The following is reproduction of 18 USC § 80, 1940 Edition:

§ 80. (Criminal Code, section 35(A).) Presenting false claims.

Whoever shall make or cause to be made or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, or any corporation in which the United States of America is a stock holder, any claim upon or against the Government of the United States, or any department or officer thereof, or any corporation in which the United States of America is a stockholder, knowing such claim to be false, ficticious or fraudulent; or whoever shall knowingly and willfully falsify or conceal or cover up by any trick, scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, or cause to be made or used any false bill, receipt voucher, roll, account, claim, certificate, affidavit or deposition, knowing the same to contain any fraudulent or fictitious statement or entry in any matter within the jurisdiction of any department, or agency of the United States or any corporation in which the United States of America is a stockholder, shall be fined not more thatn $10,000 or imprisoned not more than ten years, or both. [Underscore added].

11)-In pertinent part of the Civil Rules of Procedure, Section 6.3, page 319 it is stated: "In the federal courts, the real party in interest requirement is found in Federal Rule 17(a) which provides that " every action shall be prosecuted in the name of the real party of interest"-6 A C. Wright, A. Miller & M. Kane, Civil 2d Section 1541-58. (Underscore added)

12)- Before a person may invoke the judicial process, he must present a federal court with a "case" or "controversy" in the constitutional sense, and must show that he/she/it is the proper plaintiff to raise the issues he/she/it seeks to litigate. S. v D. 410 US 614, 93 S.Ct. 1146, 35 LEd 2d 536.

13)-  Under Article III of the Federal Constitution judicial power exists only to redress or otherwise to protect against injury to the complaining party, even though the court's judgment may benefit others collaterally; a federal court's jurisdiction therefore can be invoked only when the plaintiff himself has suffered some threatened or actual Injury resulting from the putatively illegal action,

Warth v Seldin, 422 US 490, 95 S.Ct. 2197, 45 LEd 2d 343

Whitmore v Arkansas, 495 US 149, 110 S.Ct. 1717, 109 LEd 2d 135.

Neither the Constitution or Congress authorizes the Attorney General to bring suits in the name of the United States of America and the courts uphold that suits must be in the name United States.

Case 1:00-cv-00186  Document 1  Filed in TXSD on 12/06/2000  Page 59 of 106

VII

## UNLAWFUL, FRAUDULENT CHARGE OF NON-POSITIVE LAW PROVISIONS BEYOND THEIR RESTRICTED JURISDICTIONAL PARAMETERS .

1)- To be in or at law, and to be compliance with the Constitution, a properly enacted law must show its authority "on its face" which is mandatory, not discretionary.

There is a fundamental maxim of law that, "A law is not obligatory unless it is promulgated . See Black's Law Dictionary, 2nd Edition, p. 826.

" Promulgate ", from Latin " Promulgare " means: to publish , or to make known a law after its enactment "..." an administrative order that is given to cause an agency law or regulation to become known and obligatore " [Underscore added]. See Blak's Law Dictionary, 6th. Edition p. 1214.

2)-The necessity for regulations to be published in the Federal Register is var-riously prescribed in the Administrative Procedure Act at 5 USC 552 et seq., and teh Federal Register Act at 44 USC 1505 et seq, and 1 CFR Chapter 1. This need for publi-cation of regulations in the Federal Register has been repeatedly affirmed by the Supreme Court, as stated in California Bankers Association v Schultz, 416 US 21, 26 , 94 S.Ct. 1494, 1500 !1974):

> "...The acts civil and criminal penalties attach only upon violation of regulations promulgated by the Secretary; if the Secretary were to do nothing, the act itself would impose no penalties on anyone..."[Underscore added].

In Northern States Power Co. v Rural Electrification Admin., 248 F.Supp.,616 (1965), the court stated, " Rules by government agency of general application and published in accordance with the Federal Register Act have force and effect of statute or law and are binding on those persons publishing them as well as the general public until such time as they be repealed or modified. [Underscore added]. Register Act, section 1 et seq., 44 USCA 301 et seq. ".

In United States v Mersky, 361 US 431, 438 (1960), the Supreme Court stated:

> " Once promulgated these regulations called for by the statute itself have the force of law, and violations thereof incur criminal prosecutions just as if the details have been incorporated into the Congressional language. The result is that neither the statute nor the Regulation are complete without the other, and only together do they have any force in effect; therefore, the construction of one necessarily involves the construction of the other ¶. [Underscore added]. " And in the context of criminal pro-secutions, the rule of strict construction must be applied in the inter-pretation of an Adminstrative Regulation to which penal consequences attach under the statute authorizing the promolgation of the regulation, as well

Case 1:00-cv-00186  Document 1  Filed in TXSD on 12/06/2000  Page 60 of 106

as the construction of the statute." [Underscore added].

While ignorance of the law is no defense, it is conversely true that a law which has not been duly enacted (promulgated) into positive law (publication in the Federal Register) is not a law of general applicability and therefore, a person who does not comply with its provisions can not be guilty of any crime.

The Cogress for the "United States" primarely makes laws that pertain to the Federal "United States", while Congress also makes laws for the United States of America, such being those that have general applicability when such are published in the Federal Register.

These "published" laws are called "positive law" and apply to the nation-at-large. Positive Law is the irrefutable law of the United States of America which has withstood the test of time.

The United States Code is a collection of fifty (50) enumerated titles which contain positive and non-positive [federal] laws. Exhibit "C" attached hereto and made a part hereof.

3)- If a statute is not published in the Federal Register, it indicates that the statute has limited applicability (e.g. within purely federal areas only). A citizen of the District of Columbia, the Commnonwealth of Puerto Rico, a territory or insular possession of the [Federal] United States is subject to both positive and non-positive law.

Pursuant to FRCP Rule 54(c), it states in very clear language that an " Act of Congress" includes any act of Cogress locally applicable to, and in force in the District of Columbia, in Puerto Rico, in a territory, or in an insular possession. Whereby, "Acts of Congress" are restricted to local application, viz: purely federal areas, and may not be enlarged or expanded beyond their limited jurisdictional parameters. The National Prohibition (Alcohol) Act required a constitutional amendment ratified by the sovereign States of the Union in order to have "general" application . [emphasis added].

United States v Two Hundred Thousand Dollars, 590 F.Supp., 866 (S.D. FLA 1984), All regulations must be published in the Federal Register to have " general appplicability and legal effect".

4)- Fortunately, there is a reasonably easy way to discern what statutes in the United States Code have general applicability to the Several States of the Union and the population at large.

This is trough the Parallel Tables Of Authorities and Rules. The Code of Federal Regulations (CFR), 1966 Edition at p. 721, begins the Index and Finding Aids, more commonly Known as the PARALLEL TABLES OF AUTHORITIES AND RULES, its authority is located at 1 CFR, Section 8.5(a). The finding aid lists the statutes which are enumerated in the United States Code by title and section in the left column of the

CNsPDF - www.tw.nasa.com

Case 1:00-cv-00186  Document 1  Filed in TXSD on 12/06/2000  Page 61 of 106

parallel tables.  If implementingregulations <u>have been published</u> in the <u>Federal</u> <u>Register</u> and to the right side, are the CFR regulations by title and part, which correspond to the published statute, If the statutory provision does not appear in the left-hand co-lumn, it means that the statute <u>has not</u> <u>been published</u> in the <u>Federal Register</u>, signi-fying that the statute is a <u>non-positive-law</u> provision, pursuant to 44 USC 1505(a)(1).

The Parallel Table of Authorities and Rules lists sections and titles of the United States Code  in numerical order, with sections that have published regulations listed having general application or application limited to the regulation listed, and <u>those not listed</u>  having limited application to:

(1) government of the United States (see 5 USC § 301).

(2) territorial and insular possessions of the United States, and

(3) admiralty and maritime jurisdiction of the United States.

Any statute promulgated by Congress must be wed to an administrative regulation before it has the force and effect of law.

See California Bankers Association v Schultz 416 US 21, 39 LEd 2d 812, 94 S.Ct. 1494;  united States v Mersky (1959) 361 US 431, 4 LEd 2d, 80 S.Ct. 459, and numerous other cases.


5)- Where the instant matter is concerned, the table immediately resolves the matter of <u>territorial jurisdiction of the Court</u>: there are no implementing regulations for the non-positive law provisions for <u>18 USC 922(g)</u>, "felon in possession of a fire-arm" ;  8 USC 1324(a)(1)(A)(ii), and 1324(a)(1)(A)(v)(II), " Knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of the law, transports, or moves or attempts to transport or move such alien within the United States by means of transportation or otherwise, in fur-therance of such violation of law" ;  and 8 USC 1329 , "Jurisdiction of District Court".

The absence of implementing regulations for the above statutes confirms that the Special Maritime and Territorial authority of the United States District Court does not reach into the Several States of the Union and the population at large; the authority applies only on federal enclaves which have been ceded to the United States for constitutional purposes, and as the second paragraph of 18 USC 3231 speci-fies: "Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the Several States under the laws thereof". The laws and judicial autho-rity of the Several States are superior and govern within areas of the State which are not within federal enclaves that have been ceded to the United States by the legisla-tures of the Several States.

6)- Title 8 USC 1329-Jurisdiction of district court, reads:
" The district courts of the United States shall have jurisdiction of all causes, civil and criminal, <u>BROUGHT BY THE UNITED STATES</u> [ <u>NOT</u> <u>THE UNITED STATES OF AMERICA</u>]

that arise under provisions of this subchapter." [emphasis added].see Exhibit "E"

Case 1:00-cv-00186   Document 1   Filed in TXSD on 12/06/2000   Page 62 of 106

An Opinion by the Office of Legal Counsel to the Department of Justice, 1978 (Counsel Inf. Op.) 2 Op. O.L.C. 110 states:

"...This section [ 8 USC 1329. Jurisdiction of district courts ] <u>is</u> <u>unconstitutional</u> ...", inter alia. [Underscore added].  see Exhibit "F".

In the area of criminal law, federal crimes are solely creatures of statute, Dowling v United States, 473 US 213 (1985), however, Congress power to declare an act a crime ultimately <u>must</u>  be grounded in some provisions of the Constitution United States v Fox, 94 US 670 (1878). [Underscore added]. These are clearly "juris- dictional prerequisites" for legislation by Congress, Coleman v Thompson 501 US 722, 759, (1991) which when violated leave the statute "void ab initio" as is as well stated in 16 Am Jur. 2d Se. 256, ..."The general rule is that an unconstitutional statute, whether federal or state, though having any form and name of law, it is in reality no law, but is wholly void and ineffective for any purpose, since the unconstitutionality dates from the time of its enacment and not merely from the date of the decision so branding it, and unconstitutional law in legal contemplation is as inoperative as if it had never been passed. Such a statute leaves the question that it purports to settle just as it would be had the statute not been enacted. No repeal of such enacment is necessary. Since an unconstitutional law is void, the general principle follow that it imposes no duties, confers no rights, creates no office, bestows no power or authority on anyone, affords no protection, and <u>justifies</u> <u>no acts performed under it</u>. No one is bound to obey an  unconstitutional law and no courts are bound to "enforce it". [emphasis added] [Underscore added].

7)- A review of the history of the Congressional findings on the "unlawful possession or receipt of firearms" shows the following:

(a)- <u>June 19, 1968</u>- Pub. Law 90-351, Title VII §§ 1201- 1202- 1203, establishes under section 1202, that ..."any person who has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony... and who : (1) <u>receives</u>

(2) <u>possesses</u>  or

(3) <u>transports</u> ..." inter alia. see Exhibit "G"

(b)- <u>October 22, 1968</u> (H.R. 17735) Pu. Law 90-618, <u>Congress Amend</u> title 18 (p. 1213) as follows:

Section 922. Unlawful acts. (g) It shall be unlawful for any person (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(1) <u>to ship</u>   or

(2) <u>transport</u>       see Exhibit "H".

any firearm or ammunition in interstate or foreign commerce..." p. 1220

<u>POSSESSION IS NO LONGER AN ELEMENT OF OFFENSE</u> .

-24-

c)- The last published edition (Copyright 1976 by West Publishing Co) of the United States Code Annotated, Title 18, Crimes and Criminal Procedure §§ 700 to 1080 defines Title 18 USC 922 as follows: (g) it shall be unlawful for any person (1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(1) to ship  or

(2) to transport      see Exhibit "I"

any firearm or ammunition in interstate or foreign commerce"...

POSSESSION IS NOT AN ELEMENT OF OFFENSE

d)- May 19, 1986- Appendix 1 unlawful possession or receipt of firearms Pub. Law 99-308 Section 104(b) 100 Stat. 459 Repeals Pub. Law 90-351, Title VII §§ 1201-1202-1203. 1999 Edition Criminal Code and Rules, page 1134.

"receives", "possess", or "transports" under § 1202 are repealed.

see Exhibit "J".

e)- On September 30th. 1998, when the Petitioner (accused-party) was indicted under 922(g), the prevailing elements of offense were (1) to ship and (2) to transport as explained on b) and c), supra.

Petitioner was wrongly and fraudulently convicted and imprisoned for POSSESSION of a firearm.


The power to define federal criminal offenses and to prescribe punishment to be imposed upon those found guilty of them, resides wholly with Congress [not with any Executive Department of the Government] , Albernaz v United States, 450 US 333, 101 S.Ct. 1137, 67 LEd 2d 275.

The boundaries of a prescribed act must be enlarged by legislative process and not by expansion of the plain language of the statutes.

US v Bregland, D.C. Wis 1962, 209 F.Supp. 547 reversed on other grounds 318 F2d 159, cert. denied, 84 S.Ct. 129, 375 US 861, 11 LEd 2d 88.

Case 1:00-cv-00186  Document 1  Filed in TXSD on 12/06/2000  Page 64 of 106

IX

The government has fraudulently misrepresented one material fact after another in order to manufacture jurisdiction over a cause when it lacked authority to prosecute.

1)- Language in the Record on appeal shows question on the lack of federal legislative territorial jurisdiction over the location of the purported violative activity of the Petitioner in the Sovereign Country of Mexico, in a controversy between two Aliens (Petitioner is a sovereign citizen of the Country of Mexico, just as the other party involved is).

2)-Chief Justice John Marshall observed that to bring these offenses within the legislative jurisdiction of the Courts of the Union, they must have been first committed out of the jurisdiction of any State [conversely out of a Sovereign Foreing Country] "It is not the offense committed but the place in which is committed, which must be out of the jurisdiction of the State [conversely out of a Sovereign Foreign Country] ", People v Godfrey, 17 John 225 at 233 (NY 1818).[Unds. added].

3)- In Kinsella v Krueger, 351 US 470, 76 S.Ct. 886, 100 LEd 1342 the Supreme Court held: " under the principle of International Law each Nation has jurisdiction of the offenses committed within its own territory ". [Underscore added].

In Wilson v Girard, 354 US 542, 77 S.Ct. 1409, 1 LEd 2d 1544 the Court held: " A Sovereign Nation has exclusive jurisdiction to punish offenses against its laws committed within its borders, unless it expressly or impliedly consents to surrender its jurisdiction. [Underscore added].

4)- The very structure of Article III, Section 2, cl. 1, lists in sequence, nine (9) specific, separate types of cases or controversies to which the judicial power of the courts extends.

The list nowhere mentions a case or controversy between two Aliens. Accordingly, Cogress is powerless to confer jurisdiction over such cases or controversies. See Hodgson v Bowerbank, 9 US (5 Cranch) 303, 3 LEd 108 (1809).

That congressional power to confer jurisdiction to the types of dispute which it list,supra, and no further has been established on a number of occasions:

National Mutual Insurance Co. v Tidewater Transfer Co. 377 US 582, 604, 69 S.Ct. 1173, 1183, 93 LEd 1556; Federal Election Commission v Central Long Island Tax Reform Immediately Committee, 616 F2d 45, 51 (2nd. Circ. 1980) (per curiam) (en banc).

In Verlinder B.V. v Central Bank of Nigeria, 647 F2d 320 (1981) (2nd. Circ.) the Court stated: " The clearest statement of the Framers intent concerning Article III of the Constitution come from Alexander Hamilton, a delegate from New York.

In the Federalist No. 83, Hamilton wrote:

CUtePDF - www.tuvio.com

..." The judicial authority of the federal judicatures is declared by the Constitution to comprehend certain cases particularly specified.  The expression of those [nine (9) types of cases or controversies of Article III, Sec. 2, cl. 1] marks the precise limit, beyond which the federal courts cannot extend their juris-diction, because the objects of their cognizance being enumerated, the specification would be nugatory if it did not exclude al ideas of more extensive authority..." [Underscore added].

In other words the Framers emphatically did not intend to grant the legisla-ture power to create jurisdiction over any cases Congress chose. Congress prerogative in this area is circumscribed.

5)- In the instant case at bar, to justify its departure, the government and the Court willingly, unlawfully usurped powers not granted, without authority of law or the sine qua non of federal jurisdiction, and applying statutes for which the Pe-titioner (accused-party) was not indicted for, with disregard for the National Cons-titution  and their sworn oath to uphold it.

6)-Federal offense may be predicated upon an alternate basis of jurisdiction, a defendant's conviction cannot rest upon a basis of jurisdiction different from that charged in the indictment, "Pimento-Redondo v. United States 493 US 890, 110 S.Ct. 233, 107 LEd 2d 185 (1989) and " if judicial construction of a statute is unexpected, due process is violated ", Helton v Fauver, 930 F2d 1040,  1044-45 (3rd. Cir. 1991). [Underscore added].

7)- It was held in North Laramie Land Co. v Hoffman, 268 US 276, 283, 69 LEd(1925) as follows: " All persons charged with knowledge of the provisions of the statutes must take notice of the proceduer adopted by them, and when that procedure is not unreasonanle or arbitrary, there is no constitutional limitation relieving them from conforming to it ".

Where statutory language fails to invoke a jurisdictional element, then the charging instruments must incorporate the prerequisite jurisdictional element, other-wise,  " if one or more of these elements are entirely missing from the indictment, even after trial, such would constitute a fatal defect and the indictment would have to be thrown out. "United States v Cluchette, 465 F2d 749 (9th. Cir. 1972). A con-trary opinion or holding would amount to flagrant violations of Constitutional and Statutory rights of the Petitioner (accused-party) to be punished for conduct which he was not charged with or given the opportunity to defend against ".

If a judgment is void, it is a nullity from the outset, and when a rule provi-ding for relief from a judgment is applicable, relif is not a discretionary matter, it is mandatory, Orner v Shalala 30 F3d 1307, 1310 (10th. Cir. 1994).

X

1)- It was the government's burden to prove all elements of chaged crimes,
United States v James, 987 F2d 648, 650 (9th. Cir. 1993); and failure to prove an
essential element of the charged crimes mandates that the convictions cannot stand,
Thompson v Virginia, 443 US 307, 61 LEd 2d 560, 573 (1979).

2)- In the instant case at bar, the government has failed, ab initio, to esta-
blish, demonstrate, or prove that it lawfully possessed federal jurisdiction, over
the place named on it's charging instrument.

When federalyy created crime involves an area traditionally left to the domain
of the "States", the legislative jurisdictional authority of the " United States "
becomes a crucial part of the proof, it being uniformly held  that the basis for fede-
ral jurisdictional is an essential element of the offense, United States v McRary,
665 F2d 674, 678-79 ( 5th. Circ. Unit B), cert. denied. 456 US 1011, 102 S.Ct. 2306,
73 LEd 1307 (1982); United States v Montfor, 27 F3d 137, 138 ( 5th. Cir. 1994 ),
Ex Parte McCardie, 74 US (7 Wall), 506, 514, 19 LEd 264 (1868).

The Petitioner establish that the government failed at each and every junc-
ture ot its case to demonstrate that it possessed lawful legislative jurisdiction,
or the lawful authority to charge non-positive law statutes.

XI

1)- In Littleton v Brebling, 468 F2d 389 (7th. Cir. 1972), the court held that,
" The title of office, quasi judicial, does not of itself, immunize the other from
responsibility for unlawful acts which can not be said to constitute an integral
part of the judicial process [citing Robichaud v Roman, 351 F2d 533 (9th. Cir. 1965)].

2)- Common Law and constitutional principles of government or sovereign immunity
have never permitted government agents to commit trespasses in violation of property
rigths, Little v. Barreme, 2 Cranch (6US) 170 (1804); Wise v Withers, 3 Cranch (7 US)
331 (1806); Osborn v Bank of United States, 9 Wheat (22 US) 738 (1824); Mitchell v
Harmony, 13 How (54 US) 115 (1852); Bates v Clark, 95 US 204 (1877); See City of
Seattle, 387 US 541 (1978); and Donovan v Dewey 452 US 594 (1981).

3)- Under the Federal Tort Claims Act,..." federal law enforcement officers who
generally enjoy absolute immunity from tort liability may nonetheless be held liable
for damages for the Tort of Trespass, See Black v Sheraton Corp. of America, 184 US
App. DC 46, 564 F2d, 531, 541 (1977). " No man in this country is so high that he is
above the law ", United States v Lee, 106 US 220.

-28-

However, for some reason these government representatitives, agents, elected and appointed officials, seem to consider in their sworn duty to circunvent the restrictions imposed on them by the Sovereign State and National Constitutions.

Even though they have sworn to preserve, protect, and defend tha grand document, they choose to try and impose restrictions and controls on the liberty of the Petitioner and assume themselves excessive power and authority not granted in the Constitution.

In United States v Nevers, 7 F3d 59 (5th. Cir. 1993), the Circuit Court stated, "...to prosecute applicant for the conduct alleged under an invalid law, and/or by an information...would be a denial of due process. " The "fair notice test" provided in this case, supra, and the due process clause for both State and Federal Constitutions demonstrate that the government has blatantly disregarded both, while knowingly and intentionally ignoring its superior knowledge in the law, and its high standard of the law, electing instead to fraudulently misrepresent to an Art.-IV Grand Jury and this court, through its charging instruments and personal averments, that the enumerated statutory provisions listed on the government's charging instruments were true, correct and authorized by law, which culminated in a complete miscarriage of justice by fraud.

XII

In Rozier v Ford Motor Co. 573 F2d 1332 (1978) the FIFTH (5th.) Circuit, it is stated : " One who asserts that an adverse party [government] has obtained a verdict through fraud, misrepresentation or othet misconduct has the burden of proving the assertion by clear and convincing evidence.  The conduct complained of must be such as prevented the losing party from fully and fairly presenting his case or defense".

PETITIONER'S CLAIM IS THAT HE WAS PREVENTED FROM PRESENTING HIS DEFENSE AT ALL, much less fully or fairly.

-29-

XIII

C A V E A T

1)-The Petitioner (accused-party) regards it is as just to invoke formal notice,
with no intent toward repugnance, of this Court's Oath of Office (28 USC 453) to
uphold and support the National Constitution, and its obligation to give legal effect
to judicially binding Supreme Court authorities, Pursuant to FRCP, Rule 201(c) (Rules
of Evidence), which provides on (b) that a judicially noticed fact must be one not
subject to reasonable dispute in that it is either: (1) generally known within the
territorial jurisdiction of the trial court, or      (2) capable of accurate and ready
determination by resort to sources whose accuracy cannot reasonably be questioned.

2)-The Petitioner has shown, through irrefutable and undeniable authorities,
that his instant Motion for Relief must be granted; otherwise, an abuse of judicial
authority is evidenced, and a miscarriage of justice sustained without the lawful
authority of either legislative or subject matter jurisdiction, thus, false imprisonment

3)- Pursuant to FRCP (Evidence), Rule 301, the burden moves to the shoulders of the
government to bring forth "evidence" with which to sustain ites case, or in the alter-
native, move pursuant to FRCP, Rule 48, for dismissal of the indictment for the lack
of federal jurisdiction, and compel the immediate release of the Petitioner (accused-
party) from federal custody, forthwith.

4)-The Petitioner (accused-party) has established by and through the government's
own charging instruments that the government has fraudulently misrepresented one mate-
rial fact after another in order to manufacture jurisdiction over a cause when it lack-
ed the authority to prosecute.  The government attorney, Assistant United States Attor-
ney Adela Kowalski-Garza, who is presumed to possess a superior knowledge and high stan-
dar of the Law, would be deemed to know that, both, the interior boundaries of the Sove-
reing State of Texas , and those of the Sovereign Country of Mexico are beyond the pro-
secutorial reach of the federal government; and the (mis)application of federal non-posi
tive law provisions.  However, the government's cavalier police agents and United States
Attorney deemed it more beneficial to the government's political crusades and personal
ambitions of those involved to unlawfully usurp powers not granted, in order to search,
seiza and arrest without the authority of law or the sine qua non of federal jurisdictic
and so did with an insouciant disregard for the National Constitution or their sworn
oaths to uphold it.

5)-Whereby, the court must be compelled to acknowledge that the instant cause is
beyond the lawful authority of the Court and the Federal government and move to dis-
miss the indictment against the Petitioner (accused-party) for want of jurisdiction.

-30-

XIV

## C O N C L U S I O N

1)-Is there not someone in the judicial system that can and will follow the U.S. Code which sets forth rules, regulations and restrictions for All federal departments, agencies and agents ?.  What can be misunderstood about 4 USC § 72 ?.  Doesn't it mean "District of Columbia and not elsewhere except as expressly provided by Law" ?. Where is it expressly provided by law to exercise authority elsewhere ?.  The same applies to 40 USC § 255. Show where jurisdiction was ceded to the United States (Feral Government) of the "Southern District of Texas, Cameron County" and elsewhere, by the Texas legislature, and in their correspondent part by the Sovereign Country of Mexico.

2)-Is there a code section authorizing the Attorney General or the FBI to "investigate" other than 18 USC 535 ?, I cannot find it.

3)-What about Supreme Court decisions requiring U.S. Code sections to have Regulations published in the Federal Register before general application or force of law is effected ? . It is simple to view tha Parallel Table of Authorities and Rules located in the index of the Code of Federal Regulations to discover there are no regulations for 8 USC 1324(a)(1)(A)(ii), 8 USC 1324(a)(1)(A)(v)(II),  8 USC 1329,  and 18 USC 922(g) which the United States Attorney used to illegally prosecute this Sovereign citizen of Mexico.

4)-Then there are Tribunals (United States District Courts) functioning within the Several States of the Union whose authority is derived exclusively from Article IV, Section 3, clause 2.  Their jurisdiction is foreign to Article III, section 2 of the same Constitution and where all State Sovereign Citizen jurisdiction lies.

5)-Where has Congress bestowed any Article III duties on these Tribunals?

6)-Also, there is 28 USC 732, 1934 Edition, which reads: "...suits arising from the postal laws shall be brought in the name of the United States"... What is about 732 that United States Attorney does not understand ?  The "United States" does not mean the UNITED STATES OF AMERICA and neither does district court of the United States mean United States District Court.

7)-Rule 54(c) of the F.R.C.P. restricts "Acts of Congress" to District of Columbia, Puerto Rico and insular possessions or in a territory, where are locally applicable.  Is there an elsewhere listed somewhere that came from Congress ?  If so where is it ?.

8)-Last with equal emphasis is 28 USC 631-639 and their notes. Has Congress expanded those code sections and hid the expansion somewhere ? None can find authority from Cogress outside of those listed at §§ 631-639 which definitely bestows no Article III powers or duties.

-31-

a)-Petitioner's factual allegations establish that the government's charging instruments are factually and facially defectvive where the government lacked jurisdiction over the "locus in que", and lacked the authority to charge non-positive Law provisions beyond their restricted jurisdictional parameters.

b)-The government knowingly and intentionally misled and deceived an Article IV Federal Grand Jury and this Honorable Court (18 USC 1621), when it was the duty of the Government attorney to notice its lack of jurisdiction and statutory authority, and bring such to the attention of the Court; however, the government attorney, Assistant United States Attorney Adela Kowalski-Garza elected to conceal the truth in order to champion her crusades and personal ambitions.

c)-Pursuant to FRCP, Rule 301, the government must be judicially compelled to bring forth evidence including, but not limited to the following:

(1)That it lawfully possessed legislative and territorial jurisdiction over the locus in quo and subject matter jurisdiction, which is a sine qua non to federal jurisdiction and prosecution.

(2)-That it possessed the lawful authority in law to charge non-positive law provisions out of their restricted parameters.

(3)-That Titles 8 USC 1324(a)(1)(A)(ii), 8 USC 1324(a)(1)(A)(v)(II) and 8 USC 1329; and Title 18 USC 922(g) have been promulgated into positive law.

(4) Of its authority as the corporate representative (United States Attorney) to:

- Name an uninjured party as plaintiff.
- To represent the Nation at large.
- Showing that the alleged violations of Federal Statutory (U.S. Code Citations) provisions were committed against the Nation at large.

(5)-That such cause is cognizable in a legislative-territorial court.

(6)-Of the existence of a maritime contract involving the Petitioner (accused-party):

- Establishing that the Petitioner was a party to such maritime contract.
- Proof that the Petitioner (accused-party) had breached such maritime contract.

(7)- Documentation:

- showing "United States (Federal government) ownership of each and every geographical location mentioned in the Complaint, Indictment and further proceedings wherein the alleged criminal activity took place;

- from the Texas Legislature ceding jurisdiction to the "United States (Federal government) over the same geographical locations, supra;

- pursuant to Title 40 USC 255 wherein the "United States" (Federal Government) acceptrd jurisdiction to the same geographical location, supra ;

- showing Regulations published in the Federal Register for the statutes enumerated in (3), supra;

— showing Authority of Attorney General to prosecute:

  (i) citizen of the Several States of the Union

 (ii) under the name of the UNITED STATES OF AMERICA

(iii) using indictments from Federal Grand Jury Criminal Regular and Special
against Sovereign State Citizens.

(8) To come forth with proof that the Government and United States District
Court for the Southern District of Texas had legislative subject matter and locus
in quo jurisdiction over alleged violative activities of the Petitioner (accused-
party) in the Sovereign Country of Mexico, in a controversy between two aliens,
both Citizens of the Sovereign Country of Mexico.

(9) Government's burden must be restricted to the allegations raised in this Motion.

    Is Assistant United States Attorney Adela Kowalski-Garza aware of Title
18 USC 1001 which states : "Whoever, in any matter within the jurisdiction of any
department or agency of the United States [ the Justice Department is a department
of the United States Government ; United States Attorneys are within the jurisdiction
of the Justice Department ] knowingly and wilfully falsifies, conceals or covers up
by any trick, scheme, or device a material fact, or makes any false, fictitious or
fraudulent statements or representations, or make or uses any false writing or
document knowing the same to contain any false,  fictitious or fraudulent state-
ment or entry, shall be fined not more than $10,000.oo or imprisoned not more than
five (5) years, or both ?

    Where the instant matter is concerned, the Petitioner (accused-party) committed
no violation of any properly enacted and/or duly promulgated federal law within the
legislative and territorial jurisdiction of the Federal United States.

    Petitioner (accused-party) invokes, pursuant to FRCP, Rule 201, Judicial
Notice to be taken by this Honorable Court of adjudicative facts and Supreme Court
authorities which are judicially binding upon this Court.

-33-

P R A Y E R   F O R   R E L I E F

Wherefore, premises considered, the Petitioner prays that this Honorable Court
will find that the Petitioner has herein established through undeniable and ir-
refutable facts, supporting points and authorities, and (exhibits) documents that
the Petitioner is unlawfully convicted and imprisoned and provide relief by dis-
missing the indictment against the Petitioner (accused-party) and ordering him
released from federal custody, forthwith, and grant such other relief as the Court
may deem just and appropiate.

Executed this ___twenty-fourth___ day of January, 2000 A.D.


_____
Hugo P. Absalon: Petitioner; Pro Se.
Executed pursuant to 28 USC 1746(1)


**Exhibits attached**

CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have frowarded three (3) true and correct
copies of the foregoing, to the below named, by depositing such into the U.S. Mail,
Certified Mail Z 137 208 639, with sufficient postage prepaid and properly addressed
to the below-named individual, so done on this ___twenty-fourth___ day of January 2000 A.D.

Addressed to : CLERK OF THE COURT
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF TEXAS
                BROWNSVILLE DIVISION
                P.O. Box 2163
                Brownsville, Texas 78522

L/S _____
    Executed pursuant to 28 USC 1746(1)


V E R I F I C A T I O N

In the Nature of 28 USC 1746(1), Affiant hereby attests that to the best of my Know-
ledge, current information, understanding, and belief, all matters of Law and Fact
as set out above are true and correct, materially complete, and not misleading, SO
HELP ME GOD.

Executed this ___twenty-fourth___ day of January, Anno-Domoni 2000.


L/S _____

–34–

## TABLE OF CITATIONS

### CASES

Aldinger v Howard, 427 US 1, 96 S.Ct.2413, 49 LEd 2d 276.
A.L.A. Schecter Poultry Corp. v United States 229 US 495, 8554 (1935).
American Banana Co. v United Fruit Co. 213 US 347, 29 S.Ct. 511, 53 LEd 826.
American Ins. Co. v 365 Bales of Cotton, 26 (1.pet.) 511, 545 (1828).
Aherns v Clark, 335 US 188 (1898).
Adams v United States, 319 US 312 (1943).
Albernaz v United States, 450 US 333, 101 S.Ct. 1137, 67 LEd 2d 275.

Bradley v Fisher 13 Wall 335, 20 LEd 646.
Bender v Williamsport Area School Dist., 475 US 534, 106 S.Ct 1326, 89 LEd 2d 501.
Blackmer v United States, 248 US 421 (1932) 437, 52 S.Ct. 252.
Bates v Clark, 95 US 204 (1877).
Black v Sheraton Corp. of America, 184 US App. DC 46, 564 F2d, 531, 541 (1977).
Burgin v Forbes, 293 Ky., 456, 169 S.W. 2d 321, 325.

Com. of Puerto Rico v SS Zoe Colucotroni, 601 F2d 39 (1979).
Conerly v State, 607 SU 2d 1153 (Miss. 1992).
Cohens v Virginia, 19 US (6 Wheat) 264, 405, % LEd 257, 291 (1821).
Caha v United States, 152 US 211 & 215.
Coleman v Thompson, 501 US 722, 759 (1991).
California Bankers Assoc. v Schultz, 416 US 21,26, 94 S.Ct. 1494, 1500 (1974).
City of Seattle, 387 US 541 (1978).

Dowly v United States, 437 US 207, 213 (1985).
Downes v Bidwell (1901) 21 S.Ct. 770, 182 US 244, 45 LEd 1088.
Dowling v United States, 473 US 213 (1985).
Donovan v Dewey, 452 US 594 (1981).

Eastern Metals Corp. v Martin, 191 F.Supp. 245 (1960) p. 248.
Ex Parte McCardie, 74 US (7 Wall), 506, 514, 19 LEd 254 (1868).

Forth Leavenworth R. Co. v Lowe, 114 US 525, 531, 5 S.Ct. 995 (1885).

Foley Bros. v Filardo, 336 US 281 (1949), 285, 69 S.Ct. 575.
Federal Election Comm. v Central Long Island Tax Ref. Imm. Commit. 616 F2d 45,51(2nd,198

Gibbons v Ogden, 22 US 1 (1824).
Galveston H. & S.A.R.G. v Wallace, 223 US 481, 32 S.Ct. 205, 56 LEd 516

Hazel–Atlas Glass Co. v Hartford Empire Co. 322 US 328 (1944).
Hodgson v Bowerbank, 9 US 303, 5 Cranch 303, 3 LEd 108.
Hagans v Lavine, 415 US 528 at 533, 94 S.Ct. 1372, 39 LEd 2d 577.
Hanford v Davis, 163 US 273, 165 S.Ct. 1051 (1861).(1896)
Hurt v Davies, 454 US 370, 70 LEd 2d 556, 102 S.Ct. 703 (id 561, 454)(US 375).
Hodel v Virginia Surface Mining and Reclamation Assoc. 452 US 264, 267–77, 310–13 (1981)
Helton v Fauver, 930 F2d 1040, 1044–45 (3rd. Cir. 1991).

Ingraham v United States, 808 F2d 1075 (1987).

Kempe v Kennedy, 5 Cranch 173, 3 LEd 70.
Kinsella v Krueger, 351 US 470, 76 S.Ct. 886, 100 LEd 1342.
Kevin M. v Mary A., 123 Misc. 2d 148, 473 N.Y.S. 24 116,118.

Louisville & Nashville Ry. Co. v Mottley, 211 US 149, 29 S.Ct. 42, 53 LEd 126 (1908).
Lee v Florida, 392 US 378, 88 S.Ct. 2096, 20 LEd 2d 1166.
Littleton v Brebling, 468 F2d 389 (7th. Circ. 1972).
Little v Barreme, 2 Cranch (6 US) 170 (1804).

Case 1:00-cv-00186 Document 1 Filed in TXSD on 12/06/2000 Page 74 of 106

Martin v Hunter's Lessee 14 US (1 Wheat 304 (1816))
Mitchel v Harmony, 13 How (54 US) 115 (1852).

N.L.R.B. v Jones Laughlin Steel Co., 301 US 1 & 37 (1937).
New York v United States, 112 S.Ct. 2408, 2412-29, 2431 (1992).
Northern States Power Co. v Rural Electrification Adm. 248 F.Supp. 616 (1965).
North Laramie Land Co. v Hoffman, 268 US 276, 283, 69 LEd (1925).

Orner v Shalala, 30 F3d 1307, 1310 (loth. Circ. 1994).
Osburn v Bank of the United States, 9 Wheat (22 US) 738 (1824).

National Mutual Ins. Co. v Tidewater Transfer Co. 377 US 582, 604, 69 S.Ct. 1173, 1183,
    93 LEd 1556.

People v Godfrey, 17 John 225 at 233 (NY 1818).
Pimento-Redondo v United States 493 US 890, 110 S.Ct. 233, 107 LEd 2d 185 (1989).

Ross v McIntyre (Re Ross) 140 US 453, 11 S.Ct. 897, 35 LEd 581
Robertson v Railroad Labor Bd, 268 US 619, 45 S.Ct. 621, 69 LEd 1119 (1925).
Robinson v Norato, H.R.I. 256, 43 A2d 467, 162 A.L.R. 362
Robichaud v Roman, 351 F2d 533 (9th. Circ. 1965).
Rozier v Ford Motor Co. 573 F2d 1332 (1978) (5th. Circ.).
Standard Oil of California v United States, 429 US 17, 97 S.Ct. 31, 50 LEd 2d 21 (1976).
Sealed Appellant v Sealed Appellee, 130 F3d 695, cert. denied, 118 S.Ct. 1253, 140 LEd
    2d 675 (US 1998).
State v Perank 858 P. 2d 927 (Utah 1992).
Simon v Eastern Kentucky Welfare Rights Org., 462 US 26, 95 S.Ct 1917, 48 LEd 2d 450.

Re Cuddy, 131 US 280, 95 SCt. 703, 33 LEd 154.

Standard v Olson, 74 S.Ct. 768.
State of Wisconsin v Pelican Ins. Co. 127 US 265,   S.Ct. 1320, 32 LEd 239.
S. v D., 410 US 614, 93 S.Ct. 1146, 35 LEd 2d 536.
Solomon v Farley, 82 F.Supp. 25 (1949).

Toscano v Commiss. of Internal Revenue, 441 F2d 930 (9th. Cir. (1971).
Thompson v Virginia, 443 US 307, 61 LEd 2d 560, 573 (1979).

United States v Nukida, 8 F3d 665 (9th. Cir. 1993)
    "    "    " King, 587 F2d 956 (9th. Cir. (1978).
    "    "    " Heat, 509 F2d 16 (9th. Cir. (1974).
    "    "    " Schultz, 17 F3d 723.
    "    "    " Rogers, D.C. Ark (1885) 23 F 658, at 685.
    "    "    " Bevans, 16 US (3 Wheat) 336 (1818).
    "    "    " Fox, 94 US 670 (1878).
    "    "    " Bowman, 260 US 94 (1922), 97, 93, 43 S.Ct. 39
    "    "    " Spelar, 328 US 217, 222 (1949), 70 S.Ct.10.
    "    "    " First National Bank, 321 F2d 14, 23 (2nd. Cir. 1963).
    "    "    " San Jacinto Tin Co., 125 US 273 (1888).
    "    "    " Beebe, 127 US 338 (1888).
    "    "    " Bell Telephone Co., 128 US 315 (1888).
United States v President Nixon, 418 US 683, 94 S.Ct. 3090, 41 LEd 2d 1039 (1974).
United States v Mersky, 361 US 431, 438 (1960) 4 LEd 2d, 80 S.Ct. 459.
    "    "    " Two Thousand Dollars, 590 F.Supp. 866 (S.D. FLA 1984).
    "    "    " Fox, 94 US 670 (1878).
    "    "    " Bregland, D.C. Wis. 1962, 209 F.Supp. 547, 318 F2d 159, cert. denied,
        84 S.Ct. 129, 375 US 861, 11 LEd 2d 88.
    "    "    " Cluchette, 465 F2d 749 (9th. Cir. 1972).
    "    "    " James, 987 F2d 468, 650 (9th. Circ. 1993).
    "    "    " McRary, 665 F2d 574, 678-79 (5th. Cir. Unit B) cert. denied 456 US
        1011, 102 S.Ct. 2306, 73 LEd 1307 (1982).
    "    "    " Montfort, 27 F3d 137, 138 (5th. Circ. 1994).
    "    "    " Lee, 106 US 220.
    "    "    " Nevers, 7 F3d 59 (5th. Circ. 1993).

Universal Oil Products Co. v Root Refining Co. 328 US 575 (1946).

Verlinder B.V. v Central Bank of Nigeria, 461 US 480, 76 LEd 91, 103 S.Ct. 1962.

Ward v Village of Monroeville, 409 US 57, 93 S.Ct. 80, 34 LEd 2d 267 (1972).
Wilson v Girard, 354 US 524, 77 S.Ct. 1409, 1 LEd 2d 1544
Ware v Hylton, 3 Dall 199, 1 LEd 568.
Warth v Selding, 422 US 490, 95 S.Ct. 2197, 45 LEd 2d 343.
Withmore v Arkansas, 495 US 149, 110 S.Ct. 1717, 109 LEd 2d 135.
Wise v Whiters, 3 Cranch (7 US) 331 (1806).

The Antelope, 10 Wheat 66, 23 US 66, 6 LEd 268

## S T A T U T E S

Title 4 USC § 72.
Title 5 USC § 552;  5 USC § 301.

Title 8...8 USC 1324(a)(1)(A)(ii).
        8 USC 1329  and Note 1 .

Title 18..18 USC § 7(1).
        18 USC § 80, 1940 Edition.
        18 USC § 535.
        18 USC § 922(g).
        18 USC § 1001.
        18 USC § 1621.
        18 USC § 3231.
        United States Code Annotated, Title 18, Crimes and Criminal Procedure
          §§ 700 to 1080, 1976 Edition . No new Edition has been published.

Title 26..26 USC § 3121(e)(1)(2).

Title 28..28 USC § 453.
        28 USC § 566(c).
        28 USC § 631- 639.
        28 USC § 732, 1934 Edition.
        28 USC § 1343(a)(3).
        28 USC § 1345.
        28 USC § 3002(15)(A).

Title 40..40 USC § 255.

Title 44..44 USC § 1505(a).
        44 USC § 301.

## R U L E S

Federal Rule Cv. P., Rule 60(b)(3) & (6).
                    Rule 12(b)(1) & (7).
                    Rule  8(a)(1).
                    Rule 10.
                    Rule 17.
                    Rule 19.

Federal Rule Crim. P. , Rule 54; 54(c).
                      Rule  4(d)(2)
                      Rule 201(c).
                      Rule  48.
F.R.E.              Rule 301.

Code of Federal Regulations (CFR), 1966, 1968 Editions.

16 Am Jur 2d Sec. 256.

## PUBLIC LAWS

June 19th. 1968...Pub. Law 90-351, Title VII §§ 1201-1202-1203.

October 22nd. 1968...Pub. Law 90-618 (H.R. 177351).

May 19th. 1986...Pub. Law 99-308 § 104(b), 100 Stat. 459.

## P U B L I C A T I O N S

1)- "Jurisdiction over Federal Areas Within the States" published by the U.S. Printing Office in 1956-1957.

2)- The Federalist No. 83 by Alexander Hamilton.

3)- "22 Corpus Juris Secundum, "Criminal Law" & 150, p. 183.

4)- 5C  Wright & A. Miller, Civil 2d & 1206.

5)- 6AC  Wright, A. Miller & M. Kane, Civil 2d Section 1541-58.

6)- Black's Law Dictionary, 2nd Edition, p. 826.

7)- Black's Law Dictionary, 6th. Edition.



Office of the Attorney General

Washington D. C. 20530

RECEIVED

MAY -6 1997

OFFICE OF THE
GOVERNOR

May 1, 1997

E X H I B I T  "A"
==================

BY CERTIFIED MAIL

The Honorable Frank Keating
Governor of Oklahoma
Oklahoma City, Oklahoma  73105

Dear Governor Keating:

On behalf of the United States, I hereby accept concurrent legislative jurisdiction over the land that presently is the site of the Federal Transfer Center (FTC) in Oklahoma City.

The State of Oklahoma recently enacted Senate Bill No. 283 to cede to the United States concurrent legislative jurisdiction over the FTC site. That bill, styled "An Act Relating to the United States; Ceding Concurrent Jurisdiction Over Certain Real Property to the United States; Reserving Concurrent Jurisdiction for Certain Purposes; Providing for the Termination of Such Jurisdiction; Providing for Codification; and Declaring an Emergency," was signed by you on April 9, 1997.  Section 1 of the Bill provides, in relevant part:

Notwithstanding any other provision of law, concurrent jurisdiction is hereby ceded to the United States over the tract of land comprised and any tracts of land hereafter comprised within the limits of the Oklahoma City Federal Transfer Center, a facility which is leased to the United States and located at Will Rogers World Airport in Oklahoma City, County of Oklahoma. . . .  The jurisdiction so ceded shall continue no longer than the United States shall lease or own such lands or portions thereof.

Federal law provides that a state's cession of legislative jurisdiction to the United States does not take effect until accepted by the head of the federal department that has custody over the land.  40 U.S.C. § 255.  This letter constitutes the United States' acceptance of concurrent criminal and civil legislative jurisdiction over the tracts of land presently comprised within the limits of the FTC.  Enclosed is a copy of the property description for the land over which the United States accepts concurrent jurisdiction.

The Honorable Frank Keating
Page 2

Please execute the acknowledgment of receipt of this letter
on the enclosed copy, and return that copy to:

Michael E. Wall
United States Department of Justice
Environment & Natural Resources Division
Policy, Legislation and Special Litigation Section
950 Pennsylvania Avenue, NW, Room 2133
P.O. Box 4390
Washington, DC 20044-4390

Should you need any further information, please have your staff
contact Mr. Wall on (202) 514-1442, or Jane Crowell, an attorney
with the Federal Bureau of Prisons, on (202) 307-1240.

I appreciate your assistance in this important area of
federal-state cooperation.

Sincerely,

Janet Reno

Enclosure

Receipt of the above notice of acceptance of concurrent
legislative jurisdiction over the site of the Federal Transfer
Center in Oklahoma City, Oklahoma, is hereby acknowledged this
___ day of _____, 1997.

Governor of Oklahoma

## § 255.  Approval of title prior to Federal land purchases; payment of title expenses; application to Tennessee Valley Authority; Federal jurisdiction over acquisitions

Unless the Attorney General gives prior written approval of the sufficiency of the title to land for the purpose for which the property is being acquired by the United States, public money may not be expended for the purchase of the land or any interest therein.

The Attorney General may delegate his responsibility under this section to other departments and agencies, subject to his general supervision and in accordance with regulations promulgated by him.

Any Federal department or agency which has been delegated the responsibility to approve land titles under this section may request the Attorney General to render his opinion as to the validity of the title to any real property or interest therein, or may request the advice or assistance of the Attorney General in connection with determinations as to the sufficiency of titles.

Except where otherwise authorized by law or provided by contract, the expenses of procuring certificates of title or other evidences of title as the Attorney General may require may be paid out of the appropriations for the acquisition of land or out of the appropriations made for the contingencies of the acquiring department or agency.

The foregoing provisions of this section shall not be construed to affect in any manner any existing provisions of law which are applicable to the acquisition of lands or interests in land by the Tennessee Valley Authority.

Notwithstanding any other provision of law, the obtaining of exclusive jurisdiction in the United States over lands or interests therein which have been or shall hereafter be acquired by it shall not be required; but the head or other authorized officer of any department or independent establishment or agency of the Government may, in such cases and at such times as he may deem desirable, accept or secure from the State in which any lands or interests therein under his immediate jurisdiction, custody, or control are situated, consent to or cession of such jurisdiction, exclusive or partial, not theretofore obtained, over any such lands or interests as he may deem desirable and indicate acceptance of such jurisdiction on behalf of the United States by filing a notice of such acceptance with the Governor of

Ch. 3                                                    40 § 255

such State or in such other manner as may be prescribed by the laws of the State where such lands are situated.  Unless and until the United States has accepted jurisdiction over lands hereafter to be acquired as aforesaid, it shall be conclusively presumed that no such jurisdiction has been accepted.

R.S. § 355; June 28, 1930, c. 710, 46 Stat. 828; Feb. 1, 1940, c. 18, 54 Stat. 19; Oct. 9, 1940, c. 793, 54 Stat. 1083; Sept. 1, 1970, Pub.L. 91–393, § 1, 84 Stat. 835.)

# United States District Court

## SOUTHERN

DISTRICT OF _____ TEXAS

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF TEX.
FILED

SEP 3 1998

Michael N. Milby, Clerk

UNITED STATES OF AMERICA
V.

HUGH P. ABSALON

*DETENTION SEPT 1, 1998*

## CRIMINAL COMPLAINT

CASE NUMBER: B98-3787M

(Name and Address of Defendant)

=======================
E X H I B I T   " C "
=======================

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about ____ 08/26/1998 ____ in ____ Cameron ____ county, in the ____ Southern ____ District of ____ Texas ____ defendant(s) did, (Track Statutory Language of Offense)

Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise, any person, except in the case of a minor by the parent thereof.

in violation of Title ____ 18 ____ United States Code, Section(s) ____ 1201 ____

I further state that I am a(n) ____ FBI Special Agent ____ and that this complaint is based on the following facts:
Official Title

SEE ATTACHED AFFIDAVIT

# SEALED

Continued on the attached sheet and made a part hereof:   ☐ Yes   ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

3 SEPT 98
Date

at BROWNSVILLE, TX
City and State

JOHN WM. BLACK
U.S. MAGISTRATE JUDGE
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

■■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ ■ GJ ■

1998R03634/bvz

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

SEP 30 1998

Michael N. Milby
Clerk of Court

| UNITED STATES OF AMERICA | § |
| :--- | :--- |
| vs | § |
| HUGO P. ABSALON | § |

CRIMINAL NO: **B 98 - 506 ..**

```
==========================
E X H I B I T    " D "
==========================
```

**INDICTMENT**

THE GRAND JURY CHARGES:

**COUNT 1**

On or about September 1, 1998, in the Southern District of Texas and within the jurisdiction of the Court, the defendant,

**HUGO P. ABSALON,**

did encourage and induce an alien, namely, Jane Doe, a minor female, to come to, enter and reside in the United States, knowing or in reckless disregard of the fact that the said coming to, entry, and residence in the United States by the said Jane Doe, a minor female, was in violation of law.

In violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv) and 1324(a)(1)(A)(II).

**COUNT 2**

On or about September 1, 1998, in the Southern District of Texas and within the jurisdiction of the Court, the Defendant,

**HUGO P. ABSALON,**

in reckless disregard of the fact that , Jane Doe, a minor female, was an alien who had come to, entered, and remained in the United States in violation of law, did

TRUE COPY I CERTIFY
ATTEST:
MICHAEL N. MILBY, Clerk of Court
By _Lourdes Mardes_
Deputy Clerk

*139*

See Note 1

**Note 9**

tution laid in indictment. U.S. v. Johnson, C.C.S.D.N.Y.1881, 7 F. 453.

```
========================
E X H I B I T   "E"
========================
```

## § 1329. Jurisdiction of district courts

The district courts of the United States shall have jurisdiction of all causes, civil and criminal, brought by the United States that arise under the provisions of this subchapter. It shall be the duty of the United States attorney of the proper district to prosecute every such suit when brought by the United States. Notwithstanding any other law, such prosecutions or suits may be instituted at any place in the United States at which the violation may occur or at which the person charged with a violation under section 1325 or 1326 of this title may be apprehended. No suit or proceeding for a violation of any of the provisions of this subchapter shall be settled, compromised, or discontinued without the consent of the court in which it is pending and any such settlement, compromise, or discontinuance shall be entered of record with the reasons therefor. Nothing in this section shall be construed as providing jurisdiction for suits against the United States or its agencies or officers.

(June 27, 1952, c. 477, Title II, ch. 8, § 279, 66 Stat. 230; Sept. 30, 1996, Pub.L. 104–208, Div. C, Title III, § 381(a), 110 Stat. 3009–650.)

### HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports**
1952 Acts. House Report No. 1365 and Conference Report No. 2096, see 1952 U.S. Code Cong. and Adm. News, p. 1653.

**Amendments**
1996 Amendments. Pub.L. 104–208, § 381(a), added provision relating to jurisdiction for suits against United States or its officers or agents and substituted "brought by the United States that arise under the provisions of this subchapter" for "arising under any of the provisions of this subchapter".

**Effective Dates**
1996 Acts. Section 381(b) of Div. C of Pub.L. 104–208 provided that: "The amendments made by subsection (a) [amending this section] shall apply to actions filed after the date of the enactment of this Act [Sept. 30, 1996]."

**Severability of Provisions**
If any provision of Division C of Pub.L. 104–208 or the application of such provision to any person or circumstances is held to be unconstitutional, the remainder of Division C of Pub.L. 104–208 and the application of the provisions of Division C of Pub.L. 104–208 to any person or circumstance not to be affected thereby, see section 1(e) of Pub.L. 104–208, set out as a note under section 1101 of this title.

### CROSS REFERENCES

Definitions, see § 1101 of this title.
Jurisdiction of all offenses against the laws of the United States, see 18 USCA § 3231.
United States defined, see 8 USCA § 1101(a)(38).

### AMERICAN LAW REPORTS

Illegal re-entry, under § 276 of Immigration and Nationality Act of 1952 (8 USCA § 1326), of alien previously arrested and deported, or excluded and deported. 59 ALR Fed 190.

956

8 § 1329    =============== ALIENS AND NATIONALITY    Ch. 12
Note 1

This section is unconstitutional since it authorizes prosecution for eluding inspection under section 1325 of this title in a district other than the district at or near the border where the inspection should have taken place, in violation of the Sixth Amendment. 1978 (Counsel Inf.Op.) 2 Op.O.L.C. 110.

**2. Construction**

Under this section, "this subchapter" denotes subchapter II of Chapter 12 of Title 8 of the United States Code. Daneshvar v. Chauvin, C.A.8 (Ark.) 1981, 644 F.2d 1248.

**3. Other laws**

Administrative Procedure Act, section 551 et seq. and 701 et seq. of Title 5, generally precludes judicial review of manner in which Attorney General chooses to exercise his discretionary authority by inquire into immigration status of alien who is seeking admission to this country or is here without proper documentation. Johns v. Department of Justice of U. S., C.A.5 (Fla.) 1981, 653 F.2d 884.

Jurisdiction of action by American citizen children challenging constitutionality of amendment to section 1182 of this title repealing privilege of Western Hemisphere parents of citizen children to obtain lists to become legal permanent residents would not lie under either Administrative Procedure Act, sections 551 et seq and 701 et seq of Title 5, or section 1346 of Title 28 governing concurrent jurisdiction of district courts and court of claims over civil actions founded on the Constitution. Martinez v. Bell, S.D.N.Y.1979, 468 F.Supp. 719.

**4. Reclassification of aliens**

This section gave federal court jurisdiction over action brought by citizens who had married aliens and who sought to challenge procedures employed by Immigration and Naturalization Service officers with respect to investigations in connection with citizens' applications for classification of their wives as "immediate relatives." Stokes v. U.S., Immigration and Naturalization Service, S.D.N.Y. 1975, 393 F.Supp. 24.

**5. Adjustment of status**

District court had jurisdiction to review Board of Immigration Appeals' (BIA) order rescinding alien's permanent resident status. Baria v. Reno, C.A.9 (Hawai'i) 1996, 94 F.3d 1335.

District court had jurisdiction over estoppel claim attacking refusal of INS to adjust alien's status, notwithstanding contention that alien failed to exhaust her administrative remedies, since she could not submit refusal to Board of Immigration Appeals for review. Jaa v. U.S. I.N.S., C.A.9 (Cal.) 1986, 779 F.2d 569.

District Court had jurisdiction over denial of alien's status adjustment application under federal question statute and under Immigration and Nationality Act. Ijoma v. I.N.S., D.Neb.1993, 854 F.Supp. 612.

District court has jurisdiction to review denial by Immigration and Naturalization Service of an adjustment in status. Galvez v. Howerton, C.D.Cal.1980, 503 F.Supp 35.

Under the federal question statute, section 1331 of Title 28, and under provision of this section giving the federal district courts "jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter," the district court, despite the absence of an ancillary deportation order, had jurisdiction to review the discretionary denial of adjustment in alien's status from that of a nonimmigrant visitor for pleasure to that of a permanent resident. Nasan v. Immigration and Naturalization Service, N.D.Ill.1978, 449 F.Supp. 244.

District court has jurisdiction under this section and sections 702, 704, and 706 of Title 5 of petitions to review decisions of the Board of Immigration Appeals holding the adoption decrees obtained by petitioners in Hawaii for Philippine children were invalid and, hence, operated to disqualify children from being classified as "immediate relatives" for purposes of petition. Pascual v. O'Shea, D.C.Hawai'i 1976, 421 F.Supp. 80.

Jurisdiction for review of Immigration and Naturalization Service's decisions denying petitions by alien for adjustment of status lies in Court of Appeals. Lechich v. Rinaldi, D.C.N.J.1965, 246 F.Supp. 675

Federal District Court had jurisdiction of declaratory judgment action by immigrant in no danger of imminent deportation seeking review of denial by Immigration and Naturalization Service of

958

hrough-

:reases

of the

:p be-
Pop
they
ee to
bjec-

: not
l un-
. this
t we
have

ired.

# APPENDIX

=======================
E X H I B I T  "G"
=======================

"G"

UNLAWFUL POSSESSION OR RECEIPT OF FIREARMS (TITLE VII OF PUB.L. 90-351)

INTERSTATE AGREEMENT ON DETAINERS  (PUB.L. 91-538)

CLASSIFIED INFORMATION PROCEDURES ACT  (PUB.L. 96-456)

---

## UNLAWFUL POSSESSION OR RECEIPT OF FIREARMS

Pub.L. 90-351, Title VII, §§ 1201-1203, June 19, 1968, 82 Stat. 236

Sec.
1201. Congressional findings and declaration.
1202. Receipt, possession, or transportation of firearms.
    (a) Persons liable, penalties for violations.
    (b) Employment; persons liable; penalties for violations
    (c) Definitions.
1203. Exemptions.

## § 1201. Congressional findings and declaration

The Congress hereby finds and declares that the receipt, possession, or transportation of a firearm by felons, veterans who are discharged under dishonorable conditions, mental incompetents, aliens who are illegally in the country, and former citizens who have renounced their citizenship, constitutes—

(1) a burden on commerce or threat affecting the free flow of commerce,

(2) a threat to the safety of the President of the United States and Vice President of the United States,

(3) an impediment or a threat to the exercise of free speech and the free exercise of a religion guaranteed by the first amendment to the Constitution of the United States, and

(4) a threat to the continued and effective operation of the Government of the United States and of the government of each State guaranteed by article IV of the Constitution.

(As amended Pub.L. 90-618, Title III, § 301(a)(1), Oct. 22, 1968, 82 Stat 1236)

### Historical Note

1968 Amendment. Pub.L. 90-618 substituted "discharged under dishonorable conditions" for "other than honorably discharged"

Effective Date of 1968 Amendment. Section 302 of Pub.L. 90-618 provided that "The amendments made by paragraphs (1)

and (2) of subsection (a) of section 301 [amending this section and section 1202(a)(2), (b)(2) of this Appendix] shall take effect as of June 19, 1968."

Short Title of 1984 Amendment. Section 1801 of Pub.L. 98-473 provided that "This

Case 1:00-cv-00186  Document 1  Filed in TXSD on 12/06/2000  Page 84 of 106

chapter [amending section 1202 of this Appendix] may be cited as the 'Armed Career Criminal Act of 1984'."

**Legislative History.** For legislative history and purpose of Pub L. 90–618, see 1968 U.S. Code Cong and Adm News, p 4410.

## Library References

Weapons ⟨⟩4.
C.J S Weapons § 3 et seq.

## Notes of Decisions

Congressional policy 2
Dishonorable discharge 3
Purpose 1

### 1. Purpose

Main objective of this Appendix was to restrict the "possession" of firearms by certain groups of people U S v Falletta, C.A Ala.1975, 523 F.2d 1198, rehearing denied 525 F 2d 1407

### 2. Congressional policy

Legislative history of this section, and sections 1202 and 1203 of this Appendix banning possession of firearms by persons deemed unfit, and language of congressional declaration of intent in enacting this section.

and sections 1202 and 1203 of this Appendix established that the policies were to prevent crime and menaces to society caused by crime and that Congress intended that these policies be considered before previously convicted felons are allowed to possess firearms. U.S. v. Castellana, D C.Fla.1977, 433 F.Supp 1309.

### 3. Dishonorable discharge

Finding by Congress that possession of guns by those dishonorably discharged from the armed services is hazardous was rational, and application of prohibition to one who had been discharged under less than honorable circumstances over 25 years previously was not unreasonable. U S. v. Day, C.A.Ky 1973, 476 F 2d 562.

## § 1202. Receipt, possession, or transportation of firearms

### (a) Persons liable; penalties for violations

Any person who—

(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or

(2) has been discharged from the Armed Forces under dishonorable conditions, or

(3) has been adjudged by a court of the United States or of a State or any political subdivision thereof of being mentally incompetent, or

(4) having been a citizen of the United States has renounced his citizenship, or

(5) being an alien is illegally or unlawfully in the United States, and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both. In the case of a person who receives, possesses, or transports in commerce or affecting commerce any firearm and who has three previous convictions by any court referred to in paragraph (1) of this subsection for robbery or burglary, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under this subsection, and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

540

Case 1:00-cv-00186  Document 1  Filed in TXSD on 12/06/2000  Page 86 of 106

Public Law 90-617

AN ACT

**E X H I B I T  "H"**

October 21, 1968
[S. 1207]

To amend section 2 of the Act of June 30, 1954, as amended, providing for the continuance of civil government for the Trust Territory of the Pacific Islands.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 2 of the Act of June 30, 1954 (68 Stat. 330), as amended, is amended by deleting "and $35,000,000 for each of the fiscal years 1968 and 1969," and inserting in lieu thereof a comma and the following: "for fiscal year 1969, $5,000,000 in addition to the sums heretofore appropriated, for fiscal year 1970, $50,000,000 and for fiscal year 1971, $50,000,000".

Pacific Trust Territory, civil government.
Appropriation.
81 Stat. 15
48 USC 1681 note.

SEC. 2. The Act of June 30, 1954 (68 Stat. 330), as amended, is amended by adding a new section 3 as follows:

"SEC. 3. There are hereby authorized to be appropriated such sums as the Secretary of the Interior may find necessary, but not to exceed $10,000,000 for any one year, to alleviate suffering and damage resulting from major disasters that occur in the Trust Territory of the Pacific Islands. Such sums shall be in addition to those authorized in section 2 of this Act and shall not be subject to the limitations imposed by section 2 of this Act. The Secretary of the Interior shall determine whether or not a major disaster has occurred in accordance with the principles and policies of section 2 of the Act of September 30, 1950 (64 Stat. 1109), as amended (42 U.S.C. 1855a)."

Disaster relief.

64 Stat. 1111

Approved October 21, 1968.

Public Law 90-618

AN ACT

To amend title 18, United States Code, to provide for better control of the interstate traffic in firearms.

October 22, 1968
[H.R. 17735]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That this Act may be cited as the "Gun Control Act of 1968".

Gun Control Act of 1968.

## TITLE I—STATE FIREARMS CONTROL ASSISTANCE

PURPOSE

SEC. 101. The Congress hereby declares that the purpose of this title is to provide support to Federal, State, and local law enforcement officials in their fight against crime and violence, and it is not the purpose of this title to place any undue or unnecessary Federal restrictions or burdens on law-abiding citizens with respect to the acquisi-

Case 1:00-cv-00186   Document 1   Filed in TXSD on 12/06/2000   Page 87 of 106

"(d) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person—

"(1) is under indictment for, or has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

"(2) is a fugitive from justice;

"(3) is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954); or

"(4) has been adjudicated as a mental defective or has been committed to any mental institution.

This subsection shall not apply with respect to the sale or disposition of a firearm or ammunition to a licensed importer, licensed manufacturer, licensed dealer, or licensed collector who pursuant to subsection (b) of section 925 of this chapter is not precluded from dealing in firearms or ammunition, or to a person who has been granted relief from disabilities pursuant to subsection (c) of section 925 of this chapter.

"(e) It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped; except that any passenger who owns or legally possesses a firearm or ammunition being transported aboard any common or contract carrier for movement with the passenger in interstate or foreign commerce may deliver said firearm or ammunition into the custody of the pilot, captain, conductor or operator of such common or contract carrier for the duration of the trip without violating any of the provisions of this chapter.

"(f) It shall be unlawful for any common or contract carrier to transport or deliver in interstate or foreign commerce any firearm or ammunition with knowledge or reasonable cause to believe that the shipment, transportation, or receipt thereof would be in violation of the provisions of this chapter.

"(g) It shall be unlawful for any person—

"(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

"(2) who is a fugitive from justice;

"(3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954); or

"(4) who has been adjudicated as a mental defective or who has been committed to a mental institution;

to ship or transport any firearm or ammunition in interstate or foreign commerce.

"(h) It shall be unlawful for any person—

"(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

"(2) who is a fugitive from justice;

Post, p. 1361.
21 USC 321.
74 Stat. 57.
26 USC 4731.

*1976 Edition — U.S.C.A. Title 18.*
*Reflects the 10-22-1968 Amendment.*

*[left column fragments:]*

y this chapter, a licensed
dealer may sell a firearm
at the licensee's business
er, manufacturer, or deal-

sferor a sworn statement

law, I swear that, in the
:hotgun or a rifle, I am
:r that, in the case of a
:rs or more of age; that
ns of chapter 44 of title
:ing a firearm in inter-
: my receipt of this fire-
statute of the State and
e locality in which I re-
and address of the prin-
ocality to which the fire-
. . . . . . . . . . . . . . . . . . .
. . . . . . . . . . . . . . . . . . .

Date . . . . . . . . . . . . ."

hment of a true copy of
i pursuant to such stat-

pment or delivery of the
ied mail (return receipt
nt, together with a de-
bed by the Secretary, to
ransferee's place of resi-
idencing delivery of the
ed due to the refusal of
:er in accordance with
lations; and

t or delivery for a peri-
t of the notification of
tatement.

:e notification to the lo-
:nce of receipt or rejec-
:e licensee as a part of
(g).

:porter, licensed manu-
o sell or otherwise dis-
son knowing or having

convicted in any court
r a term exceeding one

*[main column:]*

(2) is a fugitive from justice;

(3) is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954); or

(4) has been adjudicated as a mental defective or has been committed to any mental institution.

This subsection shall not apply with respect to the sale or disposition of a firearm or ammunition to a licensed importer, licensed manufacturer, licensed dealer, or licensed collector who pursuant to subsection (b) of section 925 of this chapter is not precluded from dealing in firearms or ammunition, or to a person who has been granted relief from disabilities pursuant to subsection (c) of section 925 of this chapter.

(e) It shall be unlawful for any person knowingly to deliver or cause to be delivered to any common or contract carrier for transportation or shipment in interstate or foreign commerce, to persons other than licensed importers, licensed manufacturers, licensed dealers, or licensed collectors, any package or other container in which there is any firearm or ammunition without written notice to the carrier that such firearm or ammunition is being transported or shipped; except that any passenger who owns or legally possesses a firearm or ammunition being transported aboard any common or contract carrier for movement with the passenger in interstate or foreign commerce may deliver said firearm or ammunition into the custody of the pilot, captain, conductor or operator of such common or contract carrier for the duration of the trip without violating any of the provisions of this chapter.

(f) It shall be unlawful for any common or contract carrier to transport or deliver in interstate or foreign commerce any firearm or ammunition with knowledge or reasonable cause to believe that the shipment, transportation, or receipt thereof would be in violation of the provisions of this chapter.

(g) It shall be unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(2) who is a fugitive from justice;

(3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954); or

225

(4) who has been adjudicated as a mental defective or who has been committed to a mental institution;

to ship or transport any firearm or ammunition in interstate or foreign commerce.

(h) It shall be unlawful for any person—

(1) who is under indictment for, or who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

(2) who is a fugitive from justice;

(3) who is an unlawful user of or addicted to marihuana or any depressant or stimulant drug (as defined in section 201(v) of the Federal Food, Drug, and Cosmetic Act) or narcotic drug (as defined in section 4731(a) of the Internal Revenue Code of 1954); or

(4) who has been adjudicated as a mental defective or who has been committed to any mental institution;

to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

(i) It shall be unlawful for any person to transport or ship in interstate or foreign commerce, any stolen firearm or stolen ammunition, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

(j) It shall be unlawful for any person to receive, conceal, store, barter, sell, or dispose of any stolen firearm or stolen ammunition, or pledge or accept as security for a loan any stolen firearm or stolen ammunition, which is moving as, which is a part of, or which constitutes, interstate or foreign commerce, knowing or having reasonable cause to believe that the firearm or ammunition was stolen.

(k) It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered.

(*l*) Except as provided in section 925(d) of this chapter, it shall be unlawful for any person knowingly to import or bring into the United States or any possession thereof any firearm or ammunition; and it shall be unlawful for any person knowingly to receive any firearm or ammunition which has been imported or brought into the United States or any possession thereof in violation of the provisions of this chapter.

(m) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any ...

**References in Text.** T... of this chapter, referred ... (3) of this section, is D... Effective Date note set ou...

Section 5845 of the I... Code of 1954, referred t... (4) and (b) (4) of this s... fied to section 5845 of T... Revenue Code.

Section 201(v) of the Drug, and Cosmetic Act subsecs. (d)(3), (g)(3), this section, was class... 321(v) of Title 21, Food ... was repealed by Pub.L. § 701(a), Oct. 27, 1970, 84 ...

Section 4731(a) of the I... Code of 1954, referred ... (d)(3), (g)(3), and (h)(3... was classified to section ... 26, and was repealed b... Title III, § 1101(b)(3)(A)... Stat. 1292.

**1968 Amendment.** S... Pub.L. 90–618 reenacted ... without change.

Subsec. (a) (2). Pub... licensed collectors to the ... of licensees subject to t... this chapter, eliminated t... the shipment or transpo... state or foreign commer... shotguns, and added th... thorizing an individual t... ly owned firearm to the ... sees for the sole purpo... customizing.

Subsec. (a) (3). Pub... licensed collectors to the ... of licensees, eliminated t... shotguns or rifles purcha... obtained outside the stat... the recipient, struck ou... making it unlawful for ... purchase or otherwise of ... state of residence any f... would be unlawful for l... or possess in that stat... for exemptions when an... arm by bequest or inte... and transports the firea... receives it in his state of ... lawful for such person ...

*1999 Edition* (j)
*Federal Criminal Code and Rules*

# APPENDIX 1

===========================
E X H I B I T   "J"
===========================

# UNLAWFUL POSSESSION OR RECEIPT OF FIREARMS

### Pub.L. 90–351, Title VII, §§ 1201–1203, June 19, 1968, 82 Stat. 236

[§ 1201. Repealed. Pub.L. 99–308, § 104(b), May 19, 1986, 100 Stat. 459.]

## HISTORICAL AND STATUTORY NOTES

Section, Pub.L. 90–351, Title VII, § 1201, June 19, 1968, 82 Stat. 236; Pub.L. 90–618, Title III, § 301(a)(1), Oct. 22, 1968, 82 Stat. 1236, related to Congressional findings and statement of policy with respect to receipt, possession, or transportation of a firearm by felons, veterans who are discharged under dishonorable conditions, mental incompetents, aliens who are illegally in this country, and former citizens who have renounces their citizenship.

**Effective Date of Repeal**

Section repealed effective 180 days after May 19, 1986, see section 110(a) of Pub.L. 99–308, set out as a note under section 921 of this title.

[§ 1202. Repealed. Pub.L. 99–308, § 104(b), May 19, 1986, 100 Stat. 459.]

## HISTORICAL AND STATUTORY NOTES

Section, Pub.L. 90–351, Title VII, § 1202, June 19, 1968, 82 Stat. 236; Pub.L. 90–618, Title III, § 301(a)(2), (b), Oct. 22, 1968, 82 Stat. 1236; Pub.L. 98–373, Title II, §§ 1802, 1803,

Oct. 12, 1984, 98 Stat. 2185, provided penalties for receipt, possession, or transportation of firearms in commerce or affecting commerce by a convicted felon, dishonorably discharged veteran, mental incompetent, former citizen, illegal alien, or any individual employed by such a person and defined terms as used in Title VII of Pub.L. 90–351.

**Effective Date of Repeal**

Section repealed effective 180 days after May 19, 1986, see section 110(a) of Pub.L. 99–308, set out as a note under section 921 of this title.

[§ 1203. Repealed. Pub.L. 99–308, § 104(b), May 19, 1986, 100 Stat. 459.]

## HISTORICAL AND STATUTORY NOTES

Section, Pub.L. 90–351, Title VII, § 1203, June 19, 1968, 82 Stat. 236, related to person exempt from the provisions of Title VII of Pub.L. 90–351.

**Effective Date of Repeal**

Section repealed effective 180 days after May 19, 1986, see section 110(a) of Pub.L. 99–308, set out as a note under section 921 of this title.

August 21st, 2000

United States District Court
Southern District of Texas
RECEIVED

AUG 3 1 2000

Michael N. Milby, Clerk of Court

Clerk of the Court
United States District Court
Southern District of Texas
Brownsville Division
P.O. Box 2163
Brownsville, Texas  78522

Certified Mail Number
7099 3220 0008 5421 6387
return receipt requested.

Re: Ex-parte motion under rule 60(b)(3)
    & (6); and 12(b)(1) & (7).
    Criminal B98-506-01.

Dear Clerk:

I do hereby respectfully request information regarding the following:

(a).  Current status of the first above written motion filed on January 31st 2000, copy attached hereto. (Exhibit "A").

(b).  The name of the Judge who has been assigned to decide on the merits and facts of law therein contained. Please refer to the attached Affidavit, filed on January 31st, 2000. (Exhibit "B")

I look forward to hearing from you at your earliest convenience.

Sincerely

Hugo P. Absalon - Pro se.
82491-079  "KB"
F.C.I.-Medium
P.O. Box 26040
Beaumont
Texas, 77720-6040

**EXHIBIT  "B"**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

SEP 1 1 2000

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| v. | § | CRIMINAL NO. B-98-506 |
| | § | |
| HUGO P. ABSALON, | § | |
| | § | |

## <u>ORDER</u>

1.    Petitioner, Hugo P. Absalon,  is hereby on NOTICE, that this Court will construe his Ex Parte Motion, requesting relief pursuant to Rules 60(b)(3) & (6), and Rules 12(b)(1) & (7) of the Federal Rules of Civil Procedure (Docket #46), as a request for habeas corpus relief pursuant to 28 U.S.C.A. § 2255.

2.    Petitioner is hereby ADVISED to withdraw his Ex Parte Motion and to submit a proper motion pursuant to 28 U.S.C.A. § 2255.

3.    If Petitioner does not submit a proper motion for writ of habeas corpus relief pursuant to 28 U.S.C.A. § 2255, and this court in turn denies Petitioner relief pursuant to his Ex Parte Motion, any future applications for habeas corpus relief made by Petitioner risk dismissal as "successive" or "abusive" writs.

4.  .   Moreover, if Petitioner fails to withdraw his Ex Parte Motion, Petitioner will not be allowed to proceed further until he has amended his Ex Parte Motion to *clearly* and *concisely* set forth the supporting grounds for his Motion.  Petitioner must state *concisely* every supporting ground for his Motion in a separately numbered paragraph. Petitioner is to summarize *briefly* the facts supporting each ground.  Additionally, Petitioner's motion will be dismissed unless Petitioner can demonstrate:

        1.  "Cause" for Petitioner's failure to assert his constitutional claims on direct

<u>EXHIBIT  "I"</u> – pages 1 and 2.

CVAPDF - www.fesisa.com

appeal, and

    2.  "Prejudice" resulting from Petitioner's failure to assert his constitutional claims on direct appeal.

Petitioner's amended Motion is not to exceed ten pages.

5.      Accordingly, Petitioner is hereby ORDERED to withdraw or amend his Ex Parte Motion (Docket # 46). Should Petitioner submit a motion for writ of habeas corpus relief, Petitioner must comply with all the requirements and procedural rules pertaining to such writs. Specifically, Petitioner will not be permitted to avoid such requirements by merely attaching his current Ex Parte Motion to his request for habeas corpus relief. If Petitioner wishes this Court to consider his Ex Parte Motion at any time, Petitioner must amend it in compliance with the above directions.

    Secondly, any motion submitted by the Petitioner seeking habeas corpus relief will be dismissed unless Petitioner can demonstrate:

    1.  "Cause" for Petitioner's failure to assert his constitutional claims on direct appeal, and

    2.  "Prejudice" resulting from Petitioner's failure to assert his constitutional claims on direct appeal.

6.      Petitioner is hereby given 60 days from the date of this order to comply.

DONE in Brownsville, Texas this 11th day of September, 2000.

                                    Felix Recio
                          United States Magistrate Judge

TRUE COPY I CERTIFY
ATTEST:
MICHAEL N. MILBY, Clerk of Court
By _____
                Deputy Clerk

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

BROWNSVILLE DIVISION


Hugo P. Absalon                          )

          Petitioner               )   Re: United States of America

                         )         vs

                         )   Hugo P. Absalon

                         )   a) Crim. B98-506-01

                         )   b) Appeal 99-4280

                         )   c) Magistrate's Order

                         )         of 9/11/00

                         )


In reference to Ex parte motion under F.R. cv P. Rules 60(b)(3) & (6)  and

12(b)(1) & (7).


Hugo P. Absalon respectfully submits the following:

1.   The Court's Order, supra, seems to be confusing, to say the least. On para-

graph No "1" it implies that Petitioner's Ex parte motion is the wrong for-

mat for addressing his request for relief;  then it follows  ( paragraph No "2")

with advise to withdraw the Ex parte motion and to submit a proper motion pursuant

to 28USC § 2255 ;  and then comes back ( paragraph No. "4" ) implying that  the

Court would accept an " amended " Ex parte motion, which turns out to be the pro-

per format after all.


2.   Petitioner's Ex parte motion, supra, stands as written and filed two hundred

and forty three (243) days ago.

(a)  consequently this court should not construe Petitioner's motion, supra, as

a request for habeas corpus relief pursuant to 28 USC § 2255 as notified by the Court

for the following reasons:

(1)  Petitioner's Ex parte motion is the proper procedure for challenging the

jd

**EXHIBIT " J " – pages  1 to 9.**

judgment.   Rule 60(b) of the F.R. cv P. preserves causes to challenge judgment.
They are as follows:

"3. Fraud (whether heretofore denominated intrinsic or extrinsic), misrepre-
sentation,  or other misconduct of an adverse party" ;

"4. The Judgment is void" ;

"6. Any other reason justifying relief from the operation of the judgment".

There are two keys in Rule 60(b).   First, Rule 60(b)(4), where the  "judgment
is void"  opens the door to vacating a judgment at any time,  and Second, the void
judgment may be attacked  "by motion as prescribed in these rules  or by an inde-
pendent action.

A judgment is void where the court lacked subject matter jurisdiction. The court
lacks subject matter jurisdiction when it has proceeded without statutory authority
depriving the Petitioner of substantive due process rights.  Where the court lacked
subject matter jurisdiction, and jurisdiction over the locus in quo, the judgment is
void; it has no lawful effect, so it should be vacated.  In the instant case, the
record shows on its face that the court did not have subject matter jurisdiction, nor
jurisdiction over the locus in quo.

The defendant may proceed by motion at any time, without the encumbrance of time
limitation,  or may  initiate collateral attack via extraordinary writs, i.e.  an
independent action.

The Petitioner exercised his right to choose the former (his Ex parte motion) and
stands by it.

(b)  Therefore, Petitioner respectfully asserts that he does not  withdraw  his
Ex parte motion filed 243 days ago,  nor  will he submit a motion pursuant  28  USC
§ 2255 in lieu thereof.

-2-

3.  On paragraph No. "4", subparagraph "1" of its order the court questions

alleged Petitioner's failure to assert his constitutional claims on direct

appeal.

(a) the answer is found on page "2", paragraph "1" of Petitioner's motion, su-

pra, where it reads:

"When an appeal is pending from a final judgment [as Petitioner's

appeal was when he filed his Ex parte motion 243 days ago],  the parties may file

motions for relief from judgment directly in the district court without prior relief

[leave] from the Court of Appeals;  DISTRICT COURT SHOULD REVIEW SUCH MOTION EXPEDI-

TIOUSLY WITHIN A FEW DAYS OF THEIR FILING  and  QUICKLY deny those which appear to

be without merit;  if the district court is inclined to grant the motion, it should

issue a brief memorandum so indicating and, armed with that memorandum, moving party

may then request the Court of Appeals to remand the action so that the district court

can vacate the judgment and proceed with the action accordingly. F.R. cv P. rule 60(b)

28 USCA. I. Federal Courts, key 683, p. 39. Com. of Puerto Rico v SS Zoe Colucotroni,

601 F2d 39 (1979) ";  and:

" If motion for relief from judgment is denied by the dis-

trict court after an appeal has been taken and  IF THE DENIAL OF THE MOTION FOR RE-

LIEF FROM JUDGMENT  IS APPEALED  , teh Court of Appeals  WILL ENTERTAIN A REQUEST TO

CONSIDERATE THAT APPEAL  WITH  THE PENDING APPEAL from the final judgment where fea-

sible. 3 Federal courts. Key 742, p. 39, id. 601 F2d 39.

(b)  Petitioner submits that the U.S. District Court for the Southern District of

Texas, Brownsville Division  FAILURE  to proceed as stated on " 3(a)", supra, EFFEC-

TIVELY PREVENTED  the Petitioner from asserting his constitutional claims on direct

appeal, and therefore  PREJUDICE  to the Petitioner has resulted from the Court's

failure, VIOLATING  Petitioner's due process rights under the Fifth Amendment to the

Constitution.

CHAPDF - www.texia.com

(c)  What is not understood about the United States Supreme holding that if a subject matter jurisdiction defect exists, it may be raised at any time, even on appeal and that the court IS UNDER DUTY to point it out if parties do not. Louisville & Nashville Ry. Co.  v  Mottley, 211 us 149, 29 SCt 42, 53 LEd 126(1908) ? (cited in p. 3, paragraph 5 of Petitioner's motion, supra).

(d)  After reviewing the Record— Did the United States District Court for the Southern District of Texas  comply with its duty ?

4.  Title 28 USC § 636  EXCEPTS  a U.S. Magistrate from hearing and determining matter pertaining to a motion to dismiss or quash an indictment [vacating a judgment/relief from custody],  as this chapter does not vest federal judicial power in the magistrate, since this chapter does not contain any mandatory language. District court judges  alone  act as ultimate decision maker on Petitioner's motion. U.S.  v  Raddatz, Ill 1980, 100 SCt 2406, 447 US 667, 65 LEd 2d 429, rehearing denied 101 SCt 36, 448 US 916, 65 LEd 2d 1179.

(a)  accordingly, Petitioner did request of this court to advise him of the name of the U.S. District Court, supra,  who had or was to be assigned to decide on the merits and facts of law contained in his Ex parte motion (Certified Mail No. 7099 3220 0008 5421 6387, August 21st, 2000).

(a)(1)  The court failed to respond.

(b)  Does the silence of the Court mean that after 243 days of having received and filed Petitioner's Ex parte motion, supra, no assignment has been made to a judge of the court for an expedient adjudication of the motion ?

or

(c)  Does the silence of the court mean that it has taken 243 days for the start of the review of the merits, when the Clerk of the Court received and filed the motion, supra, on January 31st, 2000 ?

(d)  Petitioner respectfully repeats his previous request: please advise the name

-4-

of the judge of the court who will rule and decide on his motion.

5.   Assistant Unites States Attorney  Adela Kowalski-Garza/U.S. Attorney Office

have control and or possession of the evidence that would sustain Petitioner's

grounds for his allegation of prosecutor's (government) fraud upon the court and

the Grand Jury.

Pleadings before the U.S. District Court for the Eastern District of Texas, Beau-

mont Division, Civil Action 1:99-cv-00801 sustain that <u>since July 28th 1999</u> has

asserted his right to have specific evidence in the present or past possession and

under control of the United States Attorney's Office, or by any investigative agency.

Specifically the Grand Jury minutes and statements made to the Grand Jury by Asst.

U.S. Attorney Adela Kowalski-Garza to sustain the charges been made against the Pe-

titioner.

(a)  By conduct from which can be conclusively inferred refusal to perform a duty,

after four hundred and twenty seven (427) days of being duly notified Asst. U.S.

Attorney Adela Kowalski-Garza/U.S. Attorney Office  have failed to comply with her

constitutional duty to disclose evidence under her control and present or past pos-

session that is favorable and material to the Petitioner's case, and necessary for

proving the fraud upon the court and the Grand Jury.

6.  As stated within Petitioner's Ex parte motion, before the Federal Government can

apply and enforce federal laws, it must first secure criminal legislative juris-

diction.  When it is obtained then the federal district court has jurisdiction.  The

only exceptions are:  Counterfeiting, Treason, Admiralty and International Law.

(a)  If the court accepts a conviction without first determining jurisdiction

according to Art. I, Sec. 8, Cl. 17, and 40 USC § 255, then <u>the court</u> <u>has conferred</u>

the jurisdiction onto the federal government. JURISDICTION <u>CANNOT BE CONFERRED</u> ,

stipulated to, or waived. United States v Owens, 996 F2d 60 (5th Cir. 1993) ;

Collins v Thompson, 8 F3d 659 (9th Cir 1993); Harris v U.S., 149 F3d 1304-08 (11th

CVAPDF - www.fsvio.com

Cir. 1998).

(b)  Petitioner arguments include the authority for the government to obtain

jurisdiction.  The steps the Federal Goverment MUST take to acquire and

hence  PROVE  jurisdiction are listed in the following:

Article I, Section 8, Clause 17 of the U.S. Constitution ;

18 USC § 7(3) ;

40 USC § 255  ;

United States  v  Johnson, 994 F2d 980 (2nd Cir. 1993); and United States  v

Raffield, 82 F3d 611 (4th Cir. 1996).

These points of law and cases are the foundation of the Petitioner's argument con-

cerning jurisdiction.

(c)  The criminal legislative jurisdiction  MUST  be acquired  and  PROVED  in the

step by step process shown in U.S. v Johnson, supra.

(d)  No sanction can be imposed absent PROOF of jurisdiction. Standard  v Olesen

(1954, US) 98 Led 1151, 74 SCt 768.

(e)  Jurisdictional issues cannot  be barred at any time.


7.  The law provides that once federal jurisdiction has been challenged, it MUST

be proven. Hagans  v  Lavine (1974), 415 US 528 at 533, 94 SCt 1372, 39 LEd 2d

577, the United States Supreme Court held that where jurisdiction is challenged IT

MUST BE PROVEN (emphasis and underscore added).


(a)  The Petitioner challenged the jurisdiction of the court two hundred and

forty three (243) days ago.

(b)  Assist. U.S. Attorney Adela Kowalski-Garza/U.S. Attorney Office, and the

Court have failed to bring forth documented PROOF that she/it have secured cri-

minal legislative jurisdiction before applying and enforcing the laws under which

the Petitioner has been indicted, convicted , sentenced and imprisoned.

(1) have failed to bring forth documented proof that the government and

the court have lawful legislative jurisdiction over the SITUS where the alleged

-6-

criminal act was committed. Thus the burden remains and is upon the government to bring forth documented proof that it lawfully possessed legislative jurisdiction over the subject matter and of the locus in quo. (*)

8.    However late an objection that the court has no jurisdiction of the cause may be made in any case pending in a Federal court,  it MUST BE CONSIDERED and DECIDED before the Court can take any further step in the cause. Rhode Island v Massachusetts,  12 Pet 657, 9 LEd 1233.

9.    Undue delay  is tantamount to a failure to exercise jurisdiction . Madden v Myers, 102 F3d 74 (3rd Cir. 1996).

10.   The Court's expressed concerns of "clearly", "concisely", "summarize briefly" and  "separately numbered paragrpahs"  finds an answer by the following:
      Price  v  Johnston, Warden, 334 Us 292, May 24, 1948:

" It was enough if he presented an allegation and supporting facts which, if borne out by proof, would entitled him to relief.  Prisoners are often unlearned in the law and unfamiliar with the complicated rules of pleading. Since they act so often as their own counsel----we cannot  impose on them the same high standards of the legal arts which we might place on the members of the legal profession.  Specially this is true in a case like this where the imposition of the standards would have a retroactive and prejudicial effect on the prisoner's inartistically drawn petition. Cf. Holiday  v  Johnston, 313 US 342, 350;  Pyle  v  Kansas, 317 US 216;  Tomkins v  Missouri, 323 US 485, 487;  Rice  v  Olson, 324 US 786, 791-92;  Dioguardi  v Durning, 139 F2d 774 (2nd Cir. 1944)(where the court held that even though inarti-culate and unclear, did reveal the basic nature of his dispute  with the defendant and the specific incidents upon which the complaint was based.

## CONCLUSION

Petitioner respectfully request of the Court to rule on the following, but not limited to, with particularity so Petitioner can appeal any unfavorable decision.

After review of the Record, the Petitioner's Ex parte motion and the issues herein contained:

(a)   did the court accept a conviction without first determining jurisdiction according to Art. I, Section 8, Clause 17 of the Constitution, and 40 USC § 255 ?

(b)   By its actions did the court confer jurisdiction onto the Federal government when jurisdiction cannot be conferred, stipulated, or waived ?

(c)   Did the Federal government take the necessary steps to acquire and hence prove jurisdiction following Art. I, Sec. 8, Cl. 17 of the U.S. Constitution; 18 USC § 7(3) and 40 USC § 255 as established by U.S. v Johnson, supra, and U.S. v Raffield, supra which points of law and cases are the foundation of the Petitioner's argument concerning jurisdiction ?

(d)   Has the government come forth with documented proof of jurisdiction ?

(e)   In the instant case:

(1)   Is the judgment void when the court lacked subject matter jurisdiction and jurisdiction over the locus in quo ?

(2)   Did the Federal government secure criminal legislative jurisdiction first before applying and enforcing federal laws against the Petitioner ?

(3)   Can sactions be imposed absent proof of jurisdiction ?.

(4)   Has the government PROVED subject matter jurisdiction and jurisdiction over the locus in quo in the instant case ?

-8-

Jurisdiction has been challenged by the Petitioner. After 243 days have lapsed since the filing of the motion, supra, has the court considered and decided on the jurisdictional objection ?

The Court is further requested to rule with particularity on the following: Pages 30, 31, and 32 of the Ex parte motion ("XIV Conclusion"): paragraphs 1, 2, 3, 6, 7, 8, 8(a) and 8(b), 8(c) : c(1), c(2), c(3), c(4), c(5), c(6), c(7), c(8), c(9).

Respectfully submitted

Hugo P. Absalon Pro se
82491-079 "KB"
F.C.I.-Medium
P.O. Box 26040
Beaumont
Texas

Executed this 1st. day of October of the year 2000.

*1st OFFER REJECTED !!*

# PLEA PACKET MEMO

ASSIGNED AUSA : Adela Kowalski-Garza

DEFENDANT: Hugo Absalon    CASE# B-98-506

RECOMMENDATION: In return for the Defendant's plea to Count three(3) of the indictment the Government agrees to dismiss the remaining counts at the time of sentencing. The Government will recommend the defendant be given full credit for his acceptance of responsibility in this case and be sentenced at the low end of the sentencing guideline range he scores. Further, the Government stipulates that there is no evidence in this case showing any sexual contact between the victim and the defendant. Furthermore, the Government also stipulates that there is no evidence that any weapons were brandished or used in the commission of this offense.

FACTUAL SUMMARY:
On September 26, 1998, the Defendant abducted Jane Doe, (the true name of Jane Doe is withheld to protect the identity of this person who is a minor female) without her parents' consent. Jane Doe's father reported the abduction to the Roma Police Department who then notified FBI and Border Patrol. Jane Doe's father described the vehicle the Defendant used when he abducted Jane Doe. A lookout was placed for this vehicle. On September 1, 1998, the Defendant and Jane Doe were stopped at the Santa Check point by Border Patrol. The Defendant was driving a white Dodge Winnebago bearing Texas License Plate WNH-43?. Jane Doe was a passenger in this vehicle. Further investigation revealed ████████ ████████, Jane Doe, a Mexican national with no legal status in the United States, with a birth certificate belonging to his granddaughter, Nicole Absalon, ████████ come into this country illegally. Later, ████████ ████████ Graciela Suarez ██ bring Jane Doe illegally into the United States using the mentioned birth certificate. Graciela Suarez believe that Jane Doe was in fact his granddaughter Nicole Absalon. ████████ Jane/Doe stated the defendant did not have any sexual contact with her ████████. A rape kit performed on Jane Doe was negative.

I have read the above recommendation and factual summary and agree that they are true and correct as evidenced by my signature below

_____          Date _____

Attorney for Defendant

**EXHIBIT** "K"          Date _____

# United States District Court

## SOUTHERN

DISTRICT OF _____ TEXAS

*CLERK, U.S. DISTRICT COURT*
*SOUTHERN DISTRICT OF TEX*
**FILED**

SEP 3 1998

Michael N. Milby, Clerk

UNITED STATES OF AMERICA

V.

HUGH P. ABSALON

*DETENTION SEPT 1, 199*

## CRIMINAL COMPLAINT

CASE NUMBER: B98-3787M

(Name and Address of Defendant)

```
=======================
E X H I B I T   "  "
=======================
```

I, the undersigned complainant being duly sworn state the following Is true and correct to the best of my knowledge and belief. On or about ___08/26/1998___ in ___Cameron___ county, in the ___Southern___ District of ___Texas___ defendant(s) did, (Track Statutory Language of Offense)

Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise, any person, except in the case of a minor by the parent thereof.

in violation of Title ___18___ United States Code, Section(s) ___1201___

I further state that I am a(n) ___FBI Special Agent___ and that this complaint is based on the following

Official Title

facts:

SEE ATTACHED AFFIDAVIT

# SEALED

Continued on the attached sheet and made a part hereof: ☐ Yes   ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

___3 SEPT 98___
Date

at ___BROWNSVILLE, TX___
City and State

JOHN WM. BLACK
U.S. MAGISTRATE JUDGE

Name & Title of Judicial Officer

_____
Signature of Judicial Officer

EXHIBIT " L ".

RNAL USE ONLY: Proceedings include all events.                APPEAL
cr506-1 USA v. Absalon                                  CLOSED

nse: 10 years and/or $250,        Restitution to be
and 3    yrs SRT                  determined by Probation Office
                                  (5)


ense Level (opening): 4


ninated Counts:                           Disposition


L: Inducing certain aliens       Dismissed on Govt's Motion.
enter the U.S. illegally.        (1)
GC 1324(a)(1)(A)(iv) and
4(a)(1)(A)(v)(II); Offense
e: 9/1/98; Penalty: 20 yrs
/or $250,000 and 3 yrs SRT


3: Kidnapping; 18 USC            Dismissed on Govt's Motion.
l(a)(1) and (d); Offense         (3)
e:  9/1/98; Penalty: 20 yrs
any term of years or for
e.    (3)


4: Transporting of minor         Dismissed on Govt's Motion.
h intent to engage in            (4)
minal sexual activity; 18
: 2423(a); Offense Date:
./98; Penalty:10 yrs and/or
0,000 and 3 yrs SRT


5-8: Felon in possession         Dismissed on Govt's Motion.
a firearm. 18 USC                (6 - 8)
2(g)(1);  Penalty: 9/1/98;
ense: 10 years and/or $250,
) and 3    yrs SRT
- 8)


ense Level (disposition): 4


nplaints                                  Disposition


:1201  Kidnapping
1:98-m -3787 ]


cket as of March 19, 2000 9:39 am          Page 2   NON-PUBLIC


                    EXHIBIT " M "

CSisPDF - www.fas.to.com

## APPRENDI v NEW JERSEY
### (2000) 147 L Ed 2d 435

nd did not claim that
he burden of disprov-
er motive. The ques-
pprendi had a consti-
) have a jury find such
sis of proof beyond a
ubt is starkly pre-

o that question was
our opinion in *Jones*
, 526 US 227, 143 L
) S Ct 1215 (1999),
ederal statute. We
"under the Due Pro-
le Fifth Amendment
id jury trial guaran-
h Amendment, any
rior conviction) that
cimum penalty for a
larged in an indict-
o a jury, and proven
ible doubt." *Id.*, at
:d 2d 311, 119 S Ct
eenth Amendment
me answer in this
:ate statute.

II

ecture on the crim-
endell Holmes, Jr.,
threatens certain
ain things, intend-
you a new motive
. If you persist in
to inflict the pains
eats may continue
ew Jersey threat-
h certain pains if
sessed a weapon
il pains if he se-
vith a purpose to
because of their
simple justice, it
t the procedural

anced sentence based
ecause of the victim's
94 (1993).

safeguards designed to protect Apprendi from unwarranted pains should apply equally to the two acts that New Jersey has singled out for punishment. Merely using the label "sentence enhancement" to describe the latter surely does not provide a principled basis for treating them differently.

[1c, 3a] At stake in this case are constitutional protections of surpassing importance: the proscription of any deprivation of liberty without "due process of law," Amdt. 14, and the guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury," Amdt. 6.[3] Taken together, these rights indisputably entitle a criminal defendant to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *United States* v *Gaudin*, 515 US 506, 510, 132 L Ed 2d 444, 115 S Ct 2310 (1995); see also *Sullivan* v *Louisiana*, 508 US 275, 278, 124 L Ed 2d 182, 113 S Ct 2078 (1993); *Winship*, 397 US, at 364, 25 L Ed 2d 368, 90 S Ct 1068 ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged").

[3b] As we have, unanimously, explained, *Gaudin*, 515 US, at 510-511, 132 L Ed 2d 444, 115 S Ct 2310, the historical foundation for our recognition of these principles extends down centuries into the common law.

"[T]o guard against a spirit of oppression and tyranny on the part of rulers," and "as the great bulwark of [our] civil and political liberties," 2 J Story, Commentaries on the Constitution of the United States 540-541 (4th ed. 1873), trial by jury has been understood to require that "*the truth of every accusation*, whether preferred in the shape of indictment, information, or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours . . . ." 4 W. Blackstone, Commentaries on the Laws of England 343 (1769) (hereinafter Blackstone) (emphasis added). See also *Duncan* v *Louisiana*, 391 US 145, 151-154, 20 L Ed 2d 491, 88 S Ct 1444 (1968).

Equally well-founded is the companion right to have the jury verdict based on proof beyond a reasonable doubt. "The 'demand for a higher degree of persuasion in criminal cases was recurrently expressed from ancient times, [though] its crystallization into the formula "beyond a reasonable doubt" seems to have occurred as late as 1798. It is now accepted in common-law jurisdictions as the measure of persuasion by which the prosecution must convince the trier of all the essential elements of guilt.' C. McCormick, Evidence § 321, pp 681-682 (1954); see also 9 J. Wigmore, Evidence § 2497 (3d ed. 1940)." *Winship*, 397 US, at 361, 25 L Ed 2d 368, 90 S Ct 1068. We went on to explain that the reliance on the "reasonable doubt" standard among common-law jurisdictions " 'reflect[s]

3. [1d] Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. He relies entirely on the fact that the "due process of law" that the Fourteenth Amendment requires the States to provide to persons accused of crime encompasses the right to a trial by jury, *Duncan* v *Louisiana*, 397 US 358, 25 L Ed 2d 368, 90 S Ct 1068 (1970). That Amendment has not, however, been construed to include the Fifth Amendment right to "presentment or indictment of a Grand Jury" that is implicated in our recent decision in *Almendarez-Torres* v *United States*, 523 US 224, 140 L Ed 2d 350, 118 S Ct 1219 (1998). We thus do not address the indictment question separately today.

**EXHIBIT " N ".**