*8*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 3 0 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>Respondent, | §<br>§<br>§ | |
| v. | §<br>§ | CR. No. B-98-506 |
| HUGO P. ABSALON,<br>Petitioner.<br>(C.A. No. B-00-186) | §<br>§<br>§ | |



## GOVERNMENT'S ANSWER TO ABSALON'S
## SECTION 2255 PETITION AND MOTION FOR SUMMARY DENIAL

The United States of America, ("government"), by and through the United

States Attorney for the Southern District of Texas, files this answer to Absalon's

Section 2255 petition.  In support thereof, the government would respectfully show

the Court the following.

## I.  **COURSE OF PROCEEDINGS**

On September 30, 1998, Absalon was indicted in an eight-count indictment for

inducing a minor alien to enter the United States unlawfully in violation of 8 U.S.C.

Sections 1324(a)(1)(A)(ii) and (a)(1)(A)(v)(II) (count one); transporting an alien

within the United States in violation of 8 U.S.C. Section 1324(a)(1)(A)(ii) and

(a)(1)(A)(v)(II) (count two); kidnaping in violation of 18 U.S.C. Section 1201(a)(1)

and (d) (count three); transporting a minor with intent to engage in criminal sexual

activity in violation of 18 U.S.C. Section 2423(a) (count four); and felon in possession of a firearm in violation of 18 U.S.C. Section 922(g)(1) (counts five through eight) (PSR at paras. 1-6). On November 5, 1998, Absalon appeared before United States District Judge Hilda Tagle and entered pleas of guilty to counts two and five (transporting an alien and felon in possession of a firearm), pursuant to a written plea agreement with the government by which the government agreed to dismiss the remaining counts against Absalon at sentencing and recommend a three-level reduction for acceptance of responsibility (PSR at para. 7). Following two sentencing hearings, the district court sentenced Absalon on February 4, 1999, to a term of 60 months in the custody of the United States Bureau of Prisons on count 2 and 87 months on count 5. The court ordered the sentences to run concurrently to each other leaving a total sentence of 87 months to be followed by concurrent terms of three years supervised release. The court imposed a $200 special assessment and $2000 fine. It adopted the findings and recommendations in the PSR, except it departed upward from the recommended guideline range based on Absalon's kidnaping and sexual exploitation of the victim, and refused a three-level reduction for acceptance of responsibility under USSG Section 3E1.1 because it determined Absalon was untruthful concerning relevant conduct (DE # 37, 40, 42).[1] The remaining counts

---

[1] "DE" refers to the docket entry number on the docket sheet.

2

against Absalon were dismissed pursuant to the government's motion (DE# 38).

On February 4, 1999, Absalon filed notice of appeal from his judgment of conviction and sentence. He argued on direct appeal the district court did not assure he understood the nature of the charges pursuant to Fed. R. Crim. P. 11(c)(1); and the court failed to provide notice of its intent to depart upward from the sentencing guidelines. Following briefing and oral arguments, on February 24, 2000, the Court of Appeals for the Fifth Circuit affirmed Absalon's conviction and sentence in *United States v. Absalon*, No. 99-40280 (5th Cir. 2000). The final mandate of affirmance was issued on March 21, 2000 (DE # 47). Absalon filed a petition for writ of certiorari, which was denied on denied on November 7, 2000 (DE # 51).

While his direct appeal was still pending, on February 3, 2000, Absalon filed a 33-page ex parte motion under Fed. R. Civ. P. 60(b). Although Absalon's motion is hard to follow, it appears he requested the district court set aside his judgment of conviction and release him from custody for the following reasons: (1) the federal government lacked authority to criminalize activity occurring in the interior boundaries of "the Sovereign State of Texas"; (2) his due process and equal protection rights were violated because the district court failed to make known the "character of the court or which Article of the Federal Constitution the United States District Court is authorized . . . to operate"; (3) the indictment failed to allege the

CVAPDF - www.fesisa.com

location of the offense was within the "legislative jurisdiction" of the district court;
(4) the United States Attorney General was unauthorized to bring suits in the name
of the United States of America rather than United States as the "injured party or
plaintiff"; (5) Title 8 U.S.C. Section 1329 stating that United States district courts
shall have jurisdiction over all causes arising under the provisions of this subchapter
is unconstitutional; and (6) he was wrongly convicted for felon in possession of a
firearm since possession is no longer an element of 18 U.S.C. Section 922(g) (DE #
46).

On September 11, 2000, United States Magistrate Judge Felix Recio entered
an order notifying Absalon he should withdraw his ex parte Rule 60(b) motion and
resubmit a proper petition under 28 U.S.C. Section 2255, subject to the procedural
rules and requirements pertaining to such writs. If he chose not to do so, the court
would, nevertheless, construe his ex parte motion as a request for habeas corpus relief
under Section 2255. The court would not consider the ex parte motion unless he
amended it to clearly and concisely set forth, within a ten-page limit, the facts and
supporting grounds, and would dismiss said motion unless Absalon demonstrated
cause for failing to assert his claims on direct appeal, and prejudice resulting from the
failure to assert his claims on direct appeal. The magistrate court warned Absalon that
if he did not withdraw his ex parte motion and submit a proper Section 2255 petition,

4

and the court denied said motion, he risked dismissal of any future Section 2255 petitions as "successive" or "abusive" writs. The magistrate court gave Absalon 60 days in which to comply with its order (until November 10, 2000) (DE # 49).

On October 23, 2000, Absalon filed a pleading entitled "in reference to ex parte motion F.R. Cv. P. Rules 60(b)(3) and 12(b)(1) & (7)", asserting he would not withdraw his ex parte motion nor would he submit a petition under 28 U.S.C. Section 2255. He stated his ex parte motion "stands as written", and should not be construed as a request for habeas corpus relief pursuant to 28 U.S.C. Section 2255. He stated he could proceed by motion at any time, without the encumbrance of a time limitation. With respect to his failure to raise the claims on direct appeal, Absalon argued Rule 60 (b) permitted him to raise the claims in the district court while the appeal was pending, and the district court's failure to expeditiously rule on his motion prevented him from consolidating said claims with the pending claims on direct appeal. He flatly refused to follow the magistrate court's order to clearly and concisely set forth the facts and issues (DE # 50).

On December 1, 2000, the magistrate court entered its report and recommendation with regard to Absalon's ex parte motion. The court advised that Absalon's Rule 60(b) motion should properly be construed as a Section 2255 petition because Rule 60(b) is a civil rule that is unavailable to criminal defendants seeking

to overturn their convictions. The court pointed out even in civil cases, the district court could not grant relief under Rule 60(b) during the pendency of a direct appeal without permission from the Court of Appeals since the filing of a notice of appeal divests the district court of its jurisdiction to hear the Rule 60(b) motion (DE # 53, pp. 2-3). The magistrate court further advised that 28 U.S.C. Section 2255 provides the exclusive remedy for attacking Absalon's conviction and sentence. While Absalon was provided the opportunity to show cause for failing to raise his claims on direct appeal and prejudice, he failed to do so (DE # 53, pp. 3-4). The court stated:

> Petitioner merely alleges that this Court's failure to rule on his Ex Parte Motion 'effectively prevented' him from asserting those claims on appeal. Petitioner's assertion is entirely without merit. Even if Petitioner subjectively believed that he could not assert those claims on direct appeal, Petitioner would be hard pressed to show that his belief was rational. Given the frivolous nature of Petitioner's current claims, the more likely scenario is that Petitioner did not want to poison his appeal by including his present claims in with his application for appellate relief. Therefore, because the Petitioner has failed to provide any valid reason for his failure to argue his current claims on direct appeal, this Court need not address whether Petitioner has suffered any actual prejudice.

(DE # 53, at p. 4).

The magistrate court further pointed out that even if it considered the prejudice issue, Absalon could not show prejudice due to the frivolous nature of his entire ex parte motion. His assertions, including that the district court lacked jurisdiction to

convict him, were directly contradicted by the record. The Court had jurisdiction to convict him by virtue of the fact he was charged with violating federal laws (DE # 53, at p. 4) (citing *United States v. Masat*, 948 F.2d 923, 934 (5th Cir. 1991) (federal district courts have original jurisdiction over all offenses against the laws of the United States).

In conclusion, the magistrate court recommended the district court construe Absalon's Ex Parte motion as a Section 2255 petition, and dismiss said motion without a hearing because of his procedural default and the record conclusively demonstrated he was not entitled to relief. The magistrate court advised Absalon that his failure to object to the magistrate court's findings and recommendations within ten days after being served with a copy shall bar him, except on grounds of plain error, from attacking on appeal the unopposed proposed factual findings and legal conclusion accepted by the district court (DE # 53, at p. 5). According to the docket sheet, Absalon was served with the magistrate court's report on December 1, 2000, and his objections to said report were due by December 11, 2001 (DE # 53).

On December 6, 2000, Absalon filed a motion to vacate judgment and dismiss indictment in this proceeding. Once again, he requested the court overturn his conviction and release him from prison. He raised the same claims alleged in the ex part motion, as well as some new claims. Absalon's Section 2255 allegations will be

7

discussed below (DE # 54).

On December 19, 2001, Absalon untimely filed a 28-page objection to the report, arguing the court could not force him to file a Section 2255 petition at that stage of the proceedings, and that if the court did not want to rule on his ex parte motion it should dismiss said motion without prejudice in order to enable him to file an amended complaint. He reiterated the arguments in his ex parte motion (DE # 55).

On January 10, 2001, the district court adopted the magistrate court's report and recommendation. It construed Absalon's ex parte motion as a motion to vacate pursuant to 28 U.S.C. Section 2255 and dismissed it (DE # 57).

## II. **STATEMENT OF FACTS**

The PSR contains a summary of the offense facts in paragraphs 8-13, and those facts will not be reiterated herein.

## III. **ALLEGATIONS**

In his Section 2255 petition, Absalon raises the following allegations:

1.  His offense conduct in counts three (kidnaping) and four (transportation of minor alien with intent to engage in criminal sexual activity) which were the basis of his upward departure occurred in Mexico, and therefore, the court lacked jurisdiction to consider such conduct.

2.  There was no evidence he transported the victim in interstate or foreign commerce, which is an element of kidnaping, 18 U.S.C. Section 1201.

3.  Since the facts in the dismissed counts were used to increase his sentence, the

8

government was obligated to prove the charges in the dismissed counts beyond a reasonable doubt to a jury under *Apprendi v. New Jersey*.[2] His due process rights were, therefore, violated.

4. The government breached its plea agreement that it would not further criminally prosecute him by recommending the conduct in the dismissed counts three and four be used for purposes of enhancing his sentence, and the district court abused its discretion in considering said conduct.

5. The government failed to establish jurisdiction over the counts of conviction (2 and 5) because they were committed within the jurisdictional boundaries of Texas. The district court erroneously failed to dismiss the indictment for lack of jurisdiction.

6. Title 8 U.S.C. Section 1329, granting United States district courts jurisdiction over prosecutions brought under its subchapter, including Section 1324 prosecutions, is facially unconstitutional.

7. Trial counsel rendered ineffective assistance of counsel for not objecting to the court's lack of jurisdiction, and appellate counsel was ineffective for expressly refusing to raise such issue on appeal.

8. The punishment for felon in possession of a firearm in 18 U.S.C. Section 924(a)(2) was not authorized by Congress, and constitutes a fundamental miscarriage of justice.

## IV. **ARGUMENT**

A. **Absalon's Section 2255 Petition does not Qualify as a Successive Writ but Should be Denied with Prejudice because it Violated the Magistrate Court's Order Stating the Deadline for Amending the Ex Parte Motion to be Treated as a Section 2255 Petition.**

By adopting the magistrate court's recommendation, the district court properly

---

[2] *Apprendi v. New Jersey*, 530 U.S.466, 147 L.Ed.2d 435, 120 S.Ct. 2348 (2000).

construed Absalon's ex parte motion as a petition under 28 U.S.C. Section 2255. As

the court correctly determined, Fed. R. Civ. P. 60(b) is a civil rule that is unavailable

to criminal defendants seeking to overturn their convictions.[3] *See United States v.*

*Brown,* 2000 WL 375235 (E.D. La. 2000) ("a party may not seek relief from a

criminal sentence under Federal Rule of Civil Procedure 60(b) because Rule 60(b) is

not applicable to criminal proceedings") (citing Fed. R.Civ. P. 1; *United States v.*

*Napier,* 172 F.3d 874 (6th Cir. 1999) (unpublished order); *United States v. Mosavi,*

138 F.3d 1365, 1366 (11th Cir. 1998); *United States v. White,* 124 F.3d 218 (9th Cir.

1997) (unpublished order and judgment); *United States v. Erinle,* 53 F.3d 334 (7th Cir.

1995) (unpublished order); and *United States v. Dragotta,* 869 F.2d 595 (4th Cir.

1989) (unpublished opinion)).

Here, the court was presented with a post-conviction motion which was

inappropriate under the rule identified by Absalon, and the relief requested was only

available under Title 28 U.S.C. Section 2255. *See United States v. Rich,* 141 F.3d

550, 551-53 (5th Cir. 1998) (Rule 60(b) motion was properly treated as a successive

---

[3] Fed. R. Civ. P. 60(b) provides that on motion, the court may relieve a party from a final judgment order for (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Fed. R. Civ. P. 59(b); (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) judgment is void; (5) judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or vacated, or it is no longer equitable to enforce judgment; or (6) any other reason justifying relief from the operation of the judgment.

Section 2255 petition since it actually attacked the validity of Rich's conviction and, therefore, required certification by the Court of Appeals; holding otherwise, would make Section 2255 ineffectual); *United States v. DiBernardo*, 880 F.2d 1216, 1226 n. 5 (11th Cir. 1989) (motion for new trial construed as a Section 2255 petition) (citing *United States v. McIntosh*, 566 F.2d 949, 951 (5th Cir. 1978). "Section 2255 allows a person 'in custody' under sentence of a United States district court to file a petition to vacate or set aside the sentence, if the underlying basis for the sentence was obtained, inter alia, in violation of the Constitution or laws of the United States." *DiBernardo*, 880 F.2d at 1226 (citing *Hill v. United States*, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). Absalon was both "in custody" under a federal sentence, and sought to set aside his sentence based on the violation of the federal law and Constitution. Thus, Section 2255 was the proper avenue for relief and Absalon was required to meet the procedural requirements under Section 2255 in his ex part motion. *Id.* at 1227.

Normally, a district court will not entertain a Section 2255 petition while the direct appeal of his conviction and sentence are pending since the disposition of the appeal may render the motion moot. *United States v. Khoury*, 901 F.2d 948, 969 n. 20 (11th Cir.), *modified on other grounds*, 910 F.2d 713 (11th Cir. 1990); *Jones v. United States*, 453 F.2d 351, 352 (5th Cir. 1972); *Johnson v. Ferrell*, WL 33156445,

at p. 2 (S.D. Ala. 2000). Courts follow this rule to avoid needless and repetitive litigation. *Khoury*, 901 F.2d at 970 n. 20.   Although Absalon filed his ex parte motion on February 3, 2000, while his direct appeal was pending, the Fifth Circuit issued its opinion on February 24, 2000, and its mandate of affirmance on March 21, 2000.   Subsequent to that, on September 11, 2000, the magistrate court entered its order requesting Absalon to withdraw his Rule 60(b) motion and submit his claims in a Section 2255 petition; or alternatively, the court would construe his motion as a Section 2255 petition anyway, with the requirement Absalon amend it to comply with the procedures of Section 2255.   Therefore, the magistrate court addressed Absalon's ex parte motion after his direct appeal was decided (DE # 49).

On October 23, 2000, Absalon filed a pleading in response to the magistrate court's order within the designated 60-day time limit, asserting he did not wish to withdraw his ex parte pleading; nor would he submit a petition under Section 2255. He failed to satisfy the magistrate court's order to amend his motion to show cause and prejudice.[4]   Consequently, on December 1, 2000, the magistrate court entered its recommendation to construe Absalon's ex parte motion as a Section 2255 petition,

---

[4]He argued the district court's failure to promptly decide his ex parte motion prevented him from consolidating his Rule 60(b) claims with his claims on direct appeal (DE # 50).   This explanation has no validity since Absalon filed his ex parte motion one year after he filed notice of appeal, after the Fifth Circuit conducted oral arguments, and only three weeks before the Fifth Circuit issued its opinion on direct appeal.

and to dismiss it because Absalon failed to demonstrate cause and prejudice and his claims were facially meritless. On December 4, 2000, Absalon filed his Section 2255 petition, reiterating his claims in the ex parte motion and raising entirely new claims (DE #54). Because the district court did not enter its order adopting the magistrate court's report as to the ex parte motion until January 10, 2001 (DE # 57), Absalon's December 6, 2000, Section 2255 petition does not qualify as successive petition. It should be dismissed, however, since it violated the magistrate court's order setting a deadline for amending Absalon's ex parte motion, which the court treated as a Section 2255 petition.

Section 2255 does not define what constitutes a "second" or successive" petition. *United States v. Orozco-Ramirez*, 211 F.3d 862, 867 (5th Cir. 2000). Under Section 2255's gatekeeping provisions for successive petitions, the Court of Appeals must first certify a successive petition to be filed in the district court as provided in 28 U.S.C. Section 2244. Such certification can occur only if the petition contains "(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." *See Id.* at 864-65.

13

Not every Section 2255 petition that is filed after a prior one qualifies as a "successive" petition. *Id.* at 867 (citing *Stewart v. Martinez-Villareal*, 523 U.S. 637, 118 S.Ct. 1618, 140 L.Ed.2d 849 (1998) (claim dismissed without prejudice was not barred from being brought in second petition); *Slack v. McDaniel*, 529 U.S. 473, 120 S.Ct. 1595, 1604-05, 1620-22, 146 L.Ed.2d 542 (2000) ("A petition filed after a mixed petition has been dismissed . . . *before* the district court adjudicated *any* claims is to be treated as 'any other first petition' and is not a second or successive petition") (emphasis in original)). *See Muniz v. United States*, 236 F.3d 122, 125-27 (2d Cir. 2001). For a habeas petition to be considered "successive", the previous Section 2255 motion must have been procedurally or substantively denied on the merits. *See Garrett v. United States*, 178 F.3d 940 (7ᵗʰ Cir. 1998); *Pratt v. United States*, 129 F.3d 54, 60 (1ˢᵗ Cir. 1997) ("Recent post-AEDPA cases . . . have preserved the rule that if the original petition did not produce an adjudication on the merits a prisoner's later petition will not be deemed 'second or successive'"); *Marino v. United States*, WL 39008, at page 9 (N.D. Ill. 1999) (motion to supplement original Section 2255 petition that had not be decided on the merits was not a successive petition). Here, Absalon's December 6, 2000, Section 2255 petition was filed before the district court's final judgment on January 10. It is, therefore, not deemed to be a successive writ under 28 U.S.C. Section 2255. *Compare Orozco-Ramirez*, 211 F.3d at 869 (first

14

Section 2255 was adjudicated on the merits and second petition raised claims that could have been raised in the first petition). Had the district court entered its order before December 6, 2000, then Absalon's Section 2255 petition would qualify as "successive".

Absalon's second Section 2255 petition violated the magistrate court's order with respect to amending his initial ex parte motion. The court notified Absalon it intended to treat his ex parte motion as a Section 2255 petition. It should be noted, both the ex parte motion and Section 2255 petition were filed within one year of Absalon's conviction becoming final. Pursuant to Rule 12 of the Rules Governing Section 2255 Proceedings, "if no procedure is specifically prescribed by these rules, the district court may proceed in any lawful manner not inconsistent with these rules, or any applicable statute, and may apply the Federal Rules of Criminal Procedure, or the Federal Rules of Civil Procedure, whichever it deems appropriate, to motions filed under these rules." *See United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996). Accordingly, courts have applied Fed. R. Civ. P. 15 with regard to amendments of Section 2255 petitions although it is not mandatory that the court apply Rule 15 in such instances. *Id.*

Under Fed. R. Civ. P. 15(a), "if the pleading is one to which no responsive pleading is permitted and the action has not been placed on the trial calendar, the

party may so amend it at any time within 20 days after it is served. Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so required." *Accord National Liberty Corporation v. Wal-Mart Stores*, 120 F.3d 913, 916 (8th Cir. 1997). A district court's decision whether to grant leave to amend a pleading is reviewed for abuse of discretion. *Ford Motor Credit Company v. Bright*, 34 F.3d 322, 324 (5th Cir. 1994); *Robinson v. Wade*, 686 F.2d 298, 304 (5th Cir. 1982).

Here, Absalon filed an ex parte motion, to which the government was not ordered to file a response. On September 11, 2000, the magistrate court entered an order stating it would treat the ex parte motion as a Section 2255 petition if Absalon did not withdraw it and file a petition under Section 2255. The court gave Absalon 60 days until November 10, 2000, in which to amend his ex parte motion, if he did not withdraw it (DE # 49). On October 23, 2000, Absalon responded to the court's order asserting he would not withdraw his ex parte motion, and that it stands as written. He did not amend his motion to demonstrate cause and prejudice as ordered by the court. Nor did he amend his petition to include any other claims (DE # 50). Accordingly, on December 1, 2000, the magistrate court entered its report and recommendation that Absalon's ex parte motion be treated as a Section 2255 petition, and that it be dismissed on the merits because of the procedural default and the record

16

conclusively showed Absalon was not entitled to relief (DE #50).

After being served with the above report, Absalon filed a petition under Section 2255 asserting the same and new claims. He neither sought leave from the court to amend his ex parte motion after the time limitation set by the Magistrate Court; nor obtained consent from the government to amend his pleadings (DE # 54). Subsequently, on January 10, 2001, the district court adopted the magistrate court's report (DE # 57). Not only did Absalon fail to provide a reason for failing to amend his petition within the time frame provided by the magistrate court, he flatly refused in his October 23, 2000, pleading to avail himself of the opportunity provided by the magistrate court to amend his ex parte motion. The fact he did not file the Section 2255 petition until December 6, 2000, after being served with the adverse report by the magistrate court, demonstrates Absalon filed said petition to circumvent the magistrate court's September 11, 2000, order, and as a dilatory tactic to raise additional claims, and get another bite at the apple with respect to the old claims. The Court, therefore, has the discretion to dismiss Absalon's December 6, 2000, Section 2255 petition, since it was filed after the time limitation set by the magistrate court for amending his initial motion. *See Ford Motor Company*, 34 F.3d at 324 (district court's denial of leave to amend answer was not abuse of discretion); *Coleman v. Ramada Hotel Operating Company*, 933 F.2d 470, 473 (7th Cir. 1991) (district court

did not abuse discretion in denying leave under Rule 15(a) to append frivolous or repetitious allegations to complaint); *Ferris v. Santa Clara County*, 891 F.2d 715, 718-19 (9th Cir. 1989) (court did not abuse its discretion in striking second amended civil rights complaint filed by *pro se* plaintiff that added entirely new claim and failed to cure defect court had told him about); *Robinson*, 686 F.2d at 304 n. 11 (where Section 2241 petitioner attempted to raise new claims in his objections to the magistrate's recommendation, court did not abuse its discretion in denying their consideration at that late stage in the proceedings).

## B. **Absalon's Section 2255 is Procedurally Barred**

Challenges under 28 U.S.C. Section 2255 are limited in scope: a post-conviction motion to vacate sentence under Section 2255 "is reserved for the transgression of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *United States v. Palomo*, 80 F.3d 138, 140 n. 3 (5th Cir. 1996). Once the defendant has been convicted and exhausted his right to appeal, there is a presumption that he stands fairly and finally convicted. *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991).

When constitutional or jurisdictional error is alleged, collateral relief is only available after the defendant shows "cause" for failing to pursue the error on direct

appeal, and the error resulted in actual prejudice that denied him fundamental fairness at trial. *Id. Accord Murray v. Carrier*, 477 U.S. 478, 494, 106 S.Ct. 2639, 2648 (1986). A petitioner is precluded from raising all other type errors in a Section 2255 proceeding unless he demonstrates he could not have raised the error on direct appeal and the error would result in a complete miscarriage of justice. *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (emphasis added).

Absalon claims he requested his appellate counsel raise the "jurisdictional issue" on appeal by means of supplementation or amendment, and counsel refused because he viewed the claim as nonmeritorious. This explanation of "cause", is different from his explanation in the October 23, 2000, pleading that his reason for failing to raise his jurisdictional claim on direct appeal was because the district court did not promptly rule on his Rule 60(b) ex parte motion.

Absalon has attached as exhibit "E" to his Section 2255 petition, part of an undated, unsigned, type-written, letter addressed to "Mr. Gould". He claims he sent this letter to Mr. Richard Gould, his attorney on appeal. The letter appears to have been written after Mr. Gould filed Absalon's brief. The letter states that Absalon wished to raise a jurisdictional challenge by means of an amendment or supplementation of his brief on direct appeal or in a habeas corpus petition under 28 U.S.C. Section 2241. He alleged the government had no authority or jurisdiction

19

under statutory or constitutional provisions to prosecute him. Absalon has also attached as Exhibit "F", part of an unsigned, type-written letter, displaying Richard Gould's letterhead. The letter was in response to two pieces of correspondence from Absalon. It stated Mr. Gould had already discharged his responsibility as Absalon's appellate counsel, and would not add an additional jurisdictional claim since such claim was nonmeritorious and cluttered the real issues. Moreover, Mr. Gould was not hired to represent Absalon in a habeas proceeding.

Absalon raises at least eight claims in his Section 2255 petition, one of which challenges federal jurisdiction over the counts of conviction. He has failed to allege, much less prove, cause and prejudice with respect to his remaining seven claims. Moreover, Absalon's attempt to show cause for failing to raise the above "jurisdictional" claim on direct appeal also fails. He did not request counsel raise the claim until after his appeal had already been filed. Under the Federal Rules of Appellate Procedure, Absalon could not have raised new claims after the deadline for briefing had expired, unless he requested Mr. Gould to withdraw as his appellate counsel, and obtained permission from the Fifth Circuit for different counsel to file a new brief. *See* Fed. R. App. P. 28, 30, and 31. Absalon has also failed to allege or prove he suffered actual prejudice as a result of the alleged jurisdictional error. As appellate counsel, and the magistrate court, correctly opined, Absalon's claim the

20

government lacks jurisdiction to prosecute him for his convicted offenses is frivolous.

## C. **Merits of Absalon's Claims**

Absalon is not entitled to an evidentiary hearing if "the motion and the files and records of the case conclusively show that he is entitled to no relief . . ." 28 U.S.C. Section 2255. For the reasons discussed below, his Section 2255 claims should be summarily denied without an evidentiary hearing.

1.  *Claim Court had no Jurisdiction to Consider Conduct in Dismissed Counts as Grounds for Upward Departure is not Cognizable Herein; Claim evidence was insufficient to show he transported victim in interstate or foreign commerce is misplaced since Absalon was not convicted of kidnaping; notwithstanding, the evidence sufficiently established that fact.*

Absalon contends the district court lacked jurisdiction to consider the conduct underlying the dismissed charges of kidnaping and transporting a minor alien with intent to engage in criminal sexual activity as relevant conduct or grounds for his upward departure since these offenses occurred in Mexico. At sentencing, Absalon adamantly denied sexually exploiting or kidnaping the minor victim. Following a hearing, the court determined he failed to accept responsibility for relevant conduct (conduct underlying the dismissed counts), and further that the relevant conduct, in fact, occurred. The court departed upward from the sentencing guideline range because of Absalon's sexual exploitation and kidnaping of the victim (second sentencing hearing, at 96-102, 107, 113).

21

Absalon was not convicted for the conduct underlying the dismissed counts. Such conduct was simply considered for purposes of determining whether he accepted responsibility, and for grounds for an upward departure. Thus, the government was not required to prove the jurisdictional elements in the statutes covering kidnaping or transporting a minor alien with intent to engage in sexual activity. Regardless, the evidence established the jurisdictional elements in both statutes. Title 18 U.S.C. Section 1201(a)(1) makes it a crime for a person to unlawfully seize, confine, kidnap, abduct, or carry away and hold for ransom or reward or otherwise any person, when "the person is willfully transported in interstate or foreign commerce . . ." Likewise, 18 U.S.C. Section 2423 makes it a crime to transport a minor under 18 years old in interstate or foreign commerce with the intent to engage in criminal sexual activity.

Here, the evidence showed Absalon abducted the minor victim in Mexico and transported her into the United States (PSR at paras 8-13). This provided the jurisdictional basis for the government to prosecute both crimes in the dismissed counts. *See United States v. De La Rosa*, 911 F.2d 985, 989 (5th Cir. 1990) (where defendant transported two-year old from Mexico to United States, Fifth Circuit held that Section 1202(a)(1) "is sufficiently broad to cover the abduction of a person in Mexico and his subsequent transportation into the United States. . . 'Foreign

22

commerce' means to or from the United States").

Notwithstanding, a claim the court misapplied the sentencing guidelines is not a question of constitutional or jurisdictional magnitude.  It is the other type of error that may not be raised in a Section 2255 proceeding unless Absalon can demonstrate the error could not have been raised on appeal and, if condoned, would "result in a fundamental defect inherently resulting in a complete miscarriage of justice." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998) (miscalculation of guideline sentence is not grounds for Section 2255 relief). *See United States v. Payne*, 99 F.3d 1273, 1281 (5th Cir. 1996) (claim district court improperly refused to apply reduction for acceptance of responsibility is not cognizable in a Section 2255 proceeding); *United States v. Faubion*, 19 F.3d 226, 232-33 (5th Cir. 1994) (attack on district court's upward departure is not cognizable in a Section 2255 action since it poses no constitutional, statutory or jurisdictional claim).  Absalon has failed to demonstrate the above challenge was incapable of being raised on direct appeal, and that the alleged error would result in a complete miscarriage of justice.  *Cervantes*, 132 F.3d at 1109 (miscalculation of guideline sentence did not result in complete miscarriage of justice).

At any rate, the court properly considered the evidence underlying the dismissed counts since it constituted relevant conduct, and Absalon lied about his

relevant conduct. This factor was important in determining whether Absalon deserved

a three-level reduction for acceptance of responsibility. A defendant is not entitled

to a reduction for acceptance of responsibility as a matter of right. *United States v.

Cano-Guel*, 167 F.3d 900, 906 (5th Cir. 1999). He must clearly demonstrate to the

district court he is entitled to a reduction. *Id*. A defendant is not entitled to a reduction

for acceptance of responsibility if he lies about his relevant conduct. *See* USSG

Section 3E1.1 comment. (n.1(a)). The district court determined in the face of

overwhelming incriminating evidence that Absalon, in fact, lied about his relevant

conduct. *Cano-Guel*, 167 F.3d at 906.

2.    *Claim Apprendi Requires the Government  to Prove Beyond a Reasonable
      Doubt  the Conduct in the Dismissed Counts is not Cognizable Herein*

Relying on *Apprendi v. New Jersey*,[5] Absalon argues since the dismissed

counts were used to increase his sentence, due process requires that the government

prove such charges beyond a reasonable doubt. First, the weight of the authority holds

that the *Apprendi* decision does not have retroactive application in initial Section

2255 collateral attacks. *See Jones v. Smith*, 231 F.3d 1227 (9th Cir. 2000); *United

States v. Sanders*, 2001 WL 369719, at pp. 5-9 (4th Cir. April 13, 2001) ("We agree

with the Ninth Circuit and the majority of district courts that *Apprendi* does not apply

_____

[5] *Apprendi v. New Jersey*, 530 U.S.466, 147 L.Ed.2d 435, 120 S.Ct. 2348 (2000).

retroactively to cases on [initial] collateral review"); *Panoke v. United States*, 2001 WL 46941 (D. Haw. Jan. 5, 2001); *United States v. Brown*, 2000 WL 1880280 (N.D. Tex. Dec. 28, 2000); *United States v. Gibbs*, 2000 WL 1909627 (E.D. Penn. Dec. 19, 2000); *Klein v. United States*, 125 F.Supp.2d 460 (D. Wyo. Dec. 19, 2000); *United States v. Seehausen*, 2000 WL 1809993 (N.D. Ill. Dec. 11, 2000) ("our circuit has held that *Apprendi* does not apply retroactively" in a Section 2255 proceeding, citing *Talbott v. Indiana*, 226 F.3d 866, 868 (7th Cir. 2000)); *United States v. Johnson*, 126 F.Supp.2d 1222 (D. Neb. 2000); *United States v. Joseph*, 2000 WL 1789989 (E.D.La. Dec.5, 2000); *West v. United States*, 123 F.Supp.2d 845, 2000 WL 1790425 (D. Md. 2000); and *United States v. Pittman*, 120 F.Supp.2d 1263 (D. Ore. 2000). *Contra United States v. Murphy*, 109 F. Supp.2d 1059 (D. Minn. 2000).

Second, Absalon has failed to show cause for failing to raise the *Apprendi* claim on direct appeal or actual prejudice from the alleged error. *See Sanders*, 2001 WL 369719, at page 4 (rejected futility argument as a cause for procedural default, holding petitioner failed to show cause for not raising *Apprendi* claim at trial or on direct appeal); *United States v. Smith*, 241 F.3d 546, (7th Cir. 2001) (on motion to vacate, petitioner did not establish cause for procedural default on *Apprendi* claim that jury should have determined drug quantity involved in conspiracy where petitioner did not allege ineffective assistance of trial or appellate counsel for failing

25

to raise said claim).

Lastly, the *Apprendi* decision is inapplicable when the sentence does not exceed the statutory maximum sentence that is applicable. "A fact used in sentencing that does not increase a penalty beyond the statutory maximum need not be alleged in the indictment and proved to a jury beyond a reasonable doubt." *United States v. Keith*, 230 F.3d 784, 787 (5th Cir. 2000). Here, Absalon was convicted of violating 8 U.S.C. Section 1324(a)(1)(A)(ii) and (v)(II) (count two), which carries a maximum statutory sentence of five years imprisonment; and 18 U.S.C. Section 922(g)(1) (count five), which carries a maximum sentence of ten years imprisonment. Absalon was sentenced to 60 months (5 years) on count two, and 87 months imprisonment on count five. Absalon's sentences were within the statutory ranges for each offense. He, therefore, has no *Apprendi* claim since his sentence was *not enhanced beyond the statutory maximum* by a factor not contained in the indictment or submitted to the jury. *Keith*, 230 F.3d at 787; *United States v. Doggett*, 230 F.3d 160, 165 (5th Cir. 2000) (*de novo* review). *Accord United States v. Munoz*, 233 F.3d 410, (6th Cir. 2000); *United States v. Hernandez-Guardado*, 228 F.3d 1017, 1027 (9th Cir. 2000); *Hernandez v. United States*, 226 F.3d 839, 841-42 (7th Cir. 2000); *United States v. Aguayo-Delgado*, 220 F.3d 926, 934 (8th Cir.), *cert. denied,* __U.S.__, 121 S.Ct. 600, 148 L.Ed.2d 513 (2000).

3.    *Absalon's claim the government breached its plea agreement is misplaced*

Absalon argues the government breached its plea agreement to not further prosecute him by recommending the conduct in dismissed counts three and four be considered to enhance his sentence. He also argues the court abused its discretion in considering said conduct for such purposes.

Prior to sentencing, the probation officer recommended Absalon receive a three-level reduction for acceptance of responsibility, and did not recommend any upward adjustments for the relevant conduct in the dismissed counts. The government subsequently filed a statement of no objections to the PSR (DE # 30). Absalon, on the other hand, contested the factual summary in the PSR pertaining to his offense conduct, and the facts underlying his prior conviction for criminal sexual contact. He wrote his own version of relevant facts to be considered by the court (DE # 31). The court consequently conducted a hearing to afford Absalon every opportunity to show why the facts in the PSR as it related to the relevant conduct should not be accepted by the court, and the government the opportunity to refute Absalon's evidence. Against defense counsel's recommendation, Absalon's version of the facts was read into the record. Absalon claimed none of the photographs of the victim seized from his Winnebago were improper. The court, consequently, requested the government produce the photographs in question for the court's inspection (first sentencing

27

hearing, at pp. 2-28).[6]

The sentencing hearing recommenced on another date, during which Absalon testified under oath. He confirmed he wrote the statements in his objections to the PSR and they were true and correct. He reiterated the photographs of the victim were not improper or provocative (second sentencing hearing at pp. 12-13). To rebut Absalon's version of the offense facts, the government called as witnesses, the victim, the victim's mother, and the case agent (second sentencing hearing, at pp. 17-36, 43-75, 77-81). Following, the court notified defense counsel it was considering an upward departure from the guidelines and would provide Absalon the opportunity to present evidence to support no upward departure. The probation officer informed the court that Absalon's sexual conduct with the victim had not been considered in the sentencing adjustments (*Id*. at 84).[7] Defense counsel recalled the government's witnesses to attempt to discredit the victim's testimony. After the presentation of this testimony, the government requested an upward departure from the guideline range over Absalon's objection (*Id*. at 93). The district court determined an upward

---

[6] The government's response brief on direct appeal contains a comprehensive rendition of the facts. It is attached as Exhibit "A"to the government's response to Absalon's Section 2255 petition.

[7] Had Absalon left well enough alone, and not made an issue of the factual accuracy of the PSR, he would have received a windfall since the PSR, should have, but did not, include in the guideline calculation the relevant conduct underlying the dismissed counts. *See* USSG Section 1B1.3(a)(1)(A) and (2), comment. (n. 3), and USSG Section 3D1.2.

departure was warranted based on Absalon's kidnaping and sexual exploitation of the victim, and that Absalon did not warrant a sentencing reduction for acceptance of responsibility (*Id.* at pp. 96-102, 107, 113).

The terms of the written plea agreement between the government and Absalon was that the government would dismiss counts 1, 3,4, 6-8, and recommend a sentencing reduction for acceptance of responsibility. The government also agreed not to bring any additional charges against Absalon based on his conduct underlying the instant indictment. The government complied with each of these terms. The government's recommendation for a reduction for acceptance of responsibility was obviously conditioned on Absalon truthfully admitting the facts underlying the offenses. The probation officer in the PSR initially recommended a three-level reduction for acceptance of responsibility (PSR at para. 27), and the government stated it had no objections to this recommendation (DE # 30). However, when Absalon subsequently chose to interject facts the court found to be untrue, he caused his own demise. The court on its own volition denied him the reduction for acceptance of responsibility after it determined he testified untruthfully about the offense and relevant conduct at sentencing. In compliance with the plea agreement, the government dismissed the above counts against Absalon after sentencing. The government has brought no new charges against Absalon stemming from the same

29

conduct underlying the instant case. Therefore, Absalon's allegation holds no water.

Additionally, as discussed under section B, Absalon could have argued the government breached its plea agreement in the district court, and on direct appeal, but failed to do so. He cannot show prejudice from the alleged error since the conduct in the dismissed counts should have been included as relevant conduct in the PSR to begin with (see footnote 8).

4.    *Absalon's claims the government lacked jurisdiction over the crimes of conviction, and Title 8 U.S.C. Section 1329 granting United States district courts jurisdiction over alien crimes is facially unconstitutional, are frivolous*

Absalon was convicted of transporting an undocumented alien in violation of 8 U.S.C. Section 1324(a)(1)(A)(ii) and felon in possession of a firearm in violation of 18 U.S.C. Section 922(g) (counts two and five). Section 1324(a)(1)(A)(ii) makes it a crime for any person, "knowing or in reckless disregard of the fact than an alien has come to, entered, or remains in the United States in violation of law," to transport, move, or attempt to transport or move, such alien within the United States in furtherance of such violation of law. Title 8 U.S.C. Section 1329 establishes the jurisdiction of United States district courts over suits brought under Section 1324(1)(A)(ii). It states:

> The district courts of the United States shall have jurisdiction of all causes, civil and criminal, brought by the United States that arise under the provisions of this subchapter. It shall be the duty of the United States attorney of the

30

proper district to prosecute every such suit when brought by the United States. Notwithstanding any other law, such prosecutions . . . may be instituted at any place in the United States at which the violation may occur or at which the person charged with a violation under section 1325 or 1326 of this title may be apprehended. . .

Absalon argues Section 1329 is facially unconstitutional. He relies on Title 8 U.S.C.A. Annotated, Section 1329, Notes of Decisions, Note 1, which refers to a 1978 opinion by the Office of Legal Counsel of the Department of Justice stating Section 1329 is unconstitutional as it applies to 8 U.S.C. Section 1325 since it authorizes prosecution for eluding inspection under Section 1325 in a district other than the district at or near the border where the inspection should have taken place. This opinion is not binding case law. Nor does it apply to Section 1324 prosecutions. Consequently, it has no relevance here. Regardless, Congress provided in 18 U.S.C. Section 3231 that "the district court of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."

Recognizing the United States Congress has sovereign authority over enacting laws relating to immigration, the Supreme Court in *United States v. Valenzuela-Bernal*, declared: "The power to regulate immigration–an attribute of sovereignty essential to the preservation of any nation – has been entrusted by the Constitution to the political branches of the Federal Government. The Court without exception has

sustained Congress' 'plenary power to make rules for the admission of aliens.'" 458 U.S. 858, 845, 102 S.Ct. 3440, 3445, 73 L.Ed.2d 1193 (1982) (citation omitted). Congress, therefore, has exercised its sovereign power to designate United States District Courts with jurisdiction to handle crimes involving the transportation of undocumented aliens.

The evidence shows Absalon transported an undocumented alien into the United States at or near Brownsville, Texas (PSR at para. 9). Accordingly, the United States properly brought charges in the Southern District of Texas, Brownsville, Division, and this Court had proper jurisdiction over the case. *Uribe v. United States*, 529 F.2d 742, 743 (5th Cir. 1976).

Similarly, Congress had authority under the Commerce Clause of the United States Constitution to make it a federal crime for a convicted felon to possess firearms. *United States v. Gresham*, 118 F.3d 258, 264 (5th Cir. 1997); *United States v. Rawls*, 85 F.3d 240, 242 (5th Cir. 1996). Title 18 U.S.C. Section 922(g)(1) makes it unlawful for any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year to "possess in or affecting commerce, any firearm or ammunition. . . which has been shipped or transported in interstate or foreign commerce." "By expressly requiring a nexus between the illegal firearm and interstate commerce [in Title 18 U.S.C. Section 922(g)(1)], Congress exercised its

delegated power under the Commerce Clause to reach 'a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce.'" *United States v. Pierson*, 139 F.3d 501, 503 (5th Cir. 1998) (noting it upheld the constitutionality of Section 922(g)(1) which includes the same jurisdictional element as Section 922(g)(8)) (citing *United States v. Lopez*, 514 U.S. 549, 561-63, 115 S.Ct. 1624, 1631, 131 L.Ed.2d 626 (1995)).

Absalon, as a convicted felon, violated Section 922(g)(1) when he possessed several firearms at the Sarita Checkpoint near Brownsville (PSR at para. 13). Pursuant to 18 U.S.C. Section 3231, the United States District Court for the Southern District of Texas, Brownsville Division, had jurisdiction over this crime. Absalon's allegations are frivolous.

5.    *Trial counsel rendered effective assistance*

Absalon asserts trial and appellate counsel rendered ineffective assistance for failing to challenge the court's and government's jurisdiction over the counts of conviction.

a. Standard of review

In order to prevail on a claim of ineffective assistance of counsel, the petitioner must satisfy a two-prong test:  (1) his counsel's performance was deficient and (2) counsel's deficient performance prejudiced his defense. *Strickland v. Washington*,

466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel's performance is deficient if it falls below an objective standard of reasonableness as measured by prevailing professional standards. *Id.* Recognizing there are an infinite variety of possible trial techniques and tactics, the reviewing court will not second-guess legitimate strategic choices, *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993); and will indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Samuels*, 59 F.3d at 529. The reviewing court must endeavor to eliminate the distorting effects of hindsight and evaluate the facts from counsel's perspective at the time of trial. *Lockhart v. Fretwell*, 506 U.S. 364, 371, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993).

A criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Fretwell*, 113 S.Ct. at 842. Not only must prejudice be alleged, it must also be affirmatively proven. *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. (1994).

b. <u>Argument</u>

As discussed above, Absalon's jurisdictional claim is frivolous. Counsel was, therefore, not required to make a frivolous objection or argument that the court lacked jurisdiction over the crimes of conviction. *See English v. United States*, 998 F.2d 609, 612 (8th Cir. 1993) (reasonable trial strategy cannot rise to the level of ineffective

assistance of counsel); *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (counsel is not required to make meritless arguments).

6.    *Absalon's argument 18 U.S.C. Section 924(a)(2) setting forth punishment for felon in possession of a firearm was unauthorized by Congress is misplaced*

Title 18 Section 922(g)(1) clearly prohibits a felon from possessing in or affecting commerce, any firearm or ammunition. Section 924(a)(2) states whoever knowingly violates subsection (g) of section 922, "shall be fined as provided in this title, imprisoned not more than 10 years, or both." Absalon's sentence, was, therefore, clearly authorized by Congress.

## <u>CONCLUSION</u>

For all the above reasons, Absalon's Section 2255 petition should be summarily denied.

Respectfully submitted,

MERVYN M. MOSBACKER
United States Attorney

By:  *[signature]*

KATHERINE L. HADEN
Assistant United States Attorney
Texas Bar No. 08677500
910 Travis, Ste. 1500
P.O. Box 61129
Houston, Texas 77208
(713) 567-9102

36

## CERTIFICATE OF SERVICE

I, Katherine L. Haden, do hereby certify that a copy of the foregoing Answer

to Absalon's Section 2255 Petition has been mailed on this the 26th day of April,

2001, via certified mail, return receipt requested to:

Hugo P. Absalon
Prisoner No. 82491-079
FCI Medium
PO Box 26040
Beaumont, TX 77720-6040

KATHERINE L. HADEN
Assistant United States Attorney

37

Exhibit
1

CVisPDF – www.fastio.com

# NO. 99-40280

IN THE

## UNITED STATES COURT OF APPEALS

### FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
                                    Plaintiff-Appellee,

v.

HUGO P. ABSALON,
                              Defendant-Appellant.

On Appeal from the United States District Court
For the Southern District of Texas
Brownsville Division, Criminal No.  B-98-506

## BRIEF OF PLAINTIFF-APPELLEE

MERVYN M. MOSBACKER
United States Attorney

PAULA C. OFFENHAUSER
Assistant United States Attorney

KATHERINE L. HADEN
Assistant United States Attorney
Attorneys for Appellee
910 Travis, Suite 1500
P.O. Box 61129
Houston, Texas 77208
(713) 567-9102

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument should be denied because (1) the facts and legal arguments are adequately presented in the briefs and record and (2) the decisional process would not be significantly aided by oral argument.  Fed. R. App. P. 34(a)(3).

-i-

CtrlPDF – www.fwsho.com

# TABLE OF CONTENTS

**Page**

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   Course of Proceedings and Disposition Below . . . . . . . . . . . 2
    B.   Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . 3

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . .

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    THE RECORD ESTABLISHES THE DISTRICT COURT
    ADEQUATELY ASSURED ABSALON UNDERSTOOD THE
    NATURE OF THE CHARGES TO WHICH HE PLED GUILTY IN
    COMPLIANCE WITH FED. R. CRIM. P. 11(c)(1) . . . . . . . . . . . 14

    ABSALON WAIVED HIS COMPLAINT THAT THE DISTRICT
    COURT'S NOTICE OF UPWARD DEPARTURE WAS UNTIMELY;
    THE COURT'S NOTICE AS TO ITS GROUND FOR UPWARD
    DEPARTURE DID NOT CONSTITUTE PLAIN ERROR . . . . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . 34

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . 35

# TABLE OF AUTHORITIES

<u>Case</u>                                                                          <u>Page</u>

*Burns v. United States*, 501 U.S. 129, 111 S.Ct. 2182,
    115 L.Ed.2d 123 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019,
    82 L.Ed. 1461 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Abreo*, 30 F.3d 29
    (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Bachynsky*, 924 F.2d 561
    (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Passim

*United States v. Bachynsky*, 934 F.2d 1349
    (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Baytank*, 934 F.2d 599
    (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Bernal*, 861 F.2d 434
    (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*United States v. Calverley*, 37 F.3d 160
    (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

*United States v. Dayton*, 604 F.2d 931
    (5th Cir. 1979)(en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Griffin*, 84 F.3d 912
    (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Howard*, 991 F.2d 195
    (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Johnson*, 1 F.3d 296
(5th Cir. 1993) (en banc) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 21

*United States v. Masters*, 118 F.3d 1524
(11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Mitchell*, 85 F.3d 800
(1st Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770,
123 L.Ed.2d 508 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

*United States v. Palomo*, 998 F.2d 253
(5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Sanchez*, 650 F.2d 745
(5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>Rules and Statutes</u>

18 U.S.C. Section 1201(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18 U.S.C. Section 2423(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

18 U.S.C. Section 922(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18 U.S.C. Section 922(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-25

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

USSG Section 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

USSG Section 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

USSG Section 5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

Fed. R. App. P. 34(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

98-40280

IN THE

UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
                              Plaintiff-Appellee,

v.

HUGO P. ABSALON,
                              Defendant-Appellant.

On Appeal From The United States District Court
For the Southern District of Texas
Brownsville Division, Criminal No. B-98-506

BRIEF OF PLAINTIFF-APPELLEE

The United States of America, Plaintiff-Appellee, by the United States

Attorney for the Southern District of Texas, files this brief in response to that of

Defendant-Appellant Hugo P. Absalon ("Absalon").

## STATEMENT OF JURISDICTION

Absalon appeals from the judgment of conviction and sentence entered by the

district court (Tagle, J.) on February 25, 1999 (1 R. 4).[1] He timely filed notice of appeal on February 4, 1999 (1 R. 22), thereby vesting this Court with jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUES

1. Whether the record establishes the district court adequately assured Absalon understood the nature of the charges to which he pled guilty in compliance with Fed. R. Crim. P. 11(c)(1).

2. Whether Absalon waived his complaint that the district court's notice of upward departure was untimely; and whether the court's notice as to its ground for departure constituted plain error.

## STATEMENT OF THE CASE

A. Course of Proceedings and Disposition Below.

On September 30, 1999, a federal grand jury returned an eight-count indictment charging Absalon with inducing a minor alien to enter the United States illegally in violation of 8 U.S.C. Section 1324(a)(1)(A)(iv) and (a)(1)(A)(II) (count one); transporting aliens within the United States in violation of 8 U.S.C. Section 1324(a)(1)(A)(ii) and (a)(1)(A)(II) (count two); kidnaping in violation of 18 U.S.C. Section 1201(a)(1) and (d) (count three); transportation of a minor with intent to engage in criminal sexual activity in violation of 18 U.S.C. Section 2423(a) (count

---

[1] The judgment in a criminal case was entered on February 9, 1999 (1 R. 14). The district court entered an amended judgment in a criminal case on February 25 pursuant to Fed. R. Crim. P. 36 (Correction of sentence for clerical mistake) (1 R. 4). "R." refers to the record. The number immediately preceding the record refers to the volume, and the number immediately following refers to the page. "PSR" refers to Absalon's presentence investigation report.

four); and felon in possession of a firearm in violation of 18 U.S.C. Section 922(g)(1) (counts 5-8). On November 5, 1998, Absalon pled guilty to counts 2 and 5 pursuant to a written plea agreement with the government by which the government agreed to dismiss the remaining counts against Absalon at sentencing and recommend a three-level reduction for acceptance of responsibility (1 R. 53, 65). Following two hearings, the district court sentenced Absalon on February 4, 1999, to a term of 60 months in the custody of the United States Bureau of Prisons on count 2 and 87 months on count 5. The court ordered the sentences to run concurrently to each other leaving a total sentence of 87 months to be followed by concurrent terms of three years supervised release. The court imposed a $200 special assessment and $2000 fine. It adopted the findings and recommendations in the PSR, except it departed upward from the applicable guideline range upon determining that hostage-taking and sexual exploitation occurred during the scope of the offense, and refused a three-level reduction for acceptance of responsibility under USSG Section 3E1.1 (1 R. 4-11).

B.   Statement of Facts

1. Offense

On September 1, 1998, agents from the Federal Bureau of Investigation (FBI) received information regarding the disappearance and possible kidnaping of a 16-

-3-

year-old female (Jane Doe) from Nuevo Leon, Mexico. They learned Absalon

visited the Jane Doe family on August 26, 1998, in Parras, Nuevo Leon. Jane

Doe's parents permitted Absalon to park his Winnebago at their residence during his

visit. Thereafter, Absalon volunteered to take Jane Doe, her mother, and siblings

to a local school to be registered. While Jane Doe's mother was inside the school

with Jane Doe's siblings, Absalon and Jane Doe disappeared (PSR at para. 8). Jane

Doe's parents subsequently reported the kidnaping to authorities in the nearby

border town and to inspectors at the bridge. They gave a description of Jane Doe

and Absalon and his vehicle. The inspectors relayed the information to Border

Patrol agents. Thereafter, when Absalon's vehicle was spotted at the Sarita

checkpoint, agents stopped it (3 R. 8-9).

On the date of Jane Doe's disappearance, Absalon contacted his cousin

Graciela Suarez (who he had not seen in 15 years) and convinced her to spend the

day with his granddaughter, "Nicole", in Mexico and to cross her into the United

States while he took care of business. Because Ms. Suarez believed Absalon, she

carried out his wishes (PSR at para. 11).

Thereafter, Border Patrol agents stopped and detained Absalon and Jane Doe

at the Sarita, Texas, checkpoint on October 31, 1998. Absalon told agents his

female passenger was his granddaughter, "Nicole Irene Absalon." Further

-4-

investigation revealed Absalon had provided Jane Doe, a Mexico national with no legal status in the United States, with a birth certificate belonging to his granddaughter, Nicole Absalon. Knowing Jane Doe was an undocumented alien Absalon transported her from Brownsville, Texas, to Sarita, Texas, in his vehicle At the time of his arrest, he carried four firearms, including a Colt .45 handgun He had previously been convicted in the New Jersey Superior Court for criminal sexual contact, a crime punishable by imprisonment for a term exceeding one year (2 R. 41-42; PSR at para. 9).

Agents determined that the passenger was, in fact, Jane Doe, the minor who disappeared with Absalon in Nuevo Leon. They interviewed her at the check point regarding her disappearance. She said she initially believed Absalon was taking her to live with his family in San Antonio, Texas. He had repeatedly told her she would be safer in the United States with his family. This convinced her to leave with him She subsequently became uncomfortable and asked to be returned to her family. She reported Absalon forced her to pose partially nude for photographs. She initially refused but because of intimidation and fear for her safety she complied with Absalon's demands. She complained she was taken from Mexico to the United States against her will (PSR at paras. 9-10, 12).

Agents arrested Absalon and secured his Winnebago Bravo at the Sarita

checkpoint.  They searched his vehicle pursuant to his written consent to search

discovering various photographs of unknown semi-clothed young females and

children, including several photographs of Jane Doe in a bikini provocatively

exposing her breast and genital areas.  They also recovered provocative videotape,

four firearms, lingerie, several bikinis, and a video camera case holding vaginal

lubricants, birth control pills, condoms, Viagra, and other unknown medications.

A physical examination reflected Jane Doe had not had sexual contact within the

prior 24 hours (PSR at para. 13).

Absalon told the probation officer who prepared his PSR that Jane Doe had

been sexually assaulted by her father and he felt it was his duty to help her leave the

situation.  He believed it was lawful to carry the four firearms in Mexico and Texas

because he considered the Winnebago his home (PSR at para. 16).

2. PSR

The probation officer grouped counts two and five under USSG Sections

3D1.2(d) and 3D1.3(b), to arrive at a base offense level of 20 pursuant to USSG

Section 2K2.1(4)(A).  She applied a one-level enhancement under USSG Section

2K2.1(b)(1)(A) because a firearm was involved in the offense, and a three-level

reduction for timely acceptance of responsibility under USSG Section 3E1.1.  With

a total offense level of 18, and criminal history category of I, Absalon's sentencing

guideline range was between 27 and 33 months imprisonment (PSR at paras. 20

22, 27, 30, 33, 54).

### 3. **Objections to PSR**

Absalon filed a written response to the PSR, stating he did not object to the

probation officer's computation of the guidelines, but contested the summary of

offense conduct, facts underlying his prior conviction for criminal sexual contact

and certain personal characteristics. Absalon wrote his own version of relevant facts

to be considered by the court (1 R. 33-50; 3 R. 2-9).

### 4. **Sentencing**

On February 2, 1999, the parties appeared for sentencing. The court stated

it would permit Absalon every opportunity to show why the facts in the PSR as it

related to his relevant conduct should not be accepted by the court and the

government every opportunity to refute his statement (3 R. 16; 4 R. 4-5). Against

defense counsel's recommendation, Absalon's version of relevant facts were read

into the record (3 R. 2-28; 4 R. 5, 14). Absalon stated that none of the photographs

of Jane Doe seized from his Winnebago were improper or provocative and that Jane

Doe was always photographed in the presence of her mother and relatives. The

court requested the government produce the photographs of Jane Doe for the court's

inspection (3 R. 16-20, 28-29).

The sentencing hearing recommenced on February 4, 1999. Absalon was placed under oath after defense counsel advised him about perjury. The court also advised Absalon about his oath and that a subsequent prosecution for perjury could result if he gave false testimony. Absalon stated he understood. Absalon testified he wrote the statements in his response to the PSR and they were true and correct (4 R. 6-9). He testified there were no photographs of Jane Doe in his possession that could be construed as provocative, and that he had taken all of her pictures in the presence of her family members or friends (4 R. 12-13). At defense counsel's request, the court explained that the definition of "prurient interest" is something that would be provocative in a sexual nature or provoke a sexual response -- whether visual, written, or performed (4 R. 15).

Thereafter, the government called Jane Doe's mother to testify about the circumstances surrounding Jane Doe's kidnaping as reflected in the PSR. Absalon kidnaped Jane Doe while she was inside the school registering her son. Absalon had volunteered to take her to the school. When she came back outside, Absalon and Jane Doe were gone in his vehicle. She notified her husband of the kidnaping and they sought help to find her. Jane Doe was missing for over two months (4 R. 17-30, 34). Jane Doe's mother testified that she was not present when particular photographs of Absalon's were taken of Jane Doe. She described them as

-8-

pornographic (4 R. 31-32, 36).

Jane Doe testified she met Absalon when she was 13 years old.  He visited her

house every couple of months.  He stayed on their property in his mobile home.

She identified several government exhibits as photographs of her taken by Absalon.

He loaned her clothing, such as bathing suits to wear for the pictures.  Certain

photographs taken of her  inside Absalon's mobile home were taken with no one else

present.  The photographs were taken before he kidnaped her when she was 1

years old.  He asked her to pose in certain ways.  He said there was nothing wrong

with posing and that he wanted something to remember her by.  On one occasion

he hugged her and kissed her on the mouth (4 R. 43-51).

He subsequently convinced her to leave with him, stating it would be better

for her to go with him rather than stay with her father.  She told him her father had

sexually abused her.  He offered her a better life in material things.  When Absalon,

her mother, brother and younger sisters exited the Winnebago to register at the

school, she was left alone.  Absalon returned with her crippled sister and left her on

the ground.  He entered the vehicle and said "let's go."  She protested leaving her

sister unattended and everyone without transportation.  She asked Absalon to let her

out but he refused.  He took her to Matamoros (4 R. 49-53).  Absalon told her he

was going to take her across to the United States as his granddaughter, Nicol

Absalon.  He invented this story for her to tell his relatives and immigration authorities about where she lived, etc., and asked her to memorize it.  He introduced her as his granddaughter to his relatives in Matamoros (4 R. 53-55, 62).

After the kidnaping, Absalon asked Jane Doe to pose nude for him when they were at his relative's house in Matamoros.  He told her there was nothing wrong with posing nude.  It was just her body.  He felt like a father to her.  He had taken photographs of her breasts.  He also asked her to open her blouse all the way, to remove her underclothes, lift her skirt up to her waist and open her legs.  She told him she did not want to do that.  He again insisted she should get used to the idea of how to behave around him.  While she complied, it made her feel uncomfortable.  Absalon told her she needed to get used to the idea of living with him because her parents would not permit her to return home  (4 R. 61-65, 74-75).

FBI Case Agent Freddy Vela testified agents recovered several hundred photographs from Absalon's Winnebago.  The majority of photographs depicted females of various ages, usually wearing bikinis or underwear.  Some of the photos depicted younger children in the nude (4 R. 77-81).

In the middle of Jane Doe's testimony, the court recessed for lunch from noon to 2:30 p.m.  When the parties returned, the court discussed legal authority provided by defense counsel on the requirement of the court to provide reasonable notice it

-10-

was considering an upward departure. The court formally notified defense counsel that it was considering an upward departure from the guidelines and that it would provide Absalon the opportunity to present evidence or objections against a departure (4 R. 55-58). Following Agent Vela's testimony, the court ordered a recess to afford defense counsel the opportunity to present evidence to support no upward departure (4 R. 83).

When the parties returned, the probation officer informed the court that Absalon's sexual conduct with the victim had not been considered in any of the sentencing adjustments (4 R. 84). Defense counsel recalled three witnesses: Jane Doe's mother, Jane Doe, and Agent Vela, to inquire whether they had the photos taken by Absalon of Jane Doe lifting her skirt. They all replied in the negative (4 R. 85-88).

After the presentation of testimony, the government requested an upward departure up to the maximum statutory penalty of 10 years imprisonment on three grounds: Absalon (1) requesting Jane Doe to pose nude for photographs; (2) exposing his cousin to criminal liability by causing her to unwittingly bring Jane Doe into the United States with the use of a fictitious birth certificate; and (3) leaving Jane Doe's mother and 3-year-old and 6-year-old sisters (one who was crippled) stranded without transportation (4 R. 93).

-11-

Defense counsel objected to an upward departure, arguing the PSR stated there were no grounds for a departure and that the defense did not receive notice the court would consider an upward departure (4 R. 93). With respect to notice, the court pointed out it had informed counsel it would provide counsel the reasonable time necessary to prepare for sentencing on that issue and counsel said he was ready to proceed that afternoon (4 R. 93-94). Counsel confirmed that was correct (4 R. 94).

The probation officer informed the court that sexual exploitation was a proper basis for an upward departure under USSG Section 5K2.4. Following arguments of both sides, the court found Absalon took advantage of a young girl who had already been sexually abused. Although he "paid lip service" to acceptance of responsibility, he continued to deny the real reason Jane Doe was brought over to the United States as evidenced by the photographs he took of her (4 R. 96-102). The court stated:

> That you have the audacity to believe that you could convince any reasonable person that yours was a truly altruistic reason rather than a continuation of the exploitation that she had already experienced at the hand of her father. It . . . just boggles my mind that somebody with as much education could do something like that to a young girl. . . The fact that you characterize the photographs that were found by the Government in your trailer as anything but provocative is also offensive, because it is clear that those photographs are intended to appeal to a person's prurient interest who has a desire in the exploitation of minors of their sexual gratification.

CVAPDF - www.fastio.com

(4 R. 101-02). The court adopted the factual findings in the PSR, and further determined Absalon committed the relevant conduct of kidnaping in count three. The court concluded Absalon had not accepted responsibility as to the relevant conduct. The court departed upward from the applicable guideline range based on Absalon's hostage-taking and sexual exploitation and sentenced Absalon to 87 months imprisonment on count 5 and 60 months on count two (4 R. 102, 107, 113).

## SUMMARY OF ARGUMENT

The district court adequately assured Absalon understood the nature of the charges to which he pled guilty in compliance with Fed. R. Crim. P. 11(c)(1). Absalon was educated and represented by counsel. The prosecutor read verbatim the charge in each count. The court summarized the charges in all the counts in the indictment. Absalon testified he read the indictment, discussed the charges with his attorney and that he understood them. *See* pp. 14-26, *infra*.

Absalon waived his complaint that the district court gave untimely notice of its intent to depart upward from the sentencing guidelines. When given the opportunity to continue the sentencing proceeding until another day, he requested to proceed without a continuance. Moreover, Absalon failed to object to the adequacy of the court's notice on the ground for which it would depart. Under the plain error standard of review, the court sufficiently notified it was contemplating

a departure based on Absalon's relevant conduct (i.e. his sexual exploitation and kidnaping of the victim).  Absalon placed such conduct in issue by filing a 17-page response extensively denying his relevant conduct and asking it further be read in the record.  A lengthy hearing resulted in which the prosecution presented testimony centering on his sexual exploitation and kidnaping.  *See* pp., 26-30, *infra*.

## ARGUMENT

I.   THE RECORD ESTABLISHES THE DISTRICT COURT ADEQUATELY ASSURED ABSALON UNDERSTOOD THE NATURE OF THE CHARGES TO WHICH HE PLED GUILTY IN COMPLIANCE WITH FED. R. CRIM. P. 11(c)(1).[2]

Absalon contends the district court failed to comply with the dictates of Fed. R. Crim. P. 11 because it failed to address core concerns before obtaining his first plea of guilty.  Alternatively, he argues should the Court determine his subsequent entry of a guilty plea was not tainted by the initial defective plea procedure, the court still failed to adequately explain the charges against him.  He argues that while the court generally informed Absalon of the charges against him, Absalon testified he understood the charges to which he pled guilty, and the prosecutor read the charges in the indictment and stated a factual basis, the court did not explain the elements the government had to prove.  He requests his conviction be vacated and

_____

[2]The government responds, herein, to the first issue in Absalon's brief.

-14-

the case remanded for him to plead anew.

### 1. Rearraignment

Absalon appeared for rearraignment with his counsel, Mr. Joe Esquivel, along with defendants in other cases.  Absalon was placed under oath.  He advised the court he was 69 years old and was a graduate of the military academy in Mexico and also went to college.  He had remained a legal resident in the United States for 43 years.  He confirmed he had not been treated for any mental illness or addiction to drugs.  Nor had he taken any drugs or alcohol within the last 24 hours  (2 R. 3, 8, 11, 25).  Absalon testified he had received a copy of the indictment, had fully discussed those charges with his attorney, and was fully satisfied with his attorney's explanations and advice (2 R. 12-13).

The court reviewed each of the 8 charges in the indictment against Absalon and asked if he understood these allegations.  Absalon confirmed he understood the allegations.  The court then confirmed that Absalon agreed to plead to counts 2 and 5 pursuant to the written plea agreement, further identifying the counts as "transporting of illegal alien" and "possession of a firearm" (2 R. 13-14).  The prosecutor next read verbatim the charges in counts 2 and 5 and the statutory violations (2 R. 14-15).  The prosecutor asked if Absalon understood the charges as read to him and Absalon answered that he did.  The prosecutor asked how Absalon

pled to these charges and Absalon replied "guilty" (2 R. 15).

Absalon stated he understood he could be found guilty in two ways: either by pleading guilty and the court accepting his plea or following a trial (2 R. 20). He further stated he understood he could receive up to five years imprisonment, up to a $250,000 fine, and a term of three years supervised release on count 2, and up to 10 years imprisonment, a $250,000 fine, and three years supervised release on count 5 (2 R. 21). He confirmed he understood he would be obligated to pay a $100 special assessment for each count of conviction, and that parole was not available (2 R. 24).

The court advised Absalon that the consequences of a felony conviction includes the loss of certain civil rights and the right to remain legally in the United States (2 R. 25-26). Absalon confirmed he had signed the written plea agreement after reading it and his attorney explaining the terms. He understood the contents of the plea agreement and had no questions concerning its terms (2 R. 27). The court reviewed the terms of the plea agreement, including the government's agreement to dismiss the remaining counts and recommend a three-level reduction for acceptance of responsibility in exchange for Absalon's guilty plea on counts 2 and 5 (2 R. 27-28, 31). Absalon confirmed he understood that any recommendations by the government were not binding on the court and the

determination of the appropriate sentence was within the exclusive discretion of the court following the results of the PSR. Absalon stated he understood the court would consider various factors, including his relevant conduct, background, and criminal history, in determining his sentence. The court explained the relevant conduct would include everything in the PSR concerning the charges whether he pled guilty to all the charges or not (2 R. 31-32). Absalon testified he understood the guideline range could not be calculated until the completion of the PSR, and that the law permits the court, in certain cases, to depart above or below the applicable guideline range as long as the sentence remained within the statutory range (2 R. 36).

Absalon assured his guilty plea was not induced by any promises outside his plea agreement (2 R. 37). He stated he understood that by pleading guilty he waived several rights, including the right to a speedy jury trial, the presumption of innocence, proof beyond a reasonable doubt, cross examination of government witnesses, compulsory process, presentment of a defense, and the right to remain silent (2 R. 38-41).

The prosecutor summarized the evidence supporting Absalon's guilty plea. Border patrol agents stopped Absalon at the Sarita checkpoint driving a white Dodge Winnebago. Jane Doe was a passenger. Further investigation revealed Absalon had

CNIPDF - www.fastio.com

provided Jane Doe, a Mexico national with no legal status in the United States, with a birth certificate belonging to his grand daughter, Nicole Absalon. Knowing Jane Doe was an undocumented alien, Absalon transported her from Brownsville, Texas to Sarita, Texas, in his vehicle. At the time of his arrest, he carried four firearms, including a Colt .45 handgun. He had previously been convicted in the New Jersey Superior Court for a crime punishable by imprisonment for a term exceeding one year (2 R. 41-42). Absalon testified he agreed with the above factual rendition (2 R. 42).

The court next asked Absalon how he wished to plead to counts 2 and 5 and Absalon replied guilty as to both counts (2 R. 42-43). He assured his guilty plea was entered knowingly and voluntarily without any force or pressure (2 R. 43). Defense counsel stated he believed the court had complied with all the requirements of Fed. R. Crim. P. 11 (2 R. 43). The court determined Absalon was competent, understood the charges to which he pled guilty and the consequences of his guilty plea, and that his guilty plea was entered knowingly and voluntarily and supported by a sufficient factual basis. The court found Absalon guilty of counts 2 and 5 (2 R. 48). The court advised Absalon he had the right to provide information to the probation officer who prepared his presentence report and for his attorney to be present during any interview with the probation officer (2 R. 50).

## 2. Argument

Under Fed. R. Crim. P. 11(c), before accepting a plea of guilty, the district court must address the defendant personally in open court and inform the defendant of the nature of the charge to which he pleads guilty, the mandatory minimum and maximum penalty, including any supervised release term, the application of the sentencing guidelines and the ability to depart from the guidelines, the right to plead not guilty, the rights accompanying a jury trial, and the rights waived by pleading guilty. The court shall not accept a guilty plea unless it satisfies itself that the plea is entered voluntarily, Fed. R. Crim. P. 11(d), and there is a sufficient factual basis for the guilty plea. Fed. R. Crim. P. 11(f). "Any variance from the procedures required by [Rule 11] which does not affect substantial rights shall be disregarded." Fed. R. Crim. P. 11(h).

In this case, Absalon incorrectly argues the district court accepted Absalon's "first" plea of guilty before giving all its admonishments under Fed. R. Crim. P. 11(c). As shown above, before accepting Absalon's guilty plea, the court advised Absalon of the nature of the charges, the consequences of his guilty plea, potential penalties, application of the sentencing guidelines, the right to a jury trial and the rights waived by pleading guilty. The court further assured Absalon's guilty plea was entered knowingly and voluntarily and was supported by an independent factual

–19–

basis before accepting his guilty plea.

Absalon refers to the middle of the rearraignment where the prosecutor read the charges in counts 2 and 5, asked Absalon whether he understood the charges as read in open court, and then asked how he would plead to the charges. Absalon replied guilty (2 R. 15). However, the proceeding continued with the remaining Rule 11 admonishments. The court did not take Absalon's guilty plea until near the end of the proceeding when it stated: "[k[nowing and understanding the charges in count 2 and 5 of this indictment, and having conferred with your attorney and receiving his advice and counsel, and knowing the maximum penalty that can be imposed and other consequences of a guilty plea, and knowing of your right to a trial and the rights associated with a trial, and knowing how the sentence will be determined, how do you wish to plead to count 2 of the indictment, guilty or not guilty?" Absalon replied "guilty" (2 R. 42-43). The court asked the same question as to count 5, and Absalon again replied "guilty" (2 R. 43). The court entered its findings that Absalon's guilty plea was informed and voluntary and that Absalon was, in fact, guilty of counts 2 and 5 at the end of the proceeding (2 R. 48). Therefore, Absalon's allegation the court obtained Absalon's "first" guilty plea before addressing core concerns under Rule 11(c) is misplaced.

Absalon's alternative argument that Absalon's "second" guilty plea was

entered without an adequate explanation of the charges is also without merit. When addressing a complaint the district court failed to comply with Rule 11, this Court applies a two-question harmless error analysis: (1) did the court vary from the procedures required by Rule 11; (2) if so, did the variance affect the defendant's substantial rights? *United States v. Reyna*, 130- F.3d 104, 107 (5th Cir. 1977).

"Neither Rule 11 nor the case law specifies the minimum that the district court must do to 'inform the defendant . . . of the nature of the charge.'" *Id.* at 110 (citation omitted). All that is required is that the court's colloquy with the defendant "would lead a reasonable person to believe that the defendant understood the nature of the charge." *Id.*

In making this determination, this Court conducts its review solely on the basis of the record on appeal which is principally the transcript of the plea colloquy hearing. *Id.* (citing *United States v. Johnson*, 1 F.3d 296, 298 (5th Cir. 1993) (en banc)). It also reviews other portions of the record, such as any written plea agreement, the sentencing transcript, and the sentence actually imposed. *Reyna*, 130 F.3d at 110. When reviewing post-plea colloquy sources, this Court considers only such information contained therein that is relevant to the voluntary and uncoerced nature of the defendant's guilty plea, and to his knowledge and understanding of the nature of the charges and consequences of his plea. *Johnson*,

1 F.3d at 298.   In sum, "the test on appeal is whether, looking at the total circumstances surrounding the plea, the defendant was informed of his or her rights." *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (citation omitted). Application of this test necessarily entails *de novo* review. *Reyna*, 130 F.3d at 107, 110; *United States v. Howard*, 991 F.2d 195, 199 (5th Cir. 1993).

Here, Absalon does not contend the district court failed to address the nature of the charges, he simply argues the court's address was inadequate under Fed. R. Crim. P. 11(c)(1).   There is no mechanical rule the court must follow to fulfill its duty to confirm the defendant understands the nature of the charges to which he pleads guilty.   Generally, for simple charges, "a reading of the indictment, followed by an opportunity given the defendant to ask questions about it, will usually suffice." *United States v. Bachynsky*, 924 F.2d 561, 565 (5th Cir. 1991), reversed on other grounds rehearing en banc, *United States v. Bachynsky*, 934 F.2d 1349 (5th Cir. 1991. *Accord United States v. Bernal*, 861 F.2d 434, 436 (5th Cir. 1988); *United States v. Dayton*, 604 F.2d 931, 937-39 (5th Cir. 1979)(en banc).   "Charges of a more complex nature, incorporating esoteric terms or concepts unfamiliar to the lay mind, may require more explication.   In the case of charges of extreme complexity, an explanation of the elements of the offense . . . may be required." *Bachynsky*, 924 F.2d at 565 (citing *Dayton*, 604 F.2d at 937-38).   The measure of difficulty of

comprehending the charges and the defendant's sophistication and intelligence is left to the "good judgment" of the district court. *Bachynsky*, 924 F.2d at 565..

In the instant case, Absalon, with the representation of counsel, pled guilty to transporting an undocumented alien and felon in possession of a firearm. Both of these charges are relatively simple. Under count 2, Absalon was charged with transporting an alien within the United States, knowing or in reckless disregard of the fact, the alien had entered the United States illegally in violation of 8 U.S.C. Section 1324(a)(1)(A)(ii). Under count 5, Absalon was charged with possessing a firearm in or affecting commerce after having been convicted of a crime punishable by imprisonment for more than one year in violation of 18 U.S.C. Section 922(g).

At the time, Absalon had lived in the United States for 43 years (2 R. 8). According to the PSR, he completed his formal academic education and graduated from the Mexican Military Academy in Mexico City, Mexico, with an Engineering Degree. He subsequently attended Loyola University in Chicago (PSR at para. 43). Absalon confirmed these facts at the rearraignment (2 R. 8). He had worked in various occupations in the United States. He was an assistant national retail sales manager for Sears from 1956 to 1969; a self-employed financier and investor from 1969 to 1979; the director of a home for severely retarded children

from 1979 to 1981; and a self-employed business consultant licensed in securities, real estate, and insurance, from 1984 through 1991 (PSR at paras. 47-52). *See Bachynsky*, 924 F.2d at 565 (intelligence, legal representation, and education are relevant factors in determining whether defendant understood the charges to which he pled guilty).

Absalon testified at the rearraignment that he had received a copy of the indictment, had fully discussed the charges with his attorney, and was fully satisfied with his attorney's advise (2 R. 12-13). The court reviewed all the charges in the indictment with Absalon and asked if he understood the allegations. Absalon testified he understood the allegations. The court confirmed Absalon wished to plead guilty to the allegations in counts 2 (transporting an undocumented alien) and 5 (felon in possession of a firearm) as set forth in his written plea agreement (2 R. 13-14). The prosecutor read verbatim the allegations in counts 2 and 5 of the indictment and asked if Absalon understood the charges. Absalon answered that he understood the charges (2 R. 15). The prosecutor later summarized the evidence against Absalon as to each charge. Absalon testified he agreed with the prosecutor's factual basis (2 R. 41-42). At the end of the proceeding, the court asked defense counsel whether there were any other questions he wished the court to ask Absalon. Counsel replied he believed the court had fully complied with the requirements of

-24-

Rule 11 and there were no more questions he wished the court to ask Absalon (2 R. 43).[3] *See United States v. Sanchez*, 650 F.2d 745, 748 (5th Cir. 1981) (prosecutor's reading of indictment and the opportunity later given by the district court to ask questions constitutes sufficient compliance with Rule 11(c)(1)).

In light of the evidence establishing the charges were simple, Absalon was educated and represented by competent counsel, and Absalon stated he understood the charges and discussed them with his attorney, the record contains ample evidence to demonstrate Absalon understood the nature of the charges. *Bachynsky*, 924 F.2d at 565 ("[t]he purpose of Rule 11 is not to have every detail of the charge read aloud to the defendant; rather, its purpose is to ensure that the defendant adequately understands the charge to which he is pleading guilty, and to have that understanding documented on the record"). Therefore, the district court's colloquy did not prejudice Absalon's substantial rights. *Id.*

## II.   ABSALON WAIVED HIS COMPLAINT THAT THE DISTRICT COURT'S NOTICE OF UPWARD DEPARTURE

---

[3] Since defense counsel represented at the rearraignment he was satisfied the district court complied with all the requirements of Rule 11, Absalon's argument on appeal that the court did not adequately advise him on the nature of the charges under Rule 11 should be deemed waived. *United States v. Musquiz*, 45 F.3d 927, 931-32 (5th Cir. 1995). *See United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 1777 (1993)("Deviation from a legal rule is error unless the rule has been waived"). If the issue presented is viewed as unwaivable, review should then be limited to plain error. First, there must be error. Second, the error must be plain. Third, the error must be prejudicial; and fourth, if the preceding requirements are met, the court must exercise its discretion to correct the error -- correction is not mandatory. *United States v. Calverley*, 37 F.3d 160, 162-64 (5th Cir. 1994)(en banc).

## WAS UNTIMELY; THE COURT'S NOTICE AS TO ITS GROUND FOR UPWARD DEPARTURE DID NOT CONSTITUTE PLAIN ERROR[4]

Absalon contends the district court failed to give him reasonable notice it contemplated departing upward from the sentencing guidelines. He argues the court's notice was untimely and failed to identify the ground on which it might depart.

### 1. Relevant facts

The court conducted a sentencing hearing on February 2 and continued the hearing until February 4, 1999, to develop the record concerning Absalon's version of relevant facts. As discussed in the statement of facts, Absalon filed a 17-page response to the PSR contesting the summary of offense conduct in the PSR, facts underlying his prior conviction for criminal sexual contact, and certain personal characteristics. He requested the court consider his response at sentencing and had counsel read his versions of relevant facts into the record (1 R. 33-50; 3 R. 2-28). The court continued the hearing to allow the government to present evidence to rebut Absalon's facts and to permit Absalon to present any further evidence. At the hearing on February 4, the government called the victim, the victim's mother, and the case agent. Their testimony controverted crucial aspects of Absalon's testimony

---

[4]The government responds, herein, to the second issue in Absalon's brief.

-26-

concerning relevant conduct relating to the kidnaping charge (4 R.17-36, 43-65, 77-81).

The court recessed for lunch from noon to 2:30 p.m., in the middle of the victim's testimony.  When the parties returned, counsel provided the court with legal authority on the requirements of providing reasonable notice of an upward departure and they discussed the requirements.  The court formally notified defense counsel at that time it was considering an upward departure and that it would provide Absalon the opportunity to present evidence or objections against a departure.  The court explained it was concerned that Absalon was disputing relevant conduct and that would be a basis for departure (4 R. 55-59).

After the government rested, the court ordered a recess to give defense counsel the opportunity to recess the hearing to prepare his defense against an upward departure (4 R. 83).  Defense counsel said he would not need much time (4 R. 83).  When the parties returned, the probation officer advised the court Absalon's sexual conduct with the victim had not been considered in calculating his guideline level (4 R. 84).   The defense recalled the government witnesses for limited questioning and rested (4 R. 85-88).

The government subsequently requested an upward departure based on Absalon requesting the minor victim to pose nude for photographs, causing hardship

on the victim's family, and causing his relative to unknowingly violate the law (4 R. 91-93).   Defense counsel objected to an upward departure because the PSR stated there was no ground to depart and the defense did not receive notice the court would depart upward.   On that point, the court clarified: "Mr. Esquivel that's why . . . I gave you the opportunity to . . . [W]hen you state that you . . . were not given an opportunity as far as notice of the possibility of an upward departure, that's why I recessed and I asked you before the recess that I would give you all reasonable time necessary to prepare for the court's own consideration of an upward departure and **you indicated to my staff that you were ready to proceed immediately this afternoon**" (4 R. 93-94)(emphasis added).   Defense counsel agreed the court's account was correct: **"That's correct, Judge.  I guess I phrased it wrong**, Your Honor.  The grounds for departure are not indicated in the PSI, Judge.  That's the basis of the notice that the grounds were not stated in the PSI.  And we're asking, Judge, not to upward depart and to go by – as the PSI reflects on the sentencing guidelines" (4 R. 94) (emphasis added).

Thereafter, the court determined Absalon lied about his relevant conduct and that an upward departure was warranted pursuant to USSG Section 5K2.4 because he sexually exploited and unlawfully abducted the victim during the commission of the offenses for which he was convicted (1 R. 10; 4 R. 97-102, 106-07).

-28-

## 2. Argument

Federal Rule of Criminal Procedure 32(c)(1) provides, in pertinent part: "At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence."   "Before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the Government, Rule 32 requires that the district court give the parties reasonable notice that it is contemplating such a ruling." *Burns v. United States*, 501 U.S. 129, 138, 111 S.Ct. 2182, 2187, 115 L.Ed.2d 123 (1991).  The notice must identify the ground on which the court is contemplating a departure. *Id.* at 139, 111 S.Ct. at 2183.  The *Burns* Court did not indicate the sort of notice that is "reasonable" but left that decision for the Courts of Appeals to decide. *Burns*, 501 U.S. at 139, 111 S.Ct. at 2187 n. 6.

In this case, Absalon's complaint that the district court's notice was untimely is waived since the record demonstrates the court afforded Absalon the opportunity to recess the hearing for the amount of time defense counsel deemed necessary to respond to the upward departure issue. Defense counsel informed the court he was ready to proceed immediately that afternoon rather than continuing until another day (4 R. 94). A party may not invite error and then complain about it on appeal. *See*

-29-

*United States v. Baytank*, 934 F.2d 599, (5th Cir. 1991)(invited error doctrine applies to jury instructions and court's evidentiary rulings).

Based on the above, Absalon affirmatively abandoned his objection that the court gave untimely notice of an upward departure. *See United States v. Masters*, 118 F.3d 1524, 1525-26 (11th Cir. 1997) (where defendant indicated he did not want a continuance to respond to the court's untimely notice of upward departure when afforded the opportunity to do so, he knowingly waived the objection of untimely notice on appeal. The plain error doctrine was inapplicable where the defendant fully comprehended the error the court was going to commit and nonetheless agreed to be bound by it).

"[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (citation omitted), citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Waiver results from an affirmative action by the defendant, whereas, the failure to make a timely assertion of a right results in forfeiture of a claim under the plain error standard of review in Fed. R. Crim. P. 52(b). *Olano*, 113 S.Ct. at 1777. The difference between waiver and forfeiture is consequential since one who forfeits a claim does not lose the benefit of appellate review, but a person's waiver extinguishes any error, and therefore,

-30-

precludes any appellate review. *Id. Accord United States v. Calverley*, 37 F.3d 160, 162 (5th Cir. 1994). *See generally United States v. Mitchell*, 85 F.3d 800, 808 (1st Cir. 1996) (defendant waived any objection to court's failure to play entire tape where defense counsel affirmatively stated he assented to the edited tape after a direct inquiry by the court); *United States v. Griffin*, 84 F.3d 912, 924 (7th Cir. 1996) (defendant waived challenge to jury instruction by accepting district court's indicated choice to use that instruction); *United States v. Palomo*, 998 F.2d 253, 257 (5th Cir. 1993) (where defendant's former attorney implicitly agreed it would be appropriate for government to seek reduction under Fed. R. Crim. P. 35 for giving substantial assistance, defendant could not contend on appeal that the government violated the plea agreement for failing to file a Section 5K1.1 motion).

In any event, the court notified Absalon at the sentencing hearing it intended to consider an upward departure and recessed to provide him time to respond to its notice. The fact defense counsel stated he would not need much time to respond to the issue of an upward departure prior to the recess, and subsequently requested to proceed that day without a continuance, demonstrates the court's notice was reasonable and that Absalon was prepared to address the issue (4 R. 83, 93-94). Absalon has failed to show he was harmed or prejudiced by the court's notice.

In relation to Absalon's argument the court failed to identify the specific

ground on which it contemplated departing upward, he failed to raise the same objection in the district court. He objected to an upward departure because the grounds for departure were not listed in the PSR (4 R. 93-94). He did not attack the adequacy of the court's notice at sentencing for failing to identify its ground for departing. His complaint should, therefore, be reviewed only for plain error. *Calverley*, 37 F.3d at 162-64.

The district court notified Absalon prior to recessing at sentencing that it was contemplating an upward departure based on Absalon's relevant conduct with the victim and his denial of such conduct (4 R. 55-59). The probation officer advised that Absalon's sexual exploitation of the victim and unlawful abduction were proper grounds for an upward departure under USSG Section 5K2.4. At no time did Absalon object to lack of notice that this would be a ground for departure. He simply argued Absalon accepted responsibility for the conduct underlying the two counts to which he pled guilty and that the kidnaping occurred in Mexico (4 R. 84, 97-100). As Absalon extensively denied sexually exploiting or kidnaping the victim in his response to the PSR and at sentencing, the government's testimony at sentencing centered on these matters. Thus, it was no secret the court would contemplate departing based on his relevant conduct (i.e. sexual exploitation and kidnaping ). No plain error has been shown.

-32-

# CONCLUSION

Based upon the foregoing, the judgment of conviction and sentence should be

affirmed.

Respectfully submitted,
**MERVYN M. MOSBACKER**
United States Attorney

By: _____
**KATHERINE L. HADEN**
Assistant United States Attorney

CVisPDF - www.fesisa.com

## CERTIFICATE OF SERVICE

I, Katherine L. Haden, Assistant United States Attorney, hereby certify that a true and correct copy of the foregoing brief of Plaintiff-Appellee, including an electronic copy of the same as required by 5th Cir. R. 31.1, has been served by placing the same in the United States Mail, postage prepaid, on this day, September 8, 1999, addressed to:

Mr. Richard B. Gould
4800 N. 10th Street
Suite F
McAllen, TX 78504

KATHERINE L. HADEN
Assistant United States Attorney

# CERTIFICATE OF COMPLIANCE

Pursuant to 5th Cir. R. 32.2.7(c), the undersigned certifies this brief complies with the type-volume limitations of 5th Cir. 32.2.7(b).

1.  EXCLUSIVE OF THE EXEMPTED PORTIONS IN 5th Cir. R. 32.2.7(b)(3), THE BRIEF CONTAINS 7,812 words.

2.  THE BRIEF HAS BEEN PREPARED in proportionally spaced typeface using Corel WordPerfect 8.0 in CG Times 14 point font for text and 12 point font for footnotes.

3.  THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN 5th Cir. R. 32.2.7, MAY RESULT IN THE COURT'S STRIKING THE BRIEF AND IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

KATHERINE L. HADEN
Assistant United States Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

UNITED STATES OF AMERICA,     §
    Respondent,               §
                              §
v.                            §     CR. No. B-98-506
                              §
HUGO P. ABSALON,              §
    Petitioner.               §
    (C.A. No. B-00-186)

## ORDER

It is hereby ORDERED that petitioner's motion for relief pursuant to 28 U.S.C.

§ 2255 is DENIED.

Signed at Brownsville, Texas, on this _____ day of _____,

2000.

_____
UNITED STATES DISTRICT JUDGE