/

United States District Court
Southern District of Texas
ENTERED

FEB 1 9 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

HUGO P. ABSALON,               §
Petitioner,                    §
                               §
v.                             §        CIVIL ACTION NO. B-00-186
                               §
UNITED STATES OF AMERICA,      §
Respondent.                    §

## ORDER

### BACKGROUND

On September 30, 1998, Petitioner Hugo Absalon was indicted in federal court on an

eight-count indictment.  Absalon was charged with inducing a minor alien to enter the United

States unlawfully in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(A)(v)(II) (count one),

transporting an alien within the United States in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and

(a)(1)(A)(v)(II) (count two), kidnaping in violation of 18 U.S.C. § 1201(a)(1) and (d) (count

three), transporting a minor with intent to engage in criminal sexual activity in violation of 18

U.S.C. § 2423(a) (count four), and felon in possession of a firearm in violation of 18 U.S.C. §

922(g)(1) (counts five through eight).[1]

On November 5, 1998, Absalon appeared before United States District Judge Hilda Tagle

and entered pleas of guilty to count two and five (transporting an alien and felon in possession of

a firearm), pursuant to a written plea agreement with the government by which the government

agreed to dismiss the remaining counts against Absalon at sentencing and recommend a three-

---

[1] See PSR, ¶ 1-6.

1

level reduction in the sentencing guidelines for acceptance of responsibility.[2] Following two

sentencing hearings, the district court sentenced Absalon on February 4, 1999, to a term of sixty

months in the custody of the United States Bureau of Prisons on count two and eighty-seven

months on count five. The court ordered the sentences to run concurrently to each other leaving

a total sentence of eighty-seven months to be followed by concurrent terms of three years

supervised release.[3] The district court adopted the findings and recommendations in the Pre-

Sentence Report, except it departed upward from the recommended guideline range based on

Absalon's kidnaping and sexual exploitation of the victim. The district court also refused the

three-level reduction for acceptance of responsibility under USSG Section 3E1.1 because it

determined that Absalon was untruthful concerning relevant conduct. The remaining counts

against the Petitioner were dismissed pursuant to the government's motion.

On February 4, 1999, Absalon filed notice of appeal from his judgment of conviction and

sentence. He argued on direct appeal that the district court did not assure he understood the

nature of the charges pursuant to Fed. R. Crim. P. 11(c)(1); and the district court failed to provide

notice of its intent to depart upward from the sentencing guidelines. Following the briefing and

oral arguments, on February 24, 2000, the Court of Appeals for the Fifth Circuit affirmed

Absalon's conviction and sentence.[4] The final mandate of affirmance was issued on March 21,

2000. Absalon filed a petition for writ of certiorari in the United States Supreme Court, and that

petition was denied on November 7, 2000.

---

[2] See PSR, ¶ 7.

[3] The District Court also imposed a $200 special assessment and $2000 fine.

[4] See United States v. Absalon, No. 99-40280 (5th Cir. 2000).

2

While his direct appeal was still pending, on February 3, 2000, Absalon filed a thirty-three page ex parte motion. Petitioner's motion was filed pursuant to Rules 60(b)(3) & (6) and 12(b)(1) & (7) of the Federal Rules of Civil Procedure. Petitioner's motion stated that he was wrongfully convicted and asked the court to release him from federal custody. As best as can be ascertained, Petitioner appeared to raise the following issues in his ex parte petition:

1) The federal government lacked authority to criminalize activity occurring in the interior boundaries of "the Sovereign State of Texas";

2) His due process and equal protection rights were violated because the district court failed to make known the "character of the courts or which Article of the Federal Constitution the United States District Court is authorized...to operate";

3) The indictment failed to allege the location of the offense was within the "legislative jurisdiction" of the district court;

4) The United States Attorney General was unauthorized to bring suits in the name of the United States of America rather than United States as the "injured party or plaintiff";

5) Title 8 U.S.C. § 1329, stating that United States district courts shall have jurisdiction over all causes arising under the provisions of this subchapter is unconstitutional; and

6) He was wrongly convicted for felon in possession of a firearm since possession is no longer an element of 18 U.S.C. § 922(g).

Petitioner Absalon did not raise any of these issues on his direct appeal.

On September 11, 2000, United Magistrate Judge Felix Recio entered an order notifying Absalon that he should withdraw his ex parte motion and resubmit a proper petition under 28 U.S.C. § 2255, subject to the procedural rules and requirements pertaining to such writs. The Magistrate Court included in the order that the Court would construe Absalon's motion as a § 2255 request for habeas corpus relief if he did not withdraw his improperly formatted ex parte

3

motion.  Thereafter, Petitioner Absalon was also warned by the Magistrate Court that if he

refused to resubmit the said motion, he risked dismissal of any future § 2255 petitions, as they

may be construed as "successive" or "abusive" writs.

Petitioner responded to the aforementioned order by stating that his ex parte motion stood

"as written."  Absalon stated that he would not withdraw his motion nor would he submit a

petition under 28 U.S.C. § 2255.  He also informed the Magistrate court that his motion should

not be construed as a request for habeas corpus relief.  In addition, Absalon informed the court

that he could proceed by motion at any time, without the encumbrance of a time limitation.  With

respect to his failure to raise the claims on direct appeal, Absalon argued Rule 60(b) permitted

him to raise the claims in the district court while the appeal was pending, and the district court's

failure to expeditiously rule on his motion prevented him from consolidating said claims with the

pending claims on direct appeal.  Petitioner refused to follow the Magistrate court's order to

clearly and concisely set forth the facts and issues.

On December 1, 2000, the Magistrate court entered its report and recommendation with

regard to Absalon's ex parte motion.  The court advised that Absalon's Rule 60(b) motion should

properly be construed as a § 2255 petition because Rule 60(b) is a civil rule that is unavailable to

criminal defendants seeking to overturn their convictions.  The court pointed out that even in

civil cases, the district court could not grant relief under Rule 60(b) during the pendency of a

direct appeal without permission from the Court of Appeals since the filing of a notice of appeal

divests the district court of its jurisdiction to hear a Rule 60(b) motion.  The Magistrate court

further advised that 28 U.S.C. § 2255 provides the exclusive remedy for attacking Absalon's

conviction and sentence.  While Absalon was provided the opportunity to show cause for failing

4

to raise his claims on direct appeal and prejudice from such, he failed to do so. The Magistrate

court stated:

> Petitioner merely alleges that this Court's failure to rule on his Ex
> Parte Motion 'effectively prevented' him from asserting those claims
> on direct appeal. Petitioner's assertion is entirely without merit.
> Even if Petitioner subjectively believed that he could not assert those
> claims on direct appeal, Petitioner would be hard pressed to show that
> his belief was rational. Given the frivolous nature of Petitioner's
> current claims, the more likely scenario is that Petitioner did not want
> to poison his appeal by including his present claims with his
> application for appellate relief. Therefore, because the Petitioner has
> failed to provide any valid reason for his failure to argue his current
> claims on direct appeal, this Court need not address whether
> Petitioner has suffered any actual prejudice.[5]

The Magistrate court further posited that even if it considered the prejudice issue,

Absalon could not show prejudice due to the frivolous nature of his entire ex parte motion. His

assertions, including that the district court lacked jurisdiction to convict him, were directly

contradicted by the record. The United States District Court had jurisdiction to convict him by

virtue of the fact he was charged with violating federal laws.[6]

The Magistrate court concluded its report by recommending that the district court

construe Absalon's ex parte motion as a § 2255 petition, and dismiss the motion without a

hearing because of the Petitioner's procedural default and a record that conclusively

demonstrated that Absalon was not entitled to relief. The Magistrate court advised Absalon that

a failure to object to the court's findings and recommendations within ten days after being served

with a copy shall bar him, except on grounds of plain error, from attacking on appeal the

---

[5] See United States v. Absalon, Criminal Cause Number B-98-506, Docket # 53 at page 4.

[6] See United States v. Masat, 948 F.2d 923, 934 (5th Cir. 1991) (ruling that federal district courts have original jurisdiction over all offenses against the laws of the United States).

proposed factual findings and legal conclusion accepted by the district court. According to the docket sheet, Absalon was served with the Magistrate's Report and Recommendation on December 1, 2000.[7]

On December 6, 2000, Absalon filed a motion to vacate judgment and dismiss indictment (this proceeding) under 28 U.S.C. § 2255. Once again, he has requested the court to overturn his conviction and release him from prison. He raised the same claims alleged in the ex parte motion, as well as some new claims. These claims will be discussed further in the analysis portion of this order.

On December 19, 2001, Absalon filed an untimely twenty-eight page objection to the Magistrate's aforementioned Report and Recommendation. He argued that the court could not force him to file a § 2255 petition at that stage of the proceedings, and that if the court did not want to rule on his ex parte motion, it should dismiss said motion without prejudice in order to enable him to file an amended complaint. He reiterated the arguments made in his previous ex parte motion.[8]

On January 10, 2001, the district court adopted the magistrate court's report and recommendation. It construed Absalon's ex parte motion as a motion to vacate pursuant to 28 U.S.C. § 2255, and dismissed it.[9]

This order will also confront two motions that Petitioner Absalon has filed over the course of his proceedings in the Southern District of Texas, Brownsville Division. One of the

---

[7] See United States v. Absalon, Criminal Cause Number B-98-506, Docket # 53.

[8] See United States v. Absalon, Criminal Cause Number B-98-506, Docket # 55.

[9] See United States v. Absalon, Criminal Cause Number B-98-506, Docket # 57.

motions was filed while his ex parte motion was pending,[10] and the other was filed as part of the current proceeding.[11]  Both motions center upon the Petitioner's request for various types of discovery from the United States Attorneys' Office.  Specifically, while the Rule 60(b) motion was pending, Absalon filed a motion requesting the following evidence:

1)  Witness statements in the possession of the government relating to witnesses Enedelia Portillo Sanchez, Elvia Sanchez Guzman, and FBI agent Freddy Vela (who testified during Absalon's February 4, 1999 sentencing hearing);

2)  Any *Brady* Material in the possession of the government, including "impeaching evidence," "favorable evidence," "negative evidence," "evidence of lack of criminal intent," and "exonerative evidence," and any exculpatory material that may have come out of the grand jury's minutes;

3)  Any information that the government may have obtained illegally through a violation of Petitioner's attorney-client privilege;

4)  Any Jenks Act material in the possession of the government.[12]

In the current § 2255 proceeding, Petitioner again urges this Court to grant the discovery motion.[13]

## ANALYSIS

As stated earlier, this Court treated Petitioner Absalon's Rule 60(b) motion as a 28 U.S.C. § 2255 petition for writ of habeas corpus.  The Court will now construe the current § 2255

---

[10] See United States v. Absalon, Criminal Cause Number B-98-506, Docket # 52 (revealing Absalon's "Motion to Compel Prosecutor's Duty, Under Due Process Clause of Federal Constitution, to Disclose Evidence Favorable to the Accused").

[11] See Docket # 10 (referring to Absalon's letter to the court entitled "Re: Motion to Compel Prosecutor's Duty......to Disclose Evidence Favorable to the Accused").

[12] See United States v. Absalon, Criminal Cause Number B-98-506, Docket # 52, at 1-10.

[13] See Docket # 10.

7

petition as an amended request for habeas corpus relief. Therefore, the current habeas petition will not be treated as a successive motion. The Court will address the merits of all of the Petitioner's current claims. Additionally, the Court will address the merits of Petitioner's request for discovery in this order.

In Petitioner Absalon's amended § 2255 petition, he raises the following claims:

1) His offense conduct in counts three (kidnaping) and four (transportation of minor alien with intent to engage in criminal sexual activity) which were the basis of his upward departure occurred in Mexico, and therefore, the Court lacked jurisdiction to consider such conduct;

2) There was no evidence he transported the victim in interstate of foreign commerce, which is an element of kidnaping, 18 U.S.C. § 1201;

3) Since the facts in the dismissed counts were used to increase his sentence, the government was obligated to prove the charges in the dismissed counts beyond a reasonable doubt to a jury under *Apprendi v. New Jersey*.[14] His due process rights were, therefore, violated;

4) The government breached its plea agreement that it would not further criminally prosecute him by recommending the conduct in the dismissed counts three and four be used for purposes of enhancing his sentence, and the district court abused its discretion in considering said conduct;

5) The government failed to establish jurisdiction over the counts of conviction (two and five) because they were committed within the jurisdictional boundaries of Texas. The district court erroneously failed to dismiss the indictment for lack of jurisdiction;

6) Title 8 U.S.C. § 1329, granting United States district courts jurisdiction over prosecutions brought under its subchapter, including § 1324 prosecutions, is facially unconstitutional;

7) Trial counsel rendered ineffective assistance of counsel for not objecting to the court's lack of jurisdiction, and appellate counsel was ineffective for expressly refusing to raise such an issue on appeal;

---

[14] Apprendi v. New Jersey, 530 U.S. 466, 147 L.Ed.2d 435, 120 S.Ct. 2348 (2000).

8)   The punishment for felon in possession of a firearm in 18 U.S.C. 924(a)(2) was not authorized by Congress, and constitutes a fundamental miscarriage of justice.

*Claims #1 and 2*

Petitioner argues that the district court lacked jurisdiction to consider the conduct underlying the dismissed charges of kidnaping and transporting a minor alien with intent to engage in criminal sexual activity as relevant conduct or grounds for his upward departure since these offenses occurred in Mexico.  At sentencing, Absalon adamantly denied sexually exploiting or kidnaping the minor victim.  Following a hearing, the Court determined that Absalon failed to accept responsibility for relevant conduct (conduct underlying the dismissed counts), and further that the relevant conduct, in fact, occurred.  The court departed upward from the sentencing guideline range because of Absalon's sexual exploitation and kidnaping of the victim.

Absalon was not convicted for the conduct underlying the dismissed counts.  Such conduct was simply considered for purposes of determining whether he accepted responsibility, and for grounds for an upward departure.  Thus, the government was not required to prove jurisdictional elements in the statutes covering kidnaping or transporting a minor alien with intent to engage in sexual activity.  Regardless, the evidence established the jurisdictional elements in both statutes.  Title 18 U.S.C. § 1201(a)(1) makes it a crime for a person to unlawfully seize, confine, kidnap, abduct, or carry away and hold for ransom or reward or otherwise any person, when "the person is willfully transported in interstate or foreign commerce..."  Likewise, 18 U.S.C. § 2423 makes it a crime to transport a minor under eighteen years of age in interstate or foreign commerce with intent to engage in criminal sexual activity.

Here, the evidence showed Absalon abducted the minor victim in Mexico and transported

9

her into the United States.[15]  This provided the jurisdictional basis for the government to

prosecute both crimes in the dismissed counts.[16]

Notwithstanding, a claim the Court misapplied the sentencing guidelines is not a question

of jurisdictional or constitutional magnitude.   Section 2255 relief has historically been available

for errors of constitutional dimension and other injuries that could not have been raised on direct

appeal and, if left unaddressed, would result in a complete miscarriage of justice.[17]  Additionally,

if a movant can show cause for the default and actual prejudice as a result, then they can

overcome the procedural bar on a collateral attack.[18]  The type of error that the Petitioner is

complaining about in this instance does not rise to a constitutional level.[19]  Absalon has failed to

---

[15] See PSR, ¶¶ 8-13.

[16] See United States v. De La Rosa, 911 F.2d 985, 989 (5th Cir. 1990) (ruling that when a
defendant transported a two-year old from Mexico to the United States, Section 1201(a)(1) "is
sufficiently broad to cover the abduction of a person in Mexico and his subsequent transportation into the
United States...).

[17] See United States v. Cervantes, 132 F.3d 1106, 1109 (5th Cir. 1998); United States v. Payne,
99 F.3d 1273, 1281 (5th Cir. 1996); United States v. Gaudet, 81 F.3d 585, 589 (5th Cir. 1996); United
States v. Ressler, 54 F.3d 257, 259 (5th Cir. 1995); United States v. Acklen, 47 F.3d 739, 741 (5th Cir.
1995); United States v. Mimms, 43 F.3d 217, 219 (5th Cir. 1995); United States v. Patten, 40 F.3d 774,
776 (5th Cir. 1994), cert. denied, 515 U.S. 1132 (1995); United States v. Segler, 37 F.3d 1131, 1133 (5th
Cir. 1994); United States v. Smith, 32 F.3d 194, 196 (5th Cir. 1994); United States v. Towe, 26 F.3d 614,
616 (5th Cir. 1994); United States v. Faubion, 19 F.3d at 233; United States v. Pierce, 959 F.2d 1297,
1301 (5th Cir. 1992), cert. denied, 506 U.S. 1007 (1992); United States v. Vaughn, 955 F.2d 367, 368
(5th Cir. 1992); United States v. Weintraub, 871 F.2d 1257, 1266 (5th Cir. 1989); United States v. Smith,
844 F.2d 203, 205-06 (5th Cir. 1988); and United States v. Capua, 656 F.2d 1033, 1037 (5th Cir. 1981).

[18] Id.

[19] See Cervantes, 132 F.3d at 1109 (ruling that a miscalculation of the guideline sentence is not
grounds for Section 2255 relief); Payne, 99 F.3d at 1281 (deciding that a petitioner's claim that the
district court improperly refused to apply a reduction for acceptance of responsibility is not cognizable in
a Section 2255 proceeding).  See also Faubion, 19 F.3d at 232-233 (acknowledging that an attack on a
district court's upward departure is not cognizable in a Section 2255 proceeding because it poses no
constitutional, statutory, or jurisdictional claim).

10

demonstrate the above challenge was incapable of being raised on direct appeal, and has also failed to show that the alleged error would result in a complete miscarriage of justice.[20] Due to the fact that Absalon can not show cause and prejudice and that his claims, even if correct, would not result in a miscarriage of justice, Petitioner's first two claims fail.

*Claim #3*

Relying on *Apprendi v. New Jersey*,[21] Absalon argues since the dismissed counts were used to increase his sentence, due process requires that the government prove such charges beyond a reasonable doubt. The *Apprendi* decision, however, is inapplicable when the sentence does not exceed the statutory maximum that is applicable. "A fact used in sentencing that does not increase a penalty beyond the statutory maximum need not be alleged in the indictment and proved to a jury beyond a reasonable doubt."[22] Here, Absalon was convicted of violating 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II) (count two), which carries a maximum statutory sentence of five years imprisonment; and 18 U.S.C. § 922(g)(1) (count five), which carries a maximum sentence of ten years imprisonment. Absalon was sentenced to sixty months (five years) on count two, and 87 months on count five. Petitioner, therefore, has no *Apprendi* claim since his sentence was not enhanced beyond the statutory maximum by a factor not contained in the indictment or submitted to the jury.[23]

---

[20] See Cervantes, 132 F.3d at 1109 (noting that a miscalculation of the guideline sentence does not result in a complete miscarriage of justice).

[21] Apprendi v. New Jersey, 530 U.S. 466, 147 L.Ed.2d 435, 120 S.Ct. 2348 (2000).

[22] United States v. Keith, 230 F.3d 784, 787 (5th Cir. 2000).

[23] See Keith, 230 F.3d at 787; United States v. Doggett, 230 F.3d 160, 165 (5th Cir. 2000).

*Claim #4*

Absalon argues the government breached its plea agreement to not further prosecute him by recommending the conduct in dismissed counts three and four be considered to enhance his sentence. He also claims the court abused its discretion in considering the said conduct for such purposes.

Prior to sentencing, the probation officer recommended Absalon receive a three-level reduction for acceptance of responsibility, and did not recommend any upward adjustments for the relevant conduct in the dismissed counts. The government subsequently filed a statement of no objection to the PSR. Absalon, on the other hand, contested the factual summary in the PSR pertaining to his offense conduct, and the facts underlying his prior conviction for criminal sexual contact. He wrote his own version of relevant facts to be considered by the Court. The Court consequently conducted a hearing to afford the Petitioner every opportunity to show why the facts in the PSR as it related to the relevant conduct should not be accepted by the court, and the government the opportunity to refute Absalon's evidence. Against defense counsel's recommendation, Absalon's version of the facts was read into the record. Absalon claimed none of the photographs of the victim seized from his Winnebago were improper. The Court, consequently, requested the government produce the photographs in question for the court's inspection at the first sentencing hearing.

A second sentencing hearing, at which Absalon testified under oath, took place at a later date. Petitioner confirmed that he wrote the statements in his objections to the PSR and they were true and correct. He reiterated the photographs of the victim were not improper or provocative. To rebut Absalon's version of the offense facts, the government called as witnesses

12

the victim, the victim's mother, and the case agent.  Following, the Court notified defense

counsel it was considering an upward departure from the guidelines and would provide Absalon

the opportunity to present evidence to negate an upward departure.  The probation officer

informed the Court that the Petitioner's sexual conduct with the victim had not been considered

in the sentencing adjustments.  Defense counsel recalled the government's witnesses in an

attempt to discredit the victim's testimony.  After the presentation of this testimony, the

government requested an upward departure from the guideline range over Absalon's objection.

The district court determined an upward departure was warranted based on Absalon's kidnaping

and sexual exploitation of the victim, and that Absalon did not warrant a sentence reduction for

acceptance of responsibility.

      The terms of the written plea agreement between the government and Absalon was that

the Government would dismiss counts one, three, four, six, seven, and eight, and recommend a

sentencing reduction for acceptance of responsibility.  The Government also agreed not to bring

any additional charges against Absalon based on his conduct underlying the instant indictment.

The Government complied with each of these terms.  Additionally, the Government's

recommendation for a reduction of acceptance of responsibility was obviously conditioned on

Absalon truthfully admitting the facts underlying the offenses.  The probation officer in the PSR

initially recommended a three-level reduction for acceptance of responsibility, and the

Government stated in had no objections to this recommendation.  However, when Absalon

subsequently chose to interject facts the Court found to be untrue, he caused his own demise.

The Court on its own volition denied him the reduction for acceptance of responsibility after it

determined he testified untruthfully about the offense and relevant conduct at sentencing.  In

13

compliance with the plea agreement, the Government dismissed the above counts against Absalon after sentencing. The Government has also brought no new charges against the Petitioner stemming from the same conduct underlying the instant case. Therefore, Petitioner's claim that the Government breached its plea agreement with him is without merit.

In addition, Absalon could have argued the Government breached its plea agreement in the district court on direct appeal, but he failed to do so. He cannot show cause and prejudice for the alleged error since the conduct in the dismissed counts should have been included as relevant conduct in the PSR to begin with.

*Claims #5 and 6*

Petitioner Absalon claims that the Government lacked jurisdiction over the crimes of conviction, and Title 8 U.S.C. § 1329, which grants the United States district courts jurisdiction over alien crimes, is facially unconstitutional. Absalon was convicted of transporting an undocumented alien in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and felon in possession of a firearm in violation of 18 U.S.C. § 922. Section 1324(a)(1)(A)(ii) makes it a crime for any person, "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law," to transport, move, or attempt to transport or move, such alien within the United States in furtherance of such violation of law. Title 8 U.S.C. Section 1329 establishes the jurisdiction of United States district courts over suits brought under Section 1324(1)(A)(ii). It states:

> The district courts of the United States shall have jurisdiction of all causes, civil and criminal, brought by the United States that arise under the provisions of this subchapter. It shall be the duty of the United States attorney of the proper district to prosecute every such suit when brought by the United States. Notwithstanding any other law, such prosecutions...may be instituted at any place in the United States at

14

which the violation may occur or at which the person charged with a violation under section 1325 or 1326 of this title may be apprehended...[24]

Absalon argues Section 1329 is facially unconstitutional. He relies on Title 8 U.S.C.A. Annotated, Section 1329, Notes of Decisions, Note 1, which refers to a 1978 opinion of the Office of Legal Counsel of the Department of Justice. The opinion states that Section 1329 is unconstitutional as it applies to 8 U.S.C. Section 1325 since it authorized prosecution for eluding inspection under Section 1325 in a district other than the district at or near the border where the inspection should have taken place. Not only is the opinion non-binding case law, it also does not apply to Section 1324 prosecutions. Consequently, it is irrelevant to Petitioner Absalon's convictions. Regardless, Congress provided in 18 U.S.C. Section 3231 that "the district court of the United States shall have original jurisdiction, exclusive of the courts of the states, of all offenses against the laws of the United States."[25]

Recognizing the United States Congress has sovereign authority over enacting laws relating to immigration, the Supreme Court has declared, "the power to regulate immigration – an attribute of sovereignty essential to the preservation of any nation – has been entrusted by the Constitution to the political branches of the Federal Government. The Court without exception has sustained Congress' 'plenary power to make rules for the admission of aliens.'"[26] Congress, therefore, has exercised its sovereign power to designate United States District Courts with jurisdiction to handle crimes involving the transportation of undocumented aliens.

---

[24] 8 U.S.C. § 1329.

[25] 18 U.S.C. § 3231.

[26] United States v. Valenzuela-Bernal, 458 U.S. 858, 864, 102 S.Ct. 3440, 3445, 73 L.Ed.2d 1193 (1982).

The evidence shows that the Petitioner transported an undocumented alien into the United States at or near Brownsville, Texas.[27]  Accordingly, the United States properly brought charges in the Southern District of Texas, Brownsville Division, and this Court had proper jurisdiction over the case.[28]

Similarly, Congress had authority under the Commerce Clause of the United States Constitution to make it a federal crime for a convicted felon to possess firearms.[29]  Title 18 U.S.C. Section 922(g)(1) makes it unlawful for any person who has been convicted of a crime punishable by imprisonment for a term exceeding one year to "possess in or affecting commerce, any firearm or ammunition...which has been shipped or transported in interstate or foreign commerce."[30]  "By expressly requiring a nexus between the illegal firearm and interstate commerce, Congress exercised its delegated power under the Commerce Clause to reach 'a discrete set of firearm possessions that additionally have an explicit connection with or effect on interstate commerce.'"[31]  The Fifth Circuit has upheld the constitutionality of Section 922(g)(1) which includes the same jurisdictional elements as Section 922(g)(8).[32]

Absalon, as a convicted felon, violated Section 922(g)(1) when he possessed several

_____

[27] See PSR, ¶ 9.

[28] See Uribe v. United States, 529 F.2d 742, 743 (5th Cir. 1976).

[29] See United States v. Gresham, 118 F.3d 258, 264 (5th Cir. 1997); United States v. Rawls, 85 F.3d 240, 242 (5th Cir. 1996).

[30] 18 U.S.C. § 922(g)(8).

[31] See United States v. Pierson, 139 F.3d 501, 503 (5th Cir. 1998) (citing United States v. Lopez, 514 U.S. 549, 561-63, 115 S.Ct. 1624, 1631, 131 L.Ed.2d 626 (1995)).

[32] See id.

16

firearms at the Sarita Checkpoint near Brownsville.[33]  Pursuant to 18 U.S.C. Section 3231, the

United States District Court for the Southern District of Texas, Brownsville Division, had

jurisdiction over this crime.  Therefore, Petitioner Absalon's jurisdictional claims fail.

*Claim #7*

Absalon asserts that his trial and appellate counsel rendered ineffective assistance for

failing to challenge the Court's and Government's jurisdiction over the counts of conviction.

The constitutional standard for determining whether a criminal defendant has been denied

the effective assistance of counsel, as guaranteed by the Sixth Amendment, was announced by

the Supreme Court in the case of *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so defective
> as to require reversal of a conviction or death sentence has two
> components.  First, the defendant must show that counsel's performance
> was deficient.  This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment.  Second, the defendant must show
> that the deficient performance prejudiced the defense.  This requires
> showing that counsel's errors were so serious as to deprive the defendant
> of a fair trial, a trial whose result is reliable.[34]

In order to demonstrate that his attorney's performance was constitutionally deficient, a

convicted defendant must show that counsel's representation "fell below an objective standard of

reasonableness."[35]  In so doing, a convicted defendant must carry the burden of proof and

---

[33] See PSR, ¶ 13.

[34] Strickland v. Washington, 466 U.S. 668, 687 (1984).

[35] See Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Darden v. Wainwright, 477 U.S. 168,
184 (1986); Strickland v. Washington, 466 U.S. at 687-88; Lackey v. Johnson, 116 F.3d 149, 152 (5th
Cir. 1997); Andrews v. Collins, 21 F.3d 612, 621 (5th Cir. 1994), cert. denied, 513 U.S. 1114 (1995);
Duff-Smith v. Collins, 973 F.2d 1175, 1182 (5th Cir. 1992), cert. denied, 507 U.S. 1056 (1993); and
Black v. Collins, 962 F.2d 394, 401 (5th Cir. 1992), cert. denied, 504 U.S. 992 (1992).

overcome a strong presumption that the conduct of his trial counsel falls within a wide range of

reasonable professional assistance.[36] The courts are extremely deferential in scrutinizing the

performance of counsel and make every effort to eliminate the distorting effects of hindsight.[37] It

is strongly presumed that counsel has rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment.[38] An attorney's strategic choices,

usually based on information supplied by the defendant and from a thorough investigation of

relevant facts and law are virtually unchallengeable.[39] Counsel is required neither to advance

---

[36] See Strickland v. Washington, 466 U.S. at 687-91; Jones v. Cain, 227 F.3d 228, 231 (5th Cir. 2000) (holding that trial counsel's decision not to put defendant on the stand in light of defendant's prior criminal record is a judgment call which seldom, if ever, will support a claim of ineffective assistance); Green v. Johnson, 160 F.3d 1029, 1035 n.1 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997), cert. denied, 523 U.S. 1099 (1998); Belyeu v. Scott, 67 F.3d 535, 538 (5th Cir. 1995), cert. denied, 517 U.S. 1144 (1996); Duff-Smith v. Collins, 973 F.2d at 1182. A federal habeas petitioner must carry the burden of demonstrating both counsel's deficient performance and resultant prejudice. See Burnett v. Collins, 982 F.2d 922, 928 (5th Cir. 1993); Martin v. Maggio, 711 F.2d 1273, 1279 (5th Cir. 1983), cert. denied, 469 U.S. 1028 (1984).

[37] See Lockhart v. Fretwell, 506 U.S. 364, 372 (1993); Burger v. Kemp, 483 U.S. 776, 789 (1987); Strickland v. Washington, 466 U.S. at 689; United States v. Drones, 218 F.3d 496, 500-03 (5th Cir. 2000); Carter v. Johnson, 131 F.3d at 463; Williams v. Cain, 125 F.3d 269, 276 (5th Cir. 1997), cert. denied, 525 U.S. 859 (1998); Green v. Johnson, 116 F.3d 1115, 1122 (5th Cir. 1997); United States v. Gaudet, 81 F.3d 585, 592 (5th Cir. 1996); and Belyeu v. Scott, 67 F.3d at 538. The deficiency prong of Strickland is judged by counsel's conduct under the law existing at the time of the conduct, see Westley v. Johnson, 83 F.3d 714, 723 (5th Cir. 1996), cert. denied, 519 U.S. 1094 (1997), and in view of the facts and resources available at the time of trial. See Williams v. Cain, 125 F.3d at 276, citing Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994), cert. denied, 513 U.S. 960 (1994).

[38] See Strickland v. Washington, 466 U.S. at 690; and Duff-Smith v. Collins, 973 F.2d at 1182.

[39] See Jones v. Jones, 163 F.3d 285, 300 (5th Cir. 1998), cert. denied, 528 U.S. 895 (1999); Ransom v. Johnson, 126 F.3d 716, 721 (5th Cir. 1997), cert. denied, 522 U.S. 944 (1997); Green v. Johnson, 116 F.3d 1115, 1122 (5th Cir. 1997) (stating that "a conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness"); Boyle v. Johnson, 93 F.3d 180, 187-88 (5th Cir. 1996), cert. denied, 519 U.S. 1120 (1997) (holding that an attorney's decision not to pursue a mental health defense or to present mitigating evidence concerning the defendant's possible mental illness was reasonable where counsel was concerned that such testimony would not be viewed as mitigating by the jury and that the prosecution might respond to such testimony by putting on its own

every non-frivolous argument nor to investigate every conceivable matter inquiry into which could be classified as non-frivolous.[40] A criminal defense counsel is not required to exercise clairvoyance during the course of a criminal trial.[41] Likewise, the Sixth Amendment does not require that counsel do what is impossible or unethical; if there is no bona fide defense to the charge, counsel is not required to create one.[42]

The proper standard for evaluating counsel's performance under the Sixth Amendment is "reasonably effective assistance."[43] "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."[44] "Accordingly, any deficiencies in counsel's performance must be prejudicial to

---

psychiatric testimony regarding the defendant's violent tendencies).

[40] See Neal v. Cain, 141 F.3d 207, 214-15 (5th Cir. 1998) (holding that petitioner's complaints regarding counsel's failure to raise specific defenses did not satisfy prejudice prong of *Strickland* where proposed defenses were without merit); Sones v. Hargett, 61 F.3d 410, 415 n.5 (5th Cir. 1995) (ruling that "counsel cannot be deficient for failing to press a frivolous point"); United States v. Gibson, 55 F.3d 173, 179 (5th Cir. 1995) (opining that "counsel is not required by the Sixth Amendment to file meritless motions"); Smith v. Collins, 977 F.2d 951, 960 (5th Cir. 1992), cert. denied, 510 U.S. 829 (1993) (revealing that "the defense of a criminal case is not an undertaking in which everything not prohibited is required; nor does it contemplate the employment of wholly unlimited time and resources"); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) (stating that "counsel is not required to make futile motions or objections"); Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985) (holding that defense counsel is not required to investigate everyone whose name is mentioned by the defendant).

[41] See Sharp v. Johnson, 107 F.3d 282, 290 n.28 (5th Cir. 1997), citing Garland v. Maggio, 717 F.2d 199, 207 (5th Cir. 1983) (holding that clairvoyance is not a required attribute of effective representation). See also Lackey v. Johnson, 116 F.3d at 152 (ruling that trial counsel was not ineffective for failing to discover evidence about which the defendant knew but withheld from his counsel).

[42] See United States v. Cronic, 466 U.S. 648, 656 n.19 (1984); Jones v. Jones, 163 F.3d at 303.

[43] Strickland v. Washington, 466 U.S. at 687; Bullock v. Whitley, 53 F.3d 697, 700 (5th Cir. 1995).

[44] Strickland v. Washington, 466 U.S. at 691, 104 S.Ct. at 2067.

the defense in order to constitute ineffective assistance under the Constitution."[45]  In order to

establish that he has sustained prejudice, the convicted defendant "must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome."[46]  The prejudice prong of *Strickland* focuses on whether counsel's

deficient performance rendered the result of the trial unreliable or the proceeding fundamentally

unfair; unreliability or unfairness does not result if the ineffectiveness of counsel does not

deprive the defendant of any substantive or procedural right to which the law entitles him.[47]

In this case, a detailed analysis of the *Strickland* test is not warranted.  Absalon's

jurisdictional claims are frivolous, so counsel therefore was not required to make a frivolous

objection or argument that the court lacked jurisdiction over the crimes of conviction.[48]  Stated

another way, Petitioner Absalon can not satisfy the first prong of the *Strickland* test (counsel's

performance was deficient), so his claim for relief due to ineffective assistance of counsel is

without merit.

*Claim #7*

Absalon argues that 18 U.S.C. Section 924(a)(2), which sets forth punishment for felons

---

[45] Id.

[46] See Williams v. Taylor, 529 U.S. at 391; Strickland v. Washington, 466 U.S. at 694.

[47] See Williams v. Taylor, 529 U.S. at 393 n.17; Strickland v. Washington, 466 U.S. at 692.

[48] See Neal v. Cain, 141 F.3d at 214-15 (5th Cir. 1998); Sones v. Hargett, 61 F.3d at 415 n.5 (5th Cir. 1995); United States v. Gibson, 55 F.3d at 179 (5th Cir. 1995); Smith v. Collins, 977 F.2d at 960 (5th Cir. 1992), cert. denied, 510 U.S. 829 (1993); Koch v. Puckett, 907 F.2d at 527 (5th Cir. 1990); Schwander v. Blackburn, 750 F.2d at 500 (5th Cir. 1985); Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984) (ruling that counsel is not required to make meritless arguments).

in possession of a firearm is unauthorized by Congress.  Title 18 U.S.C. § 922(g)(1) prohibits a

felon from possessing in or affecting commerce, any firearm or ammunition.  Section 924(a)(2)

states that whoever knowingly violates subsection (g) of section 922, "shall be fined as provided

in title, imprisoned not more than ten years, or both."[49]  Therefore, Absalon's sentence was

authorized by Congress, and this final claim carries no merit.

*Discovery Issue*

As aforementioned, Petitioner Absalon has filed a motion requesting various forms of

discovery from the Government.  The Government's alleged failure to disclose *Brady* material,

*Jenks* material, and witness statements may not be raised for the first time on collateral attack

without the Petitioner first showing "cause" for his procedural default and "actual prejudice"

resulting from the error.[50]  Absalon offers no explanation for his failure to raise these issues on

direct appeal.  Given that he can not obtain habeas relief even if the Government had failed to

disclose said discovery, Petitioner is not entitled to discovery at this point in the proceedings, and

therefore his request should be denied.

For all of the reasons mentioned above, it is hereby ORDERED that:

1)     Petitioner Absalon's Amended Motion for Relief pursuant to 28 U.S.C. §
       2255 is DENIED; and

2)     The Government's Motion for Summary Denial is hereby GRANTED;

---

[49] 18 U.S.C. § 924(a)(2).

[50] See United States v. Shaid, 937 F.2d 228, 232 (5th Cir. 1991) (noting that a petitioner must
show "cause" and "prejudice" in a habeas proceeding even when a fundamental constitutional error
which could have been but was not urged on direct appeal is alleged); United States v. Frady, 456 U.S.
152, 156, 102 S.Ct. 1584, 1593, 71 L.Ed.2d 816 (1982).

21

3)     Additionally, Petitioner Absalon's "Motion to Compel Prosecutor's Duty, Under Due Process Clause of Federal Constitution, to Disclose Evidence Favorable to the Accused" is also DENIED.

DONE in Brownsville, Texas on this ____ day of _____, 2002.


_____
Hilda G. Tagle
United States District Judge

22