24

1   ## IN THE UNITED STATES COURT OF APPEALS
2   ## FOR THE FIFTH CIRCUIT
3
4                                                          United States District Court
                                                          Southern District of Texas
                                                                    FILED
5   Hugo P. Absalon                                         OCT 2 3 2002
6                  Petitioner
                                                          Michael N. Milby, Clerk of Court
7      v                    Criminal B-98-506-1
8
9   U.S. Magistrate Judge
10  Felix Recio                              CAB-00-186
11  Southern District of Texas
12  Brownsville Division
13                  Respondent
14
15  _____
16
17          MOTION FOR DISQUALIFICATION OF FEDERAL  JUDGE
18  _____
19          NOW COME Hugo P. Absalon , pro se , and respectfully move this Court
20  for an ORDER disqualifying U.S. Magistrate Judge  Felix Recio, Southern District
21  of Texas, Brownsville Division , from further presiding over the above-referenced
22  cause.
23          In support thereof , Petitioner state as follows :
24  Petitioner , acting pro se, respectfully prays that this Honorable Court construe his
25  Pro se pleading liberally as per Supreme Court ruling in Haines v Kerner , 404 US
26  519, 520-21, 92 S.Ct 594 , 595-96 (1972)(holding that pleadings of  litigants acting
27  in pro se are held to less stringent rigorous standards  that formal pleadings drafted
28  by lawyers . See also U.S. v  Whetersby, 598 F2d 65, 66 (5th Cir. (1992).
29          I.      In 1974 Congress amended the Judicial Code to "broaden and clarify
30  the grounds for judicial disqualification" 88 Stat 1609 . The first sentence of the
31  amendment provides : "*Any justice, judge or magistrate of the U.S. shall disqualify*

1     *himself in any proceeding in which impartiality might reasonably be questioned "*

2     *28 USC section 455(a) as amended..*

3         *"The district Court has the initial responsibility to recuse himself from a*

4     *case. Under 28 USC § 455(a) a judge must recuse himself in circumstances that*

5     *give raise to a reasonable inference of impropriety or lack of impartiality."*

6     *Liljerberg v Health Services Acquisition Corp._____ US___ , 108*

7     *S.Ct. 2194 , 100 Led 2d 855 (1988).*

8         The appellate Court has the authority to order reassignment of a criminal

9     case to another district judge as part of its supervisory authority over the district

10    courts in the Circuit . See 28 USC § 2106 . See *U.S. v Spears , 827 F2d 705*

11    *(11th Circ. 1987)* ; *see generally Offutt v United States , 348 US 11 . 75 S.Ct. 11.*

12    *99 Led 11 (1954).*

13        The Court of Appeals for the Fifth Circuit's position on the issue is as

14    follows : in *Liljeberg v Health Services Acquisition Corp. supra* , the U.S.

15    Supreme Court held : " *In the present case , the Court of Appeals for the Fifth*

16    *Circuit concluded that a violation of § 455(a) is established when a reasonable*

17    *person . knowing the relevant facts , would expect that a justice . judge or*

18    *magistrate knew of circumstances creating an appearance of partiality ,*

19    *notwithstanding a finding that the judge was not actually conscious of those*

20    *circumstances . Moreover , although the judgment in question had become final ,*

21    *the Court of Appeals determined that under the facts of this case . the appropriate*

22    *remedy was to vacate the court's judgment . We granted certiorari to consider its*

23    *construction of § 455(a) as well as its remedial decision , 480 US 915 , 94 Led 2d*

24    *684 , 107 S.Ct. 1368 (1987) . "We now affirm".*

25

26

1    II.    By conduct from which it can be conclusively inferred refusal or

2    failure to perform a duty U.S. Magistrate Felix Recio has failed his   initial

3    responsibility to recluse himself from the instant cause  in circumstances that give

4    raise to a reasonable inference of impropriety , lack of impartiality and apparent

5    conflict of interest.

6        The circumstances that give rise to a reasonable inference of impropriety or

7    lack of impartiality  are as follows :

8        1.    U.S. Magistrate Judge Felix Recio  has had substantial exposure to

9    this case and has been called on to make rulings which adversely affected

10    Petitioner Absalon.

11        (a)    This case was initiated by Juan Portillo , a Mexican Citizen,

12    resident of the State of Nuevo Leon in the Sovereign Country of Mexico . who on

13    or about **August 25, 1998** crossed the Mexico/United States border an filed a

14    complaint with the Texas, Roma Police Department for allegedly violative conduct

15    by the Appellant  **IN**  **the Sovereign Country of Mexico** [ "possible abduction "

16    of his daughter Enedelia Portillo Sanchez  ,also a Mexican Citizen resident of the

17    Sovereign Country of Mexico ] .    The 73 years old Appellant is also a Mexican

18    Citizen legal resident of the United States since  1956  (46 years of continued legal

19    residence).    The Roma Police Department notified the FBI and Border Patrol of

20    the complaint, supra. (Transcript of 2/4/99 Sentencing Hearing page 8(7-25) -

21    Appendixes "K" and "L" to Appellant's Brief) .

1    The record shows that U.S. Magistrate Judge Felix Recio **knew** or should

2    have known of the within facts (foot note [1] ) , which facts were falsely represented

3    to the Grand Jury as evidenced by the contents of the resulting indictment where

4    no mention is made  of the  above  complaint and the locus in quo of the alleged

5    offenses considered by U.S. District Judge Hilda G. Tagle   for her  upward

6    departure from the Sentencing Guidelines.

7    **(1)    On September 3, 1998**  , three days after Appellant's warrant-less

8    arrest (on September 1, 1998) , outside federal jurisdiction (outside of Highway

9    77) about seventy (70) miles North of Brownsville Texas(Appellant was in route to

10   his place of residence in Converse Texas, a subdivision of San Antonio Texas) ,

11   FBI agent Freddy Vela  filed his Criminal Complaint (B-98-3787M , docketed at

12   the  U.S. District Court for the Southern District of Texas , Brownsville Division

13   as  B-98-506) **, which complaint is in direct conflict** with the complaint filed by

14   Juan Portillo , Mexican Citizen  resident of the Country of Mexico , on or about

15   August 25, 1998 ,supra . FBI Freddy Vela , under oath,  stated : "*I, the undersigned*

16   *complainant **being duly sworn** state the following is true and correct to the best of*

17   *my knowledge and belief. On or about 08/26/1998 **IN  Cameron County , in the***

18   ***Southern District of Texas** the defendant did --- kidnap , abduct – in violation of*

---

[1] Transcript of the 2/4/99 Sentencing Hearing T-II . 8(7-25) (Appendix "K" to Appellant's Brief) , and "Plea Pocket Memo" originated by the Prosecution ( Appendix "L" to Appellant's Brief).

1  *Title 18 USC section 1201 . I further state that I am FBI Special  Agent and this*

2  *complaint is based on the following facts : SEE ATTACHED AFFIDAVIT* "

3  (emphasis added) .   The Court   **SEALED**  the document (Appendix "M" to

4  Appellant's Brief) **effectively precluding defense knowledge of the facts on**

5  **which the complaint is based**.. As long as the document remains "sealed" the

6  government bears a continuing burden of justifying the need for secrecy . There is

7  nothing in the record that would support the conclusion that the government is

8  presently able to sustain its burden .

9        By suppressing the facts surrounding the "original complaint" (by the

10  Mexican Citizen) , Appellant was deprived of the ability to make such use of the

11  "original complaint"  as might have been in the interest of the Appellant .

12        (b)    By conduct from which it can be conclusively inferred failure or

13  refusal to perform, the prosecution had failed or refused to comply with its

14  Constitutional Duty to disclose duly requested evidence relevant to guilt and

15  punishment favorable to the Appellant ,  in the possession , custody or under

16  control of the government.   U.S. Magistrate Judge Felix Recio **knew  or should**

17  **have known** of Appellant's Motion to Compel Prosecutor's  Constitutional Duty

18  to disclose duly requested evidence . U.S.D.C. docket # 52 , at least , since

19  November 16, 2000 when the Motion was filed.

1    (1)   About five months after Appellant was convicted and sentenced

2    (February 4, 1999) he discovered a number of facts relevant to guilt and

3    punishment favorable to his defense.   Discovery to ascertain the existence of

4    perjury, false representation of facts , and use of false testimony to obtain

5    jurisdiction fits well within the requirements of materiality on the preparation of

6    post-conviction defense.   The Grand Jury has completed its work long time ago,

7    therefore , production of its transcripts and minutes would not appear unreasonable

8    unless the government shows that the information regarding possible perjury can

9    be obtained from other sources or that portions of the grand jury transcripts do not

10   bear on the perjury issue . It seems reasonable that Appellant's request for

11   production of grand jury transcripts and minutes should have been granted **, but it**

12   **was  not.**

13   (2)   Appellant had specifically requested copies of  :  **the Complaint filed**

14   **by Juan Portillo, Mexican Citizen resident of the Country of Mexico**, at the

15   Roma Texas Police Department , which complaint originated this case ; Report

16   (oral or written) of the complaint made by the Roma, Texas Police Department to

17   the FBI and Border Patrol ; the "Affidavit" attached to FBI agent Freddy Vela's

18   Complaint ; statements made by Enedelia Portillo Sanchez  (Complainant's

19   daughter) to the Mexican Consulate representative who interviewed her after her

1    arrest ; statements made by Enedelia Portillo Sanchez to FBI  agents at the U.S.

2    Border Patrol Checkpoint in Sarita Texas on September 1, 1998 after her arrest on

3    September 1, 1998 for violation of 18 USC section 1325 : statements made by

4    Enedelia Portillo Sanchez to the U.S. Border Patrol agents at the Sarita Texas

5    checkpoint on September 1, 1998 : written, recorded or summarized statements

6    made by Elvia Sanchez Guzman  (Enedelia's mother) to the prosecutor and any

7    investigative agency or government employees prior to her testimony at the

8    Sentencing Hearing : any written or summarized statements made to the Prosecutor

9    by   Enedelia Portillo Sanchez, Elvia SanchezGuzman, Juan Portillo , Blanca

10    Rivera Martinez , Antonia Martinez and FBI agent Freddy Vela related to all the

11    charges against the Appellant : copy of all written, oral or recorded statements, or

12    written , oral or recorded confessions or admissions, whether reduced to writing or

13    not, or summarized in police reports, FBI reports and statements to the prosecution

14    made by Enedelia Portillo Sanchez upon her arrest on September 1, 1998 , and

15    thereafter, for unlawful entry into the United States of America in violation of Title

16    18 USC section 1325 , including , but not limited to, any alleged conversations by

17    Enedelia Portillo Sanchez with any person, whether an agent of the government or

18    not, who claims to have overheard or engaged with Enedelia Portillo Sanchez in

19    any conversation which the the government intended to produce or produce as

1    evidence in this cause ;   **and more as outlined in Appellant's Motion to Compel**

2    **, U.S. D. C. docket # 52.**

3            (3)  Furthermore **.Since July 28, 1999** , five months after sentencing ,

4    Appellant has been  **requesting**  disclosure  of  specific evidence , favorable to the

5    accused , relevant to guilt and punishment , necessary for the preparation and filing

6    of a meaningful collateral attack on the judgment of  conviction  and dismissal of

7    the indictment , as follows :

8    **July 28, 1999** –   Appellant specifically addressed to U.S. Attorney Mervyn M.

9    Mosbacker Appellant's  request for disclosure and production of specific evidence

10    in the possession and under control of the government. Certified Mail # P 213 632

11    513 , return receipt requested.

12    **October 18, 1999** – Appellant filed Motion to Enjoin Agency, et al (U.S. Attorney

13    Mervyn M.Mosbacker) , from withholding duly requested evidence – Cause No.

14    99-CV-00684  U.S.D.C. Eastern District of Texas, Beaumont Division. Appellant

15    was , then, in custody at the F.C.I.-Beaumont.

16    **December 8, 1999** – Appellant filed **Civil Action**  No. 1:99-CV-00801 against

17    defendants U.S. Attorney General and U.S. Attorney Mervyn M. Mosbacker for

18    violation of Appellant's rights by depriving him of information to which he is

19    entitled to. Eastern District of Texas , Beaumont Division.

1    **November 16, 2000** Appellant filed Motion to Compel Prosecutor's Constitutional

2    Duty to Disclose duly requested evidence . (CD : 52). **All , to no avail until now.**

3    The Prosecution has failed or refused to comply with its constitutional duty to

4    disclose duly requested evidence.

5    (c)    U.S. Magistrate Judge Felix Recio has been substantially involved in the

6    instant case  and has been called on to make rulings which adversely affected

7    Petitioner. .  In what seems a conflict of interest  (foot note    [2] ) in circumstances

8    that raise a reasonable inference of impropriety and lack of impartiality U.S.

9    Magistrate Judge Felix Recio made decisions on the Defendant's case :

10    On February 3, 2000 . Defendant filed his Ex parte Motion under F.R.CV.P Rules

11    60(b)(3) & (6) and Rules 12(b)(1) &(7) on issues of **1)** fraud on the court **2)**

12    lack of  Legislative Jurisdiction over the "locus in quo" , and subject  matter

13    Jurisdiction    **3)** lack of authority to charge non-positive law provisions beyond

14    their restricted jurisdictional parameters.

15            (1)    On December 1, 2000 , U.S. Magistrate Judge Felix Recio filed

16    his "Magistrate Judge's Report and Recommendation (CD : 53) where he found :

17    **1)** *"Petitioner's Motion must be construed as if it were brought pursuant to 28*

18    *USC  section 2255 " (page # 3 (17, 18) of R and R) . **2)** "the frivolous nature of*

19    *Petitioner's entire Ex Parte Motion " --(page 4) , **3)** "This Court had jurisdiction*

20    *to convict Petitioner by virtue of the fact that he was charged with violating federal*

---

[2] On October 1998 . before Attorney Felix Recio became U.S. Magistrate Judge , he interviewed Petitioner Absalon on the facts of the instant case   He was acting on behalf of Absalon's retained defense counsel Jose A Esquivel Jr.

1   laws " - page (4) ,   _4)_   "It is now recommended that this Court (1) construe
2   Petitioner's Ex Parte Motion as a motion brought pursuant to 28 USC section
3   2255 , and  (2) dismiss Petitioner's Motion . " (page 5) ,   _5)_    "As Petitioner's
4   pleadings , along with the entire record , conclusively demonstrate that he is not
5   entitled to relief , it is proper to dismiss Petitioner's Motion without a hearing ".
6   (page 5) .

7       On January 10 , 2001 , U.S. District Judge Hilda G. Tagle filed her ORDER
8       stating :   " Before the Court is the Magistrate Judge's   Report and
9       Recommendation in the above-referenced cause action . After a de novo review
10      of the file ,

11      1.    The Magistrate Judge's Report and Recommendation is hereby
12      ADOPTED.

13      2.    Petitioner's Absalon's Ex parte Motion is hereby construed as a
14      motion to vacate pursuant to 28 USC § 2255 ; and

15      3.    Petitioner's Motion is hereby  DISMISSED

16

17      (2)    U.S. Magistrate Judge Judge Felix Recio  **erred**  in finding and
18      recommending that Petitioner's Motion pursuant to Rule 60(b)(3) & (6) . and
19      12(b)(1) & (7) of the Fed.R.CR.P. be construed as one under 28 USC § 2255 and
20      dismissed it   as sustained by the following :   A   Panel by Fifth Circuit Judges
21      **Reavley , DeMoss and Stewart** ruled :        "the district court erred in
22      failing to grant Petitioner Absalon the requested discovery before construing the
23      pleading Ex parte motion-pleading No 46 as one under 28 USC § 2255
24      motion and dismissing it". U.S.C.A. No. 01-40048-Order of March 6,
25      2001 .       U.S. Magistrate Judge Felix Recio **knew or should have known** that
26      he could not characterize Petitioner's Ex parte Motion (CD : 46) as one under 28
27      USC § 2255 **BEFORE    granting duly requested discovery**.

(3)     U.S. Magistrate Judge Felix Recio **ignored** binding Fifth Circuit rulings : In *Moavad v Childs, 637 F2d 851 (5th Cir. 1982)* the Court held : *"when a dismissal of a pro se complaint (*as Petitioner's Ex parte motion is *) is warranted it should generally be "without prejudice" in order to afford the plaintiff the opportunity to file an amended complaint "* ; In *Covington v Cole ,528 F2d 1365, 1370 (5th Cir. 1976)* the Court held : *"If a dismissal of a pro se complaint is warranted , it should be "without prejudice" to allow an inmate to file an amended complaint".*

U.S.Magistrate    Judge Felix Recio recommendation for   dismissal of Petitioner's Motion (CD : 46) does not state that dismissal was "without prejudice".

(4)     Although it is true that Felix Recio, Magistrate Judge gave Petitioner opportunity for withdrawal or amendment of his Ex parte Motion , he severely limited the number of pages to be submitted  in the suggested amended motion and set a deadline that could not be met.   **At the same time Petitioner was being deprived by the Government , of duly requested discovery necessary for a meaningful preparation of collateral attack on the judgment** . Petitioner had been forced to file appeal No. 01-20901 , U.S.C.A. for the Fifth Circuit, in order to get the requested evidence ( requests started since July 28, 1998) necessary for the preparation of a meaningful 28 USC § 2255 (appeal was dismissed on June 26 , 2002 **as barred by the doctrine of absolute immunity**) . It is well settled that the doctrine of absolute immunity does not protect  the Prosecutors  against failure to perform their constitutional duty to disclose duly requested evidence     **The merits of the appeal were not adjudicated.**

**Disclosure requests :**    **July 28, 1998 :** written, direct request for disclosure addressed to U.S. Attorney Mervyn M. Mosbacker . Certified Mail P 213 632 513.

**August 13, 1999** : addressed to U.S. Attorney Mervyn M. Mosbacker in reference to the latter . Certified Mail Z 436 161 941.

1  **October 18, 1999** : Civil action No 1:99-CV-684 - Motion to enjoin U.S. Attorney

2  Mervyn M.Mosbacker from withholding duly requested records- incorporated to

3  U.S.C.A. 01-40048.

4  **December 15, 1999** :Civil Complaint 1:99-CV-00801 (in lieu of CV  1:99-CV-

5  684) - violation of Petitioner's rights by deprivation of evidence for which he was

6  entitled to under the Due Process Clause of the Fifth Amendment to the U.S.A.

7  Constitution filed at the U.S.D.C. for the Eastern District of Texas, Beaumont

8  Division (Petitioner was in custody at the F.C.I. in Beaumont Texas).

9  **May 1, 2000** : Motion for Judgment on the pleadings to be disposed as summary

10  judgment . [subject matter of appeal 01-20386] . filed at the U.S.D.C., Eastern

11  District of Texas , Beaumont Division- civil action.

12  **November 11, 2000** : Motion to Compel Prosecutor's Duty to Disclose Evidence

13  favorable to the defense necessary for the preparation of post-conviction relief

14  from judgment filed at the U.S.D.C. for the Southern District of Texas,

15  Brownsville Division (Pleading-docket-No. 52) - criminal action.. This motion is

16  still pending decision by the Court.

17  **January 8 2001**  Petitioner filed Petition for a Writ of Mandamus **(U.S.C.A. No.**

18  01-40048) to compel the district Court to decide on the pending motion , CD : 52.

19  All the above cited pleadings are incorporated as Exhibits to U.S.C.A. 01-40048

20  Petition for a Writ of Mandamus . **On January 3, 2001** U.S. District Judge Hilda

21  G. Tagle . U.S. Attorney Mervyn M.Mosbacker . et al . of the Southern District of

22  Texas were served , each , with a true and complete copy opf U.S.C.A. No. 01-

23  40048.

24      ( 5 ) U.S. District Judge Hilda G. Tagle and U.S. Magistrate Judge Felix

25  Recio **knew or should have known** that construing Petitioner's Ex parte motion

26  as one under § 2255  **would not be justified prior to granting the duly**

27  **requested discovery** as ruled by the Fifth Circuit Panel . supra.

1    (6)    There was no need , nor justification for erroneously construing
2    Petitioner's Ex parte motion as one under 28 USC § 2255 **and simultaneously**
3    **dismissing it**    unless the Court's intent was to deprive Petitioner Absalon of his
4    right to file a meaningful attack on the judgment    **BEFORE**  U.S. Attorney
5    Mervyn M. Mosbacker and Assistant U.S. Attorney Adela Kowalski-Garza **had**
6    **complied with their constitutional duty to disclose duly requested evidence .**

7    (7)    **March 19, 2002** .  On a related **discovery issue , Twenty five (25)**
8    **months**  after the filing of  **Appellant's Ex parte Motion** ( CD : 46 -filed
9    February 3, 2000) , and **13 months**  after the filing of Notice of Appeal ( CD : 59-
10   filed February 15, 2001 ) to Appeal from the erroneous dismissal of Ex Parte
11   Motion (CD : 46) Judge Hilda G. Tagle **granted Certificate of Appeal ability**
12   (CD : 71) stating the following : *"The Petitioner filed Notice of Appeal (Doc. No.*
13   *59) . The Court hereby construes this notice as a motion for certificate of*
14   *appealability ." The Court is of the opinion that* **Petitioner has raised a**
15   **substantial issue** *which merits review . Therefore, the Court hereby Grants*
16   *Petitioner's Motion for a Certificate of Appealability as to Hugo P. Absalon*
17   *( l )(signed by Juddge Hilda G. Tagle"* (CD : 71).(emphasis added).

18   (*)    Appellant had offered   three (3) specific issues for review by the
19   Appeals Court:

20   1) whether the  U.S.District Court violated Appellant's right of Due Process and
21   abused its discretion by recharacterizing Appellant's Ex parte Motion pursuant to

1    Rules 60(b)(3) & (6) , and 12(b)(1) & (7) of the Fed.R.CV.P. as one brought under

2    28 USC section 2255 motion.

3    2)    whether the policy of lenity applies to an order for dismissal on which its

4    wording does not established clearly whether the dismissal was  "with" or

5    "without" prejudice . does creating ambiguity concerning the ambits of its

6    meaning.

7    (3)    whether the district court erred in failing to grant the requested discovery

8    before construing the pleading as one under 28 USC section 2255 . and

9    simultaneously dismissing it.

10   A review of Appellant's Brief  last filed on July 25, 2001 (U.S.C. No. 01-40293)

11   will sustain the above.

12       (1)    Judge Hilda G. Tagle knew or should have known that her Order

13   MUST specify the issues on which she was granting a Certificate of Appeal ability

14   (COA) , which she did not . causing another lengthily. unnecessary delay.

15   **May 7, 2002** . This Honorable Court remanded the case to the district court for the

16   limited purpose of  specification of the issue or issues upon which the district court

17   granted the COA.

18   **May 31, 2002** In a not  too  delicate ,  but what appears to be a subtle effort to

19   avoid Court of Appeals review of the three issues . U.S. District Judge Hilda G.

20   Tagle RESPONDED to the remand as follows:

1   1) *"Petitioner objected to the district court's application of the guidelines in*

2   *applying offense conduct of dismissed charges to enhance his guideline score*

3   *(Doc. # 12 page 12) ".* A review of the Brief on Appeal will show the falsity of

4   the statement . No where in Brief appears that the Appellant made or implied such

5   objection.

6   2) *"Absalon filed a Motion to Disqualify* [Federal] *District Judge from considering*

7   *his 28 USC 2255 petition (Doc. # 11) questioning the Judge's impartiality .*

8   *Although this issue was not raised in the 2255 Application itself, this Court felt that*

9   *it was a significant issue that should be reviewed by the Appellate Court . For the*

10   *above reasons , the* ***Certificate of Appealability was granted*** "(emphasis added)

11   Judge Tagle's assertion seems to be misplaced . Appellant's Motion for

12   Disqualification of Federal Judge **is already under Appeals Court jurisdiction**

13   **and** consideration . The Motion was **served** on February 13, 2002, **received by**

14   **the Court** on February 16, 2002 , and **filed by the Clerk of the Court of**

15   Appeals on February 18, 2002 **placing the pleading under appellate court's**

16   **jurisdiction.** Appellant respectfully submits that **there was no need** for Judge

17   Hilda G. Tagle **to grant** a Certificate of Appeal ability on **May 31 , 2002** when

18   the matter **had already been** under appellate court's jurisdiction since **February**

19   **18 , 2002 .**

1    Furthermore , previously , **on July 3, 2001** , a Motion for her Voluntary

2    Disqualification to further preside on Appellant's case    **was duly served** as

3    sustained by the Certified Mail Return Receipt. As of today . **no action has yet**

4    **been taken on that motion by the district court.** No where on her RESPONSE

5    **did** Judge Tagle made reference to the July 3, 2001 motion .supra ..

6    **June 19, 2002** Judge Tagle **amended her Response**. This "amended response" is

7    identical , word by word . to her original Response. Nothing changed , nothing

8    added .

9    2.    U.S. Magistrate Judge Felix Recio dismissed the entire Petitioner's Ex

10   Parte Motion (CD : 46) as frivolous .

11   The U.S. Supreme Court has held that an argument is frivolous if "*it lacks an*

12   *arguable basis in either law or fact* " *Neitzke  v  Williams , 490 US 319, 325 , 109*

13   *S.Ct 1827, 1831-32 , 104 Led 2d 338 (1989).*

14   In *Moawad v Childs . 637 F2d 850* (1882) the Fifth Circuit held that a pro se

15   complaint should not be dismissed unless it appears that plaintiff can prove no set

16   of facts which could entitle him to relief . Fed.R.CV.P. Rule 12(b)(6) . 28 USCA.

17   U.S. Magistrate Judge Felix Recio's ruling precluded the proving of the facts.

18   It is respectfully submitted that Magistrate Judge Felix Recio    mere ,plain

19   statement that "*the frivolous nature of Petitioner's  entire Ex Parte Motion* "

20   (please refer to page 9(18,19) supra) **do not** sustain  that Petitioner's arguments

1    lack arguably basis in either law or fact as provided by the U.S. Supreme Court ,

2    supra.

3        In *Reagor v. United States, 488 F2d 515 at 517 (1973)* the Fifth Circuit of

4    Appeals held that *"Contested fact issues in § 2255 cases **must be decided** on the*

5    *basis of evidentiary hearings and it was error for the district court to deny*

6    ***petitioner's motion*** *__without a hearing__. Montgomery v United States , 5 Cir.*

7    *1972 ,469 F2d 148 ; Brown v United States , 5 Cir.1972 , 462 F2d 681 . The order*

8    *of the district court denying § 2255 relief is therefore vacated and the cause*

9    *remanded for the district court to hold an evidentiary hearing on  petitioner's*

10    *claim "*. (emphasis added)     U.S. Magistrate Judge Felix Recio ruled  that *"it is*

11    *proper to dismiss Petitioner's Motion without a hearing "*

12    A review of Petitioner's Ex Parte Motion (CD : 46) would show  that U.S.

13    Magistrate Judge Felix Recio failed to contest  with findings and legal reasoning

14    and arguments **any  and  all** the issues under consideration  :  1)   *"fraud in the*

15    *court ,   unlawful and fraudulent , deceiving misrepresentations,*    2)    *"lack of*

16    *legislative jurisdiction over the ' locus in quo' , subject matter jurisdiction , and 3)*

17    *lack of authority to charge non-positive law provisions beyond their restricted*

18    *jurisdictional parameters".*

1     Failed to take Judicial Notice of the therein contained adjudicative facts in

2     violation of Rule 201 of the Fed.R.CR.P. (please refer to page 32 , last paragraph

3     of the Ex Parte Motion) .

4     Failed to comply with duly invoked Rule 301 of the Fed.R.CR.P.(please

5     refer to page 31 , paragraph " c) " of the Ex Parte Motion ).

6     3.    **Fraud in the Court**    Permissible inferences permit to consider that

7     perjury probable occurred .    Disclosure of Juan Portillo's Complaint (please

8     refer to page 3(11-21) herein) would answer questions of perjury ; disclosure of the

9     "sealed affidavit" ( pages 4(7-18) and 5(1-11) would answer questions on the facts

10    allegedly sustaining FBI Freddy Vela's Complaint and questions of perjury before

11    the grand jury and the district court ; disclosure of grand jury transcripts (if any

12    made) and production of grand jury minutes would answer questions of

13    impeachment relevant to substantially inconsistent. contradictory testimony given

14    by government witnesses Enedelia Portillo Sanchez, Elvia Sanchez Guzman and

15    FBI Freddy Vela at the Sentencing Hearing ; disclosure of  previous statements

16    given by the government witnesses , supra. prior to their testimony at the

17    Sentencing Hearing on the same facts, would answer questions of perjury and

18    impeachment ; **disclosure of Assistant U.S. Attorney Adela Kowalski-Garza"s**

19    **Affidavit and testimony given to the Grand Jury ,  regarding her charge of**

20    **unlawful possession of a firearm , - [ in light of FBI Special Agent Sergio**

1  **Borrego's sworn** certification that : ***"I swear that this inventory*** [ attached to

2  Search Warrant on Appellant's Motor Home (his place of residence) , issued on

3  09/02/1998 and executed by FBI agents Sergio Borrego and Barry W. Ross on the

4  same date ]  ***is a true and detailed account of the person or property taken by***

5  ***me on the warrant*** " ]] - , would answer questions of misrepresentation of the

6  facts to the Grand Jury and the sentencing judge , perjury and fraud in the court .

7  The Search warrant specifically looked for firearms , but , the inventory shows

8  **THAT NO FIREARMS WERE TAKEN ON THE WARRANT** .

9  The Search warrant was introduced at the Sentencing Hearing as defendant's

10  Exhibit # 2 , as evidenced in the transcript of the Sentencing Hearing (2/4/99)

11  pages 15(14-18) and 88(14-19) ,, Exhibit "D" to Motion for Disqualification of

12  Federal Judge (U. S. District Judge Hilda G. Tagle).

13  Judge Hilda G. Tagle presided at the hearing , thus , **she was aware** of this

14  evidence and its , offered to and accepted by the Court . It is reasonable to

15  consider that **before** U.S. Magistrate judge Felix Recio issued his Report and

16  Recommendation **he reviewed the entire record .**

17          Since all the above possible findings were precluded by the prosecutor's

18  failure to disclose duly requested evidence that would have supported them , and

19  retained defense counsels' (both .trial and appeal) failure to address them at the

1   district court and appeal court , "fairness" cannot be stretched to point of calling

2   this a fair trial .

3

4          4.    **JURISDICTION**   The record and documents originated by the

5   U.S. Attorneys Office ,  by the Federal Bureau of Investigations  and other

6   agencies reveal that Petitioner's allegedly violative conduct considered for upward

7   departure , took place , if it did take place , **in the Sovereign Country of Mexico** -

8   page 35(5-9) of the Transcript of the Sentencing Hearing, 2/4/99.

9       The Plea Pocket Memo originated at the U.S. Attorney's Office provides :

10   " ***Jane Doe's father*** [ Juan Portillo , a  Mexican Citizen resident of  the State of

11   Nuevo Leon in the Sovereign Country of Mexico ] ***reported***   *the abduction  to*

12   *the Roma* [Texas] *Police Department who  then  notified  F.B.I  and  Border*

13   *Patrol .   Jane Doe's father described the vehicle the Defendant used when he*

14   *abducted Jane Doe   . A lookout was placed  for  this vehicle on September 1.*

15   *1998 , the Defendant and Jane Doe were stopped at the Sarita* [Texas] *checkpoint*

16   *by Border Patrol* ". .. (emphasis added) [Jane Doe , Enedelia Portillo Sanchez

17   ,**crossed the border** in the morning of **August 31, 1998** . Petitioner **crossed the**

18   **border** , alone , on **the afternoon of the same day**].    Petitioner and Enedelia

19   Portillo Sanchez **were stopped** at the Sarita checkpoint **on September 1, 1998** .

20       Transcript of the Sentencing Hearing - page 8(7-25) provides :

21   " *AUSA Garza :  Yes Your Honor . If I may answer that question , **I am***

22   ***very familiar**  with the facts . When Mr. Absalon was **traveling** with Enedelia ,*

23   ***the parents*** *of Enedelia whom he had taken - - he had taken Jane Doe , the victim ,*

1  *without the parent's consent .   They did not - - they* **_went_** *desperate to the*
2  *authorities* **_in the nearby border town_** *, the* **_nearest_** *border town I forgot the name*
3  *of the border town* **[ the town was Roma Texas** *. See (ii) supra ] . It wasn't*
4  *Brownsville or MacAllen .* **_They went to the bridge and they crossed the bridge_** *- -*
5  **_So, he told the inspectors there at the bridge , he told them ' my daughter has_**
6  **_been kidnapped '_** *and* **_he_** *gave the description of the vehicle Mr. Absalon was*
7  *driving .* **_He_** *gave the description of Mr. Absalon*. **_He_** *gave the description of his*
8  *daughter . From there ,* **_the authorities at the bridge contacted the authorities of_**
9  **_Border Patrol_** *and told them* **to look out for such-and such a vehicle because**
10  **the - - such-and-such  vehicle was a suspect for kidnapping a young  girl  FROM**
11  **MEXICO. That the vehicle was seen at the Sarita checkpoint and it was stopped**
12  **and it matched the vehicle description.**  .(emphasis added).

13      The express language of Title 18 USC § 1201(a)(1) provides that the
14  prohibited conduct  MUST occur "within the special maritime and territorial
15  jurisdiction of the United States.

16      Indictment B-98-506  reads : "defendant - - willfully **transported**  said
17  minor   **in foreign commerce**   FROM the Country of Mexico TO  the Country
18  of the United States in violation of Title 18 USC § 1201(a)(1) - -

19      The record shows that the government **failed to establish** that
20  Petitioner **ever transported** the alleged victim in interstate or foreign commerce .
21  Essential element of the offense .   On the contrary , **Federal Bureau of**
22  **Investigation report FD-302a** -9/30/98- filed by Special agent Freddy Vela  in
23  charge of the investigation of this case , provides that the alleged victim crossed
24  the Mexico/USA border at Matamoros Mexico/Brownsville United States on
25  August 31, 1998 , acting of her own will.    The report . in pertinent part reads :
26  [the alleged victim] " ***produced*** *a birth certificate and* ***provided*** *it to the United*
27  *States Customs official that allowed her to cross into the United States "* - [without

1  asking help from the U.S. Officer ??] - *while he* [ Petitioner Absalon ] ***finished***
2  ***conducting business in Matamoros*** [Mexico].

3  Three days prior to her August 31, 1998 crossing into the United States the alleged
4  victim crossed the border for the first time on August 28, 1998  *"to do some*
5  *shopping "* in Brownsville, returning to Matamoros , Mexico later in the afternoon.
6  Petitioner , again , was not with her -Transcript of Sentencing Hearing-volume II
7  (2/4/99) page 60(1-7).Testimony given by the Government witness -alleged victim.

8          Binding Fifth Circuit  U.S.C.A.'s case law established that   :*"****foreign***
9  ***commerce*** *jurisdictional basis for prosecution under federal kidnapping statute*
10  [18 USC § 1201] ***mandates*** *that the kidnapping* ***take place in the United States***
11  *and the victim* ***subsequently transported   to*** ***a foreign state*** *, United States v*
12  *McRary , 665 F2d 674, 675(1982) "certiorari denied , 102 S.Ct. 2306 , 456 US*
13  *1011, 73 Led 2d 1307 , U.S.C.A. Fifth Circuit- unit B- Former Fifth Circuit case,*
14  *Section 9(1) of Public Law 96-October 14, 1980* . which holding is in direct
15  conflict with the reading on the Indictment (emphasis added).

16          In *United States v Bowman , 260 US 94, 43 S.Ct. 39, 67 Led 149*
17  *(1922)* the U.S. Supreme Court held : *"crimes against private individuals which*
18  *affect the peace and good order of the community MUST of course be committed*
19  ***within the territorial jurisdiction of the government*** *where it may properly*
20  *exercise it. If punishment of them is to be extended to include those committed*
21  *outside of the strict territorial jurisdiction , it is natural for Congress to say so* ***in***
22  ***the statute*** *, and failure to do so will negate the purpose of Congress in this regard*
23  *" 260 US at 98 , 43 S.Ct. at 41* .(emphasis added).

24          As applied to the instant case . Congress  **not only failed to provide that**
25  **the statute** (18 USC § 1201(a)(1)) should apply in foreign nations , **but explicitly**
26  **limited their intended territorial application** .  "Transportation in interstate or
27  foreign commerce ; such act done within the special maritime and territorial

1   jurisdiction of the United States ; within the special aircraft jurisdiction of the
2   United States ".

3       The Fifth Circuit's position on Extraterritorial jurisdiction is well settled by
4   *United States v Columba-Collella , 604 F2d 356 (5th Circ. 1997)* and *United States*
5   *v Velazquez-Mercado , 697 Fsupp 292 (Southern District of Texas 1988) where the*
6   *"protective" and "objective territorial" theories are considered.  The Court's*
7   *decisions were , both, favorable to the defendants : Columba-Collella was reversed*
8   *and charges dismissed ; Velazquez-Mercado , charges dismissed.*

9

10      The alleged victim left her home in Mexico willfully , for her own reasons .
11  The record shows that one of the reasons she had for leaving -(Transcript of the
12  Sentencing Hearing-volume II-2/4/99- p. 69(22-24)- was that her natural father
13  have been sexually abusing her from the age of seven (7) to the age of 13 years
14  old, p. 69(16-21) ; that she had asked to the Petitioner to help her out in that respect
15  , p. 69(25) 70(1-4) ; that during her trip from her home in the State of Nuevo Leon
16  ( Mexico) to Matamoros , State of Coahuila    (Mexico) she had plenty of
17  opportunities to go back to her home  should she have had the desire to do so , p.
18  70(20-21) , but she never did p. 70(2 4-25)  because  **she felt that she did not**
19  **have anyplace to go**  and  *"in the first place "*   **she did not want to return**
20  *because of the problem involving her father*, **because her father was sexually**
21  **abusing her** , p. 71(1-5) , p. 76(1-7) ;  that **she wanted to come to the United**
22  **States** , p. 71(22-25).

23      The record and documents relevant to the case show that on Saturday
24  August 22. 1998 ,  Enedelia Portillo Sanchez ( 14 years old as per her mother's
25  testimony at the sentencing hearing , but 16 years old as stated by the Probation
26  Officer originator of the Presentence Investigation Report who **had interviewed**
27  Enedelia Portillo Sanchez for the PSI report)  spent the night (Transcript of the

1   Sentencing Hearing , 2/4/99 , page 68(18-19))  with her 31 years old boyfriend
2   (page 68(1-2) who resides in Laredo, Texas (page 67(24-25) who came to visit
3   with her.

4          The following day , Sunday August 23, 1998 , upon returning to her home
5   after the night she  spent with her boyfriend(about 5 AM) she  got in a fight with
6   her parents over her boyfriend (page 67(22,23)) .    She argued with her parents
7   who scolded her  (page 68(11-12))  over her overnight six hour stay with her
8   boyfriend  (page 68(13-14)) .    Early in the morning Petitioner arrived to her
9   home  where  Enedelia Portillo Sanchez appraised him of the problem with her
10  parents confiding  (page 69(25)) that her biological father  (Juan Portillo) had been
11  sexually abusing her from the age of seven  (7) to thirteen (13) (page 69(16-21)).
12  She asked for Petitioner's help . He agreed in that respect (page 70(3-4)).

13  Early on Monday August 24, 1998 ,  Enedelia's brother Juan Portillo Sanchez Jr.
14  (Juan Portillo's son) met Petitioner at Teodoro Rivera's  house where Petitioner was
15  staying .    Juan asked for help to get to the town of Paras , about 60 kilometers
16  away, where he was to be  registered at school .   The town is in the way to
17  Matamoros where Petitioner was bound in order to discuss  business with  two
18  relatives , one living in Matamoros Mexico and the other in Brownsville Texas .

19         Petitioner ,  Enedelia , her mother Elvia Sanchez Guzman , Juan Portillo
20  Sanchez Jr. , and two young siblings left to Paras .    An intermediate  stop was
21  made at a place where the father had another house .       Enedelia , her mother ,
22  and her three siblings went inside the house . Petitioner remained outside to check
23  some problem that had developed in the engine cooling system .      All of them
24  returned to Petitioner's vehicle (Motor Home) to continue the trip .      Enedelia
25  came back with a plastic bag containing several clothing items.       After their
26  arrival to the school , Petitioner parked , first in front of the school where he tried
27  to open the door but the inside lock handle did break .    Petitioner moved the

1   vehicle to the side of the school .    Because the inside door lock handle was broken

2   he was forced to jump out of the vehicle trough a window an opened the door from

3   the outside .    Petitioner, the mother and the three siblings  walked to the school

4   for the registration of Juan Portillo Sanchez (Jr) .  For the vehicle's safety Enedelia

5   Portillo Sanchez **remained with** the vehicle as **it could not be locked** .  The  lock

6   was broken.     After leaving the mother and the three siblings at the school ,

7   Petitioner returned to his vehicle , tied the door with a rope  from the inside , and

8   continued his trip to Matamoros  in the company of Enedelia .    She did not want

9   to return home..    After a trip that lasted about four hours , with an intermediate

10  stop in Reynosa  Tamaulipas  Mexico where **Petitioner and Enedelia went inside**

11  **a  Convenience store to have  lunch  at the  gas  station where he  purchased**

12  **gasoline** for his vehicle [ is this a conduct of somebody being abducted ??),  they

13  arrived at Matamoros , Mexico ,  checking in at the  "Encinal Hotel"  where they

14  stayed overnight .

15      The  following  day  Tuesday  August  25,  1998 ,   Petitioner  first  cousin

16  Yolanda and her husband met them at the Hotel Encinal  .   All of them went to

17  their house in Matamoros where Petitioner parked his Motor Home .  Petitioner

18  was  to  meet  with  Yolanda's  son  to  discuss  an  import  business ,    reason  for

19  Petitioner's trip to Matamoros Mexico .    The relative  works at a Custom Broker

20  business in Matamoros .

21      On Friday August 28 , 1998 Enedelia crossed the Mexico/USA bordser at

22  Brownsville Texas in the company of Yolanda and her husband to do *"some*

23  *shopping  "* .   They returned late in the afternoon  .   Petitioner remained in

24  Matamoros trying to fix the Motore Home broken lock .   He could not get the

25  replacement part in Matamoros.

26      Petitioner and Enedelia stayed with Yolanda and her husband fro Tuesday

27  August 25, 1998  until Sunday August 30 , 1998 .    Enedelia participated in a

1  number of family activities inside and outside of  the house .  Yolanda and her

2  husband are an elder couple living alone .   They took a quick liking to Enedelia

3  offering to Enedelia to stay with them in Matamoros  to which she agreed .

4  Yolanda was overwhelming  Enedelia with attention and pampering to which

5  apparently Enedelia was not use to  .      Enedelia indicated to Petitioner that she

6  did no tliked to be treated  as a young daughter  by Yolanda . which she resented.

7      Because of that , Petitioner and Enedelia  moved to the Residential Hotel in

8  Matamoros late in the afternoon of August 30 , 1998 where they stayed overnight .

9  The Hotel was nearby Yolanda's son office  where they were to meet to finish the

10  Matamoros end of the business discussions.

11      Early on Monday August 31 ,   Petitioner's other first cousin resident of

12  Brownsville Texas , Mrs. Graciela S. de Gonzalez  and her mother in law came to

13  Matamoros Mexico where the mother in law had a dentist appointment and were to

14  do some shopping .   Graciela left her mother in law with the dentist and met

15  Petitioner at the Residential Hotel .   As Petitioner had to finish the Matamoros end

16  of his trip and not wanting to leave Enedelia alone in the Hotel  asked to his cousin

17  if Enedelia could stay with them  until the shopping was finished .   The cousin

18  agreed .  FBI 302a reports of 9/28/98 and  9/30/98.

19  Late in the afternoon . during dinner ,   Petitioner met Graciela's husband and

20  discussed the Brownsville portion of the import business discussion .   Graciela's

21  husband owns a Custom Broker business in Brownsville Texas .    About 8 PM

22  Petitioner moved his Motor Home to a Motor Home Park nearby

23  The following morning , Tuesday September 1, 1998 , Graciela's husband  stopped

24  in the Motor Home Park to deliver to the Petitioner some documents .

25  As he had done in several other occasions since Enedelia left her home  Petitioner

26  discussed Enedelia's return to Mexico to  wherever place in Mexico she would

1   choose with the promise that Petitioner would continue her financial support until
2   she was able to do it by herself .   Enedelia refused to go back .

3   After lunch at the Motor Home , Petitioner and Enedelia parted towards
4   Converse Texas , a San Antonio Texas subdivision where Petitioner lived at his
5   son's property.

6   About 70 miles of Brownsville they were stopped at the Sarita Texas Border Patrol
7   checkpoint  around 2 PM in the afternoon . They were detained first by the Border
8   Patrol agents and later by the FBI agents until approximately 11 PM at night .

9   After hours of interrogation by Border Patrol agents and FBI agents Enedelia
10  provided them with information about the facts of the case  which resulted in FBI
11  Special agent (case agent)  Criminal Complaint B-98-3787M  filed by agent Vela
12  on September 3 , 1998 at the U.S District Court for the Southern District of Texas ,
13  Brownsville Division  (docketed as B-98-506)  charging  [ONLY]  an alleged
14  violation of  18 USC § 1202(a) , no other charges were made .

15  On September 22 , 1998 , upon Petitioner's retained defense counsel (Board
16  Certified Criminal Defense Attorney  Jose (Joe)  A. Esquivel ) request  Petitioner
17  provided to him a 36 page hand written account of the facts of the case (legal size
18  paper) .    Subsequently , on October 1998 ,  upon Esquivel's request , U.S.
19  Magistrate Judge Felix Recio (then acting in the court as defense attorney in other
20  cases) **interviewed the Petitioner on the facts of the case** .

21  **Therefore** . U.S. Magistrate Judge Felix Recio **knew**  or **should have known**
22  the  foregoing  facts ,    **BEFORE**   the preparation of his Report    and
23  Recommendations  and thereafter.

24

25  5.    On **March 25, 2002** Appellant filed his Motion for Certified Copy of
26  Criminal Docket for case B-98-506-1  B-00-186  (CD : 73).

1  **(1)    On April 1, 2002**  the Court granted Appellant's Motion for Certified copy

2  of  Criminal Docket Sheet providing to the Appellant a copy thereof.    Docket as

3  of April 1, 2002  showing entries from 9/01/98 to  3/27/02.

4  **(2)    On April 16, 2002** Appellant filed his Motion to Amend and Supplement

5  the Certified Copy of Docket Sheets , outlining therein  several omissions  (i.e. no

6  docket entries showing entering and filing of duly served pleadings ) and an

7  apparent manipulation of facts.   Among others, the Court omitted entry and filing

8  of :    (*)   Appellant's Traverse (reply to :  government's Answer to

9  Appellant's Motion to Vacate (CD :54) and  Government's Motion for Summary

10  Denial) , Appellant's Motion for Denial of Government's Motion for Summary

11  Denial and  Appellant's Motion for Judgment on the Pleadings . Served June 29,

12  2001 , Certified Mail Receipts  7099 3220 0002 9453 1590 and 7099 3220 0002

13  9453 1583 , Return Receipt shows delivery date of July 13, 2001 . The Certified

14  Copy of the Docket Sheet  **omits  docket entry showing filing or entering of the**

15  **pleadings.**

16  The Traverse contains Appellant's arguments relevant to :

17  1)    whether the  government had  secured  and  established  Criminal  Legislative

18  Jurisdiction and Extraterritorial Jurisdiction ;    2)    whether a district court may

19  render summary judgment against a party  who will bear the burden of  proof  of an

20  essential element of its case but he is unable, in response to a motion for summary

1  judgment , to produce any evidence , direct or circumstantial on that issue  . Where

2  the nonmoving party has not had the opportunity to discover information that is

3  essential to his position ;   3)   district court's failure to grant Appellant the duly

4  requested discovery before construing the pleading as one under 28 USC section

5  2255 and simultaneously dismissing it ; 4)   violation of Appellant's Constitutional

6  Rights , depriving him of liberty  as punishment for alleged criminal conduct only

7  to the extent authorized by Congress ;    5)    application of Title 8 USC section

8  1329 granting jurisdiction to section 1324.

9

10  **It is instructive** , that Appellant's  Motion for Disqualification of Federal Judge

11  (2nd motion for disqualification) <u>served on February 13, 2002</u> , <u>received</u>  at the

12  Court  <u>on February 16, 2002</u> , filed by the Clerk of the Court of Appeals on

13  <u>February 18, 2002</u>    was not   assigned a docket number and appears on the

14  Certified  Copy  of  the  Docket  Sheet  as  " *received  copy  of  Motion  for*

15  *Disqualification of Federal Judge . (Copy given to Judge Felix Recio  as per*

16  *instructions from Estella Case Manager for Judge Tagle)*  <u>*copy placed in separate*</u>

17  <u>*folder  (maxg) [Entry date 02/21/02]*</u> , **<u>in light of the fact</u>** that on  **February 19,**

18  **2002**  an ORDER (CD : 68) denying Appellant's Motion (CD : 54) was allegedly

19  <u>Entered on 3/15/02</u>. <u>Edit date</u> of 3/25/02 , although ,  **<u>a duplicate entry</u>** of the

20  same denial (CD : 67) shows an <u>Entry date of 2/21/02</u>  ,  <u>Edit date of</u> 02/22/02.

1  The Motion for Disqualification of Federal Judge specifically submitted that Judge

2  Tagle be disqualified from further proceeding over Appellant's case  was ignored

3  as well as the Motion for her disqualification filed on July 3, 2001.

4      (3)    **On May 8 , 2002** - U.S. Magistrate Judge Felix Recio  ORDERED :

5  *"Due to the fact that Mr. Absalon's case is currently on appeal at the 5th Circuit,*

6  *this Court is not authorized to hear* **any of Petitioner's new motions***. Therefore,*

7  *Prisoner's ' Motion to Amend and Supplement Copy of Docket Sheet ,* **as well as**

8  **any future motions** *filed by the Petitioner while his case is pending in the 5th*

9  *Circuit* **are hereby MOOT** *. This Court hereby orders the Clerk of the Court to*

10  *moot said motions because this Court* **no longer has jurisdiction over this**

11  **matter**"*(emphasis added).*

12      Should that be the case **, lack of jurisdiction** , then , based on his own

13  ruling , supra,  , **did  Magistrate Felix Recio    USURP JURISDICTION**  in

14  granting Appellant's Motion for Certified Copy of Docket Sheet  on **April 1 , 2002**

15  when Appellant's Appeal **had been filed** since **March 4 , 2002** .    This Appeal

16  is currently waiting for decision.      In *Cohens v Virginia 19 US (6 Wheat) 264*

17  *, 405 , 5  Led 257 , 291 (1821)* the United States Supreme Court held : *"We have*

18  *no more right to decline the exercise of jurisdiction which given* **than  to usurp**

19  *that  which  is  not  given   :  the  one  or  the  other* **would  be  treason  to  the**

20  **Constitution**" *.  In  Louisville & Nashville Ry Co  v  Mottley , 221 US 149 , 29*

1   *S.Ct. 42 , 53 Led 126 (1908)* the Supreme Court held : "*that if a subject matter*

2   *jurisdiction defect exists , it may be raised at any time , even on appeal , and that*

3   *the Court is under duty to point it out if parties do not* ". (emphasis added).

4       Both motions , Appellant's Motion for Certified Copy of Docket Sheet  and

5   Motion to Amend and Supplement Certified Copy of Docket Sheet ,  **were    filed**

6   by Petitioner **after** the filing of the Notice of Appeal  on March 4 , 2002.

7       U.S.    Magistrate  Judge  Felix  Recio  should  give  his  legal  reasoning

8   supporting  his  rulings  treating  one  motion  different  to  the  other .    It  seems

9   reasonable to question why  in the case of the Motion for Certified Copy of the

10  Docket Sheet **he exercised jurisdiction** and subsequently he **claimed lack of**

11  **jurisdiction** in  the  Motion to Amend and Supplement Certified Copy of Docket

12  Sheet.

13      It seems reasonable to consider that Magistrate Judge Felix Recio's ORDER

14  to MOOT Appellant's Motion to Amend and Supplement , supra , appears to be an

15  skewing ,   subtle effort  **to    prevent**   proof  of the manipulation of facts ,

16  omissions of enterings and filings of Appellant's duly  served  pleadings therein

17  contained,  and **to preclude Appellant from filing any other pleading** relevant

18  to this case that the Appellant might have to file in the future in district court.

19      (4)   **On January 10, 2001**   (CD : 57)  , Misrepresenting the facts ,

20  through erroneous entries in the Criminal Sheet the Court  made it to appear that

1    Judge Hilda G. Tagle's  ORDER of dismissal of Petitioner's  Ex Parte Motion (CD

2    : 46) pursuant to Rule 60(b) et seq   **intended to dismiss** Petitioner's Motion to

3    Vacate Judgment  (CD : 54)pursuant to Rule 12(b)(2) of the Fed.R.CR.P.  and to

4    Dismiss the Indictment  by authority of Apprendi v New  Jersey (CD : 54) .    The

5    same Motion (CD : 54)  that on  **February 19, 2002   Judge Hilda G. Tagle**

6    DISMISSED  AGAIN  (CD : 68) notwithstanding the fact that she was barred for

7    further presiding in Petitioner's case  UNTIL  a decision on the two outstanding

8    motions for her disqualification  are decided by the courts .  Both motions are, as

9    today , still pending decision.

10        (5)   **March 25, 2002** Appellant's Motion for Certified Copy of Criminal

11   Docket Sheet (for case B-98-CR-506-1) is filed (CD : 73).

12   **April 1, 2002**  Court granted the above motion and provided Appellant with a copy

13   thereof.  The  Certified Docket Sheet contains entries from September 1, 1998 thru

14   April 1, 2002.

15   **April 16, 2002**  Appellant filed his Motion to Amend and Supplement Certified

16   Copy of Docket Sheet. Several entries of the receipt and filing of Appellant's

17   previous pleadings were OMITED , and manipulation of facts is evident in others.

18   **May 8, 2002** U.S. Magistrate Judge Felix Recio  ORDERED :

19   " *Due to the fact that Mr. Absalon's case is currently on appeal at the 5th Circuit,*

20   *this Court is not authorized to hear any of the Petitioner's new motions.*

1    *Therefore, Prisoner's "Motion to Amend and Supplement Copy of Docket Sheet,*

2    ***as well as any future motions*** *filed by the Petitioner while his case is pending in*

3    *the 5th Circuit* ***are hereby MOOT****. This Court hereby orders the Clerk of the Court*

4    *to moot said motions because this Court no longer has jurisdiction over this*

5    *matters".*    Should that be the case , lack of jurisdiction , then  :   1) following the

6    above reasoning , did Magistrate Judge Felix Recio (or who ever did it**)    usurp**

7    **jurisdiction**   in granting Appellant's Motion for Certified Copy of Docket Sheet

8    on  April 1, 2002 , since the Appeal was  filed on March 4, 2002  and pending on

9    April 1, 2002  ??  ( as of today , the appeal is  still pending ) .

10    It seems reasonable to consider that Magistrate Judge Felix Recio's  ORDER  to

11    MOOT  Appellant's Motion to Amend and Supplement Certified Copy of Docket

12    Sheet is an skewing effort to prevent proof of manipulation of facts , omission of

13    entries of  filing or entering  Appellant's duly served pleadings , and the filing of

14    any  other pleading that the Appellant might have to file on the district court

15    relevant to his case .

16    **May 17, 2002**  Appellant objected  to Magistrate Judge ORDER of May 8, 2002

17    ,supra.. Objection was duly served.

18    Title 28 USC section 636(a)(C), in pertinent part provides that within ten days

19    after being served with a copy,  any party may serve and file  written objections to

20    such proposed findings and recommendations [or order] as provided by rules of

1   court. . A judge of the court shall make a de novo determination of those portions

2   of the report or specified proposed findings [or order]. The final decision MUST be

3   referred to a U.S. District Judge for final decision. **Which it was not.**

4   **May 22, 2002** U.S. Magistrate Judge Felix Recio gave NOTICE to Appellant

5   providing that Appellant's Objections to his ORDER were MOOT , as Petitioner

6   has filed an appeal which is currently pending before the Fifth Circuit Court of

7   Appeals , without complying with Title 28 USC section 636(a)(C).

8       On <u>May 8, 2002</u> and <u>May 22, 2002</u> Magistrate Felix Recio alleged lack of

9   court's jurisdiction because "Appellant has previously filed an appeal which **is**

10   **currently on appeal** " , when :

11   1)  **No order granting Certificate of Appealability has been filed or served**

12   **upon the Appellant** notwithstanding the fact that the Court , on docket entry of

13   **March 26, 2002** , has stated : "*Docket # 72* [filing of Appellant's Motion for

14   Certificate of Appealability) *is MOOT as per Judge Recio's Secretary-Docket #*

15   *13 <u>Order Grants Petitioners Motion for a Certificate of Appealability</u> (Doc. # 21).*

16   *(maxg)[Entry date 03/27/02]* "(emphasis added) . The Certified Copy of the

17   Docket Sheet containing entries from <u>September 1, 1998</u> thru <u>April 1, 2002</u>

18   **does not show any entry of the filing or entering of the alleged ORDER**

19   **granting a Certificate of Appealability** . A review of the Certified Copy of

20   Docket Sheet would reveal that Docket # 13 refers to a Motion filed by the U.S.A.

1    on October 22, 1998. The alleged "Doc. # 21", which content is unknown to the

2    Appellant , has not been filed or served upon the Appellant.

3        (d)   **March 4, 2002**  Notice of Appeal (CD : 70) from U.S. District Judge

4    ORDER (CD : 68) and Application to proceed in forma pauperis are filed.

5        **March 20 , 2002**  Application for Certificate of Appeal ability is filed (CD :

6    72) at the U.S. District Court for the Southern District of Texas . Brownsville

7    Division .

8    **March 26 , 2002**  In an entry ,to which no docket number is assigned (even though

9    it refers to an ORDER given by the Court) , the Court stated :"*Docket No 72*

10   [Appellant's Motion for Certificate of Appealability] *is MOOT  as per Judge*

11   *Recio's Secretary- Docket # 13 Order* **_Grants_** *Petitioner's Motion for a Certificate*

12   *of Appealability (Doc. # 21). (maxg)[entry date 3/27/02]* ".

13   The manipulation of facts seems evident :

14   a)    Docket # 13 **does  not**  refer to any Order granting Motion for Certificate of

15   Appealability   A review of the Certified copy of the Docket Sheet would show

16   that docket # 13 refers to : "*Motion by USA as to Hugo P. Absalon to Seal Govt's*

17   *Notice to the Court of 'Jane Doe's ' identity* ",  identified in the Order as  "*(Doc.*

18   *#21)* ".  **Appellant has not been served with**  any "Doc. #21).

19   b)    **No ORDER granting Appellant's Motion for a Certificate of**

20   **Appealability has been filed.**

1   c)      **No ORDER granting COA has been served upon the Appellant**.

2   d)      **On May 23, 2002** Appellant requested of the Court of Appeals information

3   of whether the district court had transmitted to the Court : **1)** Certified Copy of

4   Notice of Appeal , and docket entries (Certified Copy of Criminal Docket Sheet for

5   case B-98-506 B-00-186,    **2)**    Certified Copy of district court ORDER granting

6   COA showing the specific issues upon which the district court has allegedly

7   granted the COA ,    **3)**    Record on appeal consisting of transcripts of Re-

8   arraignment ,docket # 27) and Sentencing Hearings (dockets # 37, 43, 44 and 45) ,

9   identified by docket numbers 1, 26, 27, 30, 31, 32, 33, 36, 37, 39, 40 , 41, 42, 46,

10  47, 48, 49, 50, 51, 52, 53, 54, 55, 57, 59, 60, 61, 63, 64, 65, 66, 67 , 68, **entry** date

11  of 2/21/02   where no docket number is shown (Motion for Disqualification of

12  Federal Judge) , 69, 70, 71, 72, 73 , **entry** of 3/27/02  where no docket number is

13  shown (Doc. # 21, declaring MOOT docket # 72 (Motion for Certificate of

14  Appealability) and  [alleged] Order granting Appellant`s Motion for a COA ,

15  Appellant's Traverse, served June 29,2001, Certified Mail 7099 3220 0002 9453

16  1590 , and 1583 Return Receipt delivery date July 13, 2001 OMITED at the

17  Certified Copy of Docket Sheet ,    **4)    Copies of exhibits showing government**

18  **evidence**  offered and accepted by the district court at the Sentencing Hearing of

19  February 4, 1999.

1    **VERIFICATION**
2

3    In the nature of 28 USC section 1746(1) I do hereby attest that to the best
4    of my knowledge this Judicial Notice is made by me on information and belief,
5    except in matters stated to be on personal knowledge . Sources of my information
6    and the grounds of my belief are records in the official files of the United States
7    District courts for the Southern District of Texas, Brownsville and Houston
8    Divisions , Eastern District of Texas , Beaumont Division , and  U.S. Court of
9    Appeals for the Fifth Circuit ; documents originated by the U.S. Attorney's Office ;
10   the Federal Bureau of Investigation ; the U.S. Border Patrol; the U.S. Probation
11   Office ; conversations with a member of the Mexican Consulate at Brownsville,
12   Texas ; and with former defense counsels (trial and appeal) ; and other inquiries
13   made or caused to be made by me.
14

15   _____
16   Hugo P. Absalon ,pro se
17   82491-079 BSCC
18   Cedar Hills unit DB4
19   3711 Wright Avenue
20   Big  Spring, Texas 79720

21   **CERTIFICATE OF SERVICE**
22

23   Appellant does hereby Certify the mailing of a true and complete copy of the
24   foregoing Motion  to the United States District Court for the Southern District of
25   Texas , Brownsville Division/U.S. Magistrate Judge Felix Recio to the following
26   address:  Att. Clerk of the Court , 600 East Harrison Street , Brownsville ,Texas
27   78520. Certified Mail # 7000 0010 8896 1138.
28
29
30   _____
31   Hugo P. Absalon , pro se .